## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

GORDON-DARBY HOLDINGS, INC.,
2600 Stanley Gault Parkway
Suite 300
Louisville, KY 40223

      *Plaintiff,*

v.

ROBERT L. QUINN, in his official capacity
as Commissioner of the New Hampshire
Department of Safety,
33 Hazen Drive
Concord, NH 03305

      *and*

ROBERT R. SCOTT, in his official capacity
as Commissioner of the New Hampshire
Department of Environmental Services,
29 Hazen Drive
Concord, NH 03302

      *Defendants.*

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Gordon-Darby Holdings, Inc. ("Gordon-Darby"), through its undersigned

counsel, files this Complaint and alleges as follows:

## NATURE OF ACTION

1.    This is an action to compel New Hampshire state officials to comply with the federal

Clean Air Act, 42 U.S.C. §§ 7401-7671q.

2.    As further set forth herein, the Commissioner of the New Hampshire Department of

Safety ("NHDOS") and the Commissioner of the New Hampshire Department of Environmental

Services ("NHDES"), collectively referred to herein as the "Commissioners," have violated and are continuing to violate the Clean Air Act by failing to implement the state's motor vehicle inspection and maintenance ("I/M") program as required by New Hampshire's state implementation plan ("SIP").

3.    Specifically, the Commissioners have announced that they will completely cease implementation and enforcement of the New Hampshire I/M program effective January 31, 2026, and have already taken concrete steps to effectuate that cessation, currently resulting in reduced implementation and enforcement of the I/M program.

4.    The Commissioners' failure to implement and enforce the I/M program violates an "emission standard or limitation"[1] and entitles Gordon-Darby to the declaratory and injunctive relief requested herein.

## JURISDICTION AND VENUE

5.    Gordon-Darby brings this action under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(1).

6.    This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. § 1331. The relief requested is authorized by 42 U.S.C. § 7604(a) and 28 U.S.C. §§ 2201 and 2202.

7.    Pursuant to 42 U.S.C. § 7604(b), Gordon-Darby served timely prior notice of the violations described herein upon Defendants in the form and manner required under 42 U.S.C. § 7604(b) and 40 C.F.R. §§ 54.1-54.3. That notice was accomplished by certified letter sent to Commissioner Quinn and Commissioner Scott on October 7, 2025, by certified mail.  Copies of

---

[1] The Clean Air Act's citizen suit provision defines an "emission standard or limitation" to include motor vehicle I/M programs. 42 U.S.C. § 7604(f)(3).

Gordon-Darby's notice letter were sent to: New Hampshire Governor Kelly Ayotte; Lee Zeldin, Administrator of the U.S. Environmental Protection Agency ("EPA"); and Mark Sanborn, Regional Administrator of EPA Region 1. A copy of Gordon-Darby's notice letter is attached to this Complaint as Exhibit 1.

8.    More than 60 days have elapsed since notice was served as required by 42 U.S.C. § 7604(b)(1)(A), and the violations Gordon-Darby described in its notice letter are continuing.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim have occurred and are occurring in the District of New Hampshire.

## PARTIES

10.    Plaintiff Gordon-Darby Holdings, Inc. is a corporation incorporated under the laws of the State of Delaware. Gordon-Darby's registered agent is CSC, located at 251 Little Falls Drive, Wilmington, DE 19808.

11.    Plaintiff Gordon-Darby Holdings, Inc. is the sole owner of Gordon-Darby NHOST Services, Inc., which is the contractor retained by NHDOS to perform services related to implementation of New Hampshire's I/M program.

12.    Gordon-Darby NHOST's sole business purpose is to implement the New Hampshire motor vehicle inspection program, which includes a safety and an I/M program, pursuant to its contracts with licensed New Hampshire inspection stations and its contract with NHDOS. Gordon-Darby NHOST does not receive revenue from the State of New Hampshire or any of its agencies. Licensed inspection stations pay Gordon-Darby NHOST a fixed fee per inspection.

13.    Defendant Robert L. Quinn is the Commissioner of the New Hampshire Department of Safety. In that capacity, he is responsible for implementing and enforcing part of the I/M obligations set forth in the New Hampshire SIP under the Clean Air Act.

14.    Defendant Robert R. Scott is the Commissioner of the New Hampshire Department of Environmental Services. In that capacity, he is responsible for implementing and enforcing part of the I/M obligations set forth in the New Hampshire SIP under the Clean Air Act.

## REGULATORY AND FACTUAL BACKGROUND

15.    The Clean Air Act directs EPA to establish national ambient air quality standards ("NAAQS") for certain pollutants.[2] 42 U.S.C. § 7409(a). EPA must set NAAQS at a level that will protect the public health with an adequate margin of safety (called a "primary" NAAQS) and at a level that will protect the public welfare[3] from any known or anticipated adverse effects associated with the presence of a pollutant in the ambient air (called a "secondary" NAAQS). 42 U.S.C. § 7409(b)(1), (2).

16.    EPA established NAAQS for ground-level ozone, commonly known as smog, in 1979 and subsequently revised them to be more stringent in 1997, 2008, and 2015. *See* 40 C.F.R. §§ 50.9, 50.10, 50.15, 50.19. The acute health effects of ozone include respiratory symptoms and increased emergency room visits and hospital admissions; those at increased risk of these effects include children, outdoor workers, and individuals with a preexisting respiratory disease such as

---

[2] Pollutants for which EPA has established NAAQS under the Clean Air Act are called "criteria pollutants." There are six criteria pollutants: ground-level ozone, particulate matter, carbon monoxide, sulfur dioxide, nitrogen dioxide, and lead. *See* EPA NAAQS Table, *available at* https://www.epa.gov/criteria-air-pollutants/naaqs-table.

[3] The Clean Air Act defines "effects on welfare" as including "effects on soils, water, crops, vegetation, manmade materials, animals, wildlife, weather, visibility, and climate, damage to and deterioration of property, and hazards to transportation, as well as effects on economic values and on personal comfort and well-being." 42 U.S.C. § 7602(h).

asthma. Chronic effects of long-term exposure to ozone include structural damage to lung tissue. 62 Fed. Reg. 38,856, 38,859 (July 18, 1997). The welfare effects of ozone include effects on ecosystems and vegetation, including reduced yield and quality of agricultural crops. 85 Fed. Reg. 87,256, 87,310-11 (Dec. 31, 2020).

17.    Under the Clean Air Act, EPA designates any area that does not meet the NAAQS for a pollutant as "nonattainment" for that pollutant. 42 U.S.C. § 7407(d).

18.    As amended in 1990, the Clean Air Act contains both general provisions for all nonattainment areas, 42 U.S.C. §§ 7501-7509a, and specific provisions applicable to ozone nonattainment areas, 42 U.S.C. §§ 7511-7511f. The Clean Air Act requires states to submit to EPA state implementation plans, or SIPs, containing specific pollution control measures that assure progress toward attainment of the NAAQS. 42 U.S.C. §§ 7502(c), 7511a. Following EPA approval of state submissions under the Clean Air Act, 42 U.S.C. § 7410(k), the submissions become part of a state's "applicable implementation plan" and federally enforceable, 42 U.S.C. §§ 7413, 7602(q), 7604.

19.    A SIP revision requires the same process: to revise its SIP, the State must adopt the revision after reasonable notice and public hearing and then submit the proposed revision to EPA for approval. 42 U.S.C. § 7410(*l*). EPA follows the same notice-and-comment process for SIP revision as for original SIP submittals. 42 U.S.C. § 7410(k). As a matter of federal law, the revised SIP does not take effect unless and until it has been approved by EPA, and the previously approved SIP remains in effect and federally enforceable unless and until the revised SIP is approved. *Id.*; *see Gen. Motors Corp. v. United States,* 496 U.S. 530, 540 (1990).

20.    For States with areas designated as nonattainment for any NAAQS, the Clean Air Act sets forth additional requirements that must be addressed in the SIP. *See* 42 U.S.C.

§§ 7410(a)(2)(I), 7501-7510, 7515. The Clean Air Act also includes additional specific requirements for ozone nonattainment areas that must be addressed in the SIP. *See* 42 U.S.C. §§ 7511-7511f. These ozone specific requirements include classifying the nonattainment area as either marginal, moderate, serious, severe, or extreme depending on the severity of ozone concentrations in the ambient air in the area. 42 U.S.C. § 7511. The Clean Air Act requires increasingly more stringent requirements in a SIP depending on the ozone nonattainment area's classification. *See* 42 U.S.C. § 7511a(a) (SIP requirements for marginal ozone nonattainment areas); *id.* § 7511a(b) (SIP requirements for moderate ozone nonattainment areas); *id.* 7511a(c) (SIP requirements for serious ozone nonattainment areas); § 7511a(d) (SIP requirements for severe ozone nonattainment areas); *id.* § 7511a(e) (SIP requirements for extreme ozone nonattainment areas).

21. Several provisions of the Clean Air Act require States with ozone nonattainment areas to develop I/M programs that mitigate ambient ozone levels by reducing emissions of ozone precursors from motor vehicles. For moderate ozone nonattainment areas, the SIP must include a "basic" I/M program. 42 U.S.C. § 7511a(b)(4). For ozone nonattainment areas classified as serious or worse, a State's SIP must include an "enhanced" I/M program for vehicles registered in each urbanized area with a 1980 population of 200,000 or more. 42 U.S.C. § 7511a(c)(3).

22. In general, I/M programs reduce emissions of ozone precursors by requiring the periodic testing of emissions from cars and trucks and the repair of vehicles that exceed emissions standards. *See* EPA, Office of Transportation and Air Quality, Overview of Vehicle Inspection and Maintenance (I/M) Programs, EPA-420-F-21-067 (Oct. 2021), available at https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1013CC0.pdf.

23.   Volatile organic compounds ("VOC") and nitrogen oxides ("NOx") are precursors of ground-level ozone. *West Virginia v. EPA*, 362 F.3d 861, 865 (D.C. Cir. 2004). According to EPA's latest Air Pollutant Emissions Trends Data for 2024, highway vehicles contribute the most NOx emissions of any Tier 1 category in the State of New Hampshire, accounting for 31.00 percent of all NOx emissions, and highway vehicles contribute the fourth highest VOC emissions of any Tier 1 category in the State, accounting for 11.84 percent of all VOC emission in the State. EPA, Air Pollutant Emissions Trends Data, available at http://www.epa.gov/air-emissions-inventories/air-pollutant-emissions-trends-data (containing link to spreadsheet entitled "State Tier 1 CAPS Trends (xlsx)" that contains "Criteria pollutants State Tier 1 for 1990-2024").[4]

24.   Enhanced I/M programs are estimated to achieve between 14 to 28 percent reductions in light-duty vehicle hydrocarbon (HC) exhaust emissions. Douglas S. Eisinger, *Evaluating Inspection and Maintenance Programs: A Policy-Making Framework*, 55 J. AIR & WASTE MANAGE. ASSOC. 147, 153 (Feb. 2005), https://doi.org/10.1080/10473289.2005.10464609 (click "View PDF"). One study by a member of the Ozone Transport Region showed its I/M program provides nearly 50% VOC reductions and 40% NOx reductions from vehicles. *See* DC Department of Energy and Environment, Monitoring and Assessment Branch, Air Quality Division, *District of Columbia's Vehicle Emissions Inspection and Maintenance (I/M) Program*, https://www.mwcog.org/file.aspx?&A=S8MCCSAYA%2Fv6qY69TWyusS8GqTqxkTIDCWzV

---

[4] This EPA spreadsheet contains emissions data for the years 1990 through 2024 for nine different pollutants, including NOx and VOC, for 16 different Tier 1 categories in all 50 states, the District of Columbia, and a variety of U.S. territories. To aid the Court, a printout of the information related only to 2024 NOx and VOC emissions for the 16 different Tier 1 categories in New Hampshire is attached to this Complaint as Exhibit 2. The only changes made to the printout from the EPA spreadsheet (other than excluding other years, states, and pollutants) is to highlight the row for Highway Vehicles in bold and to add to the spreadsheet the total 2024 NOx and VOC emissions for New Hampshire (also in bold type).

KAQxGfs%3D. These types of programs therefore deliver substantial public health and environmental benefits, both in the states in which they are implemented and in downwind states.

25.  I/M programs also provide economic benefits to the American public, including fuel economy savings (e.g., by identifying malfunctioning oxygen sensors, misfires, or evaporative leaks) and consumer protection (e.g., by identifying costly engine faults early, before they lead to more expensive repairs or premature vehicle failure).

26.  All of Stafford County and portions of Rockingham County in New Hampshire were formerly designated as part of the Portsmouth-Dover-Rochester serious nonattainment area for the 1979 one-hour ozone NAAQS. 56 Fed. Reg. 56,694, 56,800 (Nov. 6, 1991). The Portsmouth-Dover-Rochester serious nonattainment area met the criteria of 42 U.S.C. § 7511a(c)(3) regarding population, and New Hampshire is therefore required to include an "enhanced" I/M program in its SIP to cover vehicles registered in this area.

27.  Portions of Hillsborough County and Rockingham County in New Hampshire were also formerly designated as part of the Boston-Lawrence-Worcester serious nonattainment area for the 1979 one-hour ozone NAAQS. 56 Fed. Reg. at 56,799. The Boston-Lawrence-Worcester serious nonattainment area met the criteria of 42 U.S.C. § 7511a(c)(3) regarding population, and New Hampshire is therefore required to include an "enhanced" I/M program in its SIP to cover vehicles registered in this area.

28.  Portions of Hillsborough, Merrimack, Rockingham, and Strafford counties in New Hampshire were formerly designated as part of the Boston-Manchester-Portsmouth (SE) moderate nonattainment area for the 1997 eight-hour ozone NAAQS. 69 Fed. Reg. 23,858, 23,920 (Apr. 30, 2004). New Hampshire is therefore required to include a "basic" I/M program in its SIP to cover vehicles registered in this area.

29. Congress also has explicitly designated New Hampshire as part of a multistate ozone transport region (OTR) subject to additional emission control requirements to address the interstate transport of pollutants. 42 U.S.C. § 7511c(a). To reduce emissions of ozone precursors in OTR states, the Clean Air Act requires each state in the OTR (including New Hampshire) to adopt an enhanced I/M program for each metropolitan statistical area with a population of 100,000 or more. 42 U.S.C. § 7511c(b)(1)(A).

30. Pursuant to these statutory requirements, New Hampshire adopted (and EPA approved) an enhanced I/M program that is incorporated into New Hampshire's federally enforceable SIP. *See* 40 C.F.R. § 52.1520(c) (listing Saf-C 3200 covering Official Motor Vehicle Inspection Requirements and Saf-C 5800 covering Roadside Diesel Opacity Inspection as EPA-approved New Hampshire regulations).

31. EPA first approved an I/M program as part of New Hampshire's SIP on January 10, 2001. 66 Fed. Reg. 1868 (Jan. 10, 2001).

32. New Hampshire subsequently amended its I/M program to address changes in EPA's I/M regulations establishing the minimum requirements for these programs. In 2011, NHDES submitted a SIP revision to EPA reflecting these amendments to the state's vehicle I/M program. EPA approved New Hampshire's 2011 SIP revision on January 25, 2013. 78 Fed. Reg. 5292 (Jan. 25, 2013).

33. As set forth in the 2011 SIP revision, the state's I/M program primarily consists of three components: (1) annual on-board diagnostic ("OBD") testing for eligible light-duty vehicles; (2) an enhanced safety inspection; and (3) a roadside diesel opacity testing program for eligible heavy-duty vehicles. State of New Hampshire, Motor Vehicle Inspection and Maintenance State

Implementation Plan Revision at 7 (Nov. 1, 2011), Doc. No. EPA-R01-OAR-2012-0149-0005 (hereinafter "2011 N.H. SIP Revision").

34.    Under current regulations, OBD testing is required for light-duty vehicles and light-duty trucks that are less than 20 model years old. N.H. Admin. Code Saf-C 3222.01. The enhanced safety inspection is required for all vehicles less than 20 model years old. N.H. Admin. Code Saf-C 3220.

35.    New Hampshire has subsequently submitted, and EPA has approved, additional revisions to the state's SIP reflecting updates to the regulations promulgated by NHDOS implementing the I/M program and codified at Chapter Saf-C 3200 and Chapter Saf-C 5800 of the New Hampshire Administrative Code. EPA has approved and incorporated the entirety of Chapters Saf-C 3200 and Saf-C 5800 by reference into the Code of Federal Regulations, with the exception of isolated provisions governing state enforcement provisions and administrative fines. 89 Fed. Reg. 33,232, 33,233 (Apr. 29, 2024) (Saf-C 3200); 78 Fed. Reg. at 5293 (Saf-C 5800); 40 C.F.R. § 52.1520(c).

36.    New Hampshire's I/M program is carried out through a network of licensed inspection stations. The NHDOS Division of Motor Vehicles is responsible for licensing inspection stations and for certifying authorized mechanics to conduct inspections. *See* N.H. Admin. Code Saf-C 3205. At present, there are over 1,500 licensed inspection stations in New Hampshire.

37.    New Hampshire's I/M program relies on a sticker-based enforcement system. Upon passing the required inspection, the vehicle owner receives a windshield sticker indicating the month and year through which the vehicle inspection is valid. The driver of a vehicle with a missing or invalid sticker is subject to penalties including fines, suspension of the driver's

license and the vehicle's registration, and a bench warrant for the driver's arrest. *See* 2011 N.H. SIP Revision at 17.

38. New Hampshire's I/M program relies on the services of a vendor contracted by NHDOS to administer and support the program. Licensed inspection stations must have contractual agreements with a vendor selected by NHDOS. The vendor is responsible for supplying participating inspection stations with OBD testing hardware, software, technical support, and training on New Hampshire's computerized testing and reporting system, as well as the physical stickers used to demonstrate compliance with inspection requirements. The vendor also performs data quality checks, maintains databases of inspection data and a tracking process for security and integrity of inspection stickers, and supports New Hampshire's auditing and data reporting requirements. *See* 2011 N.H. SIP Revision at 11-12, 15, 16, 18-23.

39. Since 2004, Gordon-Darby NHOST Services, Inc. has served as the vendor selected by NHDOS to carry out I/M program support functions. The most recent contract between NHDOS and Gordon-Darby NHOST Services, Inc., was initially approved in March 2019 for a period running through December 31, 2024. That contract was subsequently extended to an end date of December 31, 2026.

40. Despite the explicit requirements of the Clean Air Act, EPA's regulations, and New Hampshire's SIP, in June 2025 the New Hampshire General Court enacted legislation as part of House Bill 2 ("HB2") purporting to eliminate the State's federally approved I/M program. 2025 N.H. Laws Ch. 141, §§ 141:244-141:256.

41. HB2 repealed the key statutory provisions that underlie New Hampshire's I/M regulations and that were incorporated into New Hampshire's SIP.

42. The provisions of HB2 repealing the statutory authorities underlying New Hampshire's I/M program take effect on January 31, 2026, regardless of whether EPA has approved a SIP revision altering or eliminating New Hampshire's I/M program by that date. 2025 N.H. Laws Ch. 141, § 141:254.

43. To date, New Hampshire has not submitted a revised SIP to EPA seeking to remove the I/M program from the state's SIP. Likewise, EPA has not taken any action approving a SIP revision that removes the I/M program from New Hampshire's SIP.

44. Accordingly, New Hampshire's I/M program remains in effect and federally enforceable as part of its SIP.

45. In the event that New Hampshire submits a SIP revision to EPA seeking to remove the I/M program from the state's SIP, EPA would be unable to approve such a submittal because New Hampshire is required to maintain an I/M program by virtue of its inclusion in the OTR. 42 U.S.C. §§ 7511c(a), 7511c(b)(1)(A).

46. NHDOS and NHDES have taken steps to cease implementation of the I/M program effective January 31, 2026. In public pronouncements on the website for the New Hampshire Division of Motor Vehicles, NHDOS has informed the public that it will cease administering and enforcing the I/M requirements for both mandatory annual safety inspections and emissions/on-board diagnostics testing as of January 31, 2026. New Hampshire Department of Motor Vehicles, a division of NHDOS, Inspections & Emissions, https://www.dmv.nh.gov/vehicles-boats-and-titles/inspections-emissions.

47. Additionally, on September 16, 2025, NHDOS sent a letter to Gordon-Darby NHOST Services, Inc. giving notice of its intent to terminate the state's contract for services related to the I/M program. Letter from Robert L. Quinn, Commissioner, NHDOS, to Robert Tefft, President,

Gordon Darby NHOST Services, Inc. (Sept. 16, 2025) (attached to this Complaint as Exhibit 3). In that letter, NHDOS asserted that "[i]n practice, on January 31, 2026, registered vehicles in New Hampshire will no longer be required to have annual safety inspections or OBD testing" and terminated its contract with Gordon-Darby effective as of January 31, 2026.

48.   The Commissioners' actions to date have already caused a reduction in compliance with the state's I/M program. A comparison of inspection data from 2019 through 2025 demonstrates that the number of vehicle inspections conducted in New Hampshire has fallen substantially from historical norms. In July, August, and September of 2025, the total number of inspections conducted across all vehicle types was 10 percent, 17 percent, and 16 percent below 2024 levels for the same months, respectively. The decrease in inspections spiked further in the weeks after NHDOS clarified to the public on its website that it would cease enforcing inspection requirements, with inspections in October 2025 falling 24 percent behind October 2024 levels and inspections in November 2025 falling 33 percent behind November 2024 levels.

49.   NHDOS and NHDES are required under the state statutes and regulations that are incorporated into the Code of Federal Regulations by reference to take specific actions. These requirements include, but are not limited to, obligations to: provide necessary enforcement resources for state troopers; issue certificates of appointment and approval cards for inspection stations and mechanics that meet regulatory requirements; provide mechanic training sessions; provide counter service for inspection sticker purchases and to accept the return of unused stickers; to report tampering to EPA; to act on waiver applications; and to maintain a "contracted vendor" for the automated safety/emissions inspection program. *See* N.H. RSA § 266:1-a(II); N.H. Admin. Code §§ Saf-C 3202.05-06, Saf-C 3205.03, Saf-C 3205.10, Saf-C 3209.02(a), Saf-C 3222.04(c), Saf-C 3222.08(g)-(h), Saf-C 3222.09(g)-(h), Saf-C 3209.01(d).

50. NHDOS and NHDES have failed and are failing to take these specific actions and to implement the federally enforceable I/M program in New Hampshire.

51. Defendants are in violation of the federally enforceable SIP's requirements for implementation of the enhanced I/M program in New Hampshire.

### CLAIM FOR RELIEF

### COUNT I – VIOLATION OF EMISSION STANDARDS OR LIMITATIONS

52. Plaintiff hereby incorporates by reference the allegations of all preceding paragraphs.

53. Gordon-Darby is a "person" within the meaning of 42 U.S.C. § 7604(a).

54. The I/M requirements of New Hampshire's federally approved SIP constitute an "emission standard or limitation under this chapter" within the meaning of 42 U.S.C. § 7604(a)(1) and (f)(3).

55. For these reasons, Defendants have violated, and are in violation of, "emission standards or limitations" within the meaning of 42 U.S.C. § 7604(a)(1) and (f). Plaintiffs are informed and believe that such violations will continue unless enjoined by order of this Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendants have violated and are in violation of "emission standards or limitations" within the meaning of 42 U.S.C. § 7604(a)(1) and (f);

(2) Declare that HB2 is preempted under the Supremacy Clause of the United States Constitution to the extent that it conflicts with New Hampshire's federally approved SIP;

(3) Order Defendants to fully and expeditiously implement, administer, maintain, and enforce the I/M program required by the New Hampshire SIP;

(4) Award Plaintiff its costs and reasonable attorney and expert witness fees;

(5) Retain jurisdiction over this action to ensure compliance with the Court's decree; and

(6) Grant such other relief as the Court deems just and proper.

Dated: December 8, 2025    Respectfully submitted,

           GORDON-DARBY HOLDINGS, INC.,

           By and through it attorneys,

           /s/ *Amy Manzelli*
           Amy Manzelli (NH Bar No. 17128)
           BCM Environmental & Land Law, PLLC
           3 Maple Street
           Concord, NH 03301
           (603) 225-2585
           manzelli@nhlandlaw.com

           Allison D. Wood (DC Bar No. 466928)
           Andrew D. Knudsen (DC Bar No. 1019697)
           Makram B. Jaber (DC Bar No. 458718)
           Kirsten M. Bahnson (DC Bar No. 90028947)
           MCGUIREWOODS LLP
           888 16th Street, N.W., Suite 500
           Washington, D.C. 20006
           (202) 857-1700
           awood@mcguirewoods.com
           aknudsen@mcguirewoods.com
           mjaber@mcguirewoods.com
           kbahnson@mcguirewoods.com
           (*Applications for Pro Hac Vice Admission Pending*)

           *Counsel for Plaintiff Gordon-Darby Holdings, Inc.*

# EXHIBIT 1

**McGuireWoods**

McGuireWoods LLP
888 16th Street N.W.
Suite 500
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

Allison D. Wood
Direct: 202.857.2420
awood@mcguirewoods.com
Fax: 202.828.3354

Andrew D. Knudsen
Direct: 202.857.2443
aknudsen@mcguirewoods.com
Fax: 202.828.3344

October 7, 2025

**Via Certified Mail and Electronic Mail**

Robert L. Quinn
Commissioner
New Hampshire Department of Safety
33 Hazen Drive
Concord, NH 03305
nhdos@dos.nh.gov

Robert R. Scott
Commissioner
New Hampshire Department of Environmental Services
29 Hazen Drive
Concord, NH 03302
robert.scott@des.nh.gov

**Re:    Notice of Intent to Commence Civil Action Pursuant to Clean Air Act Section 304**

Dear Commissioner Quinn and Commissioner Scott:

I am writing on behalf of Gordon-Darby Holdings, Inc. ("Gordon-Darby") to provide notice of Gordon-Darby's intent to commence a civil action against you under Section 304(a)(1) of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(1), for violations of emission standards or limitations under the CAA and New Hampshire's federally approved state implementation plan ("SIP"). Pursuant to CAA Section 304(b)(1), 42 U.S.C. § 7604(b)(1), and 40 C.F.R. § 54.2, a copy of this notice is also being sent to Governor Kelly Ayotte, Administrator Lee Zeldin of the U.S. Environmental Protection Agency ("EPA"), and Regional Administrator Mark Sanborn of EPA Region 1.

Since 2004, Gordon-Darby's subsidiary, Gordon-Darby NHOST Services, Inc., has served as the New Hampshire Department of Safety's ("NHDOS") contractor retained to provide services essential to implementation of the emissions inspection requirements of New Hampshire's vehicle inspection and maintenance ("I/M") program. Gordon-Darby values its professional relationship with NHDOS and is proud of the parties' cooperative efforts to date to fulfill all applicable requirements of New Hampshire's SIP. Regrettably, NHDOS and the New Hampshire Department of Environmental Services ("NHDES") have now made clear that they

Commissioner Robert L. Quinn
Commissioner Robert R. Scott
October 7, 2025
Page 2

will no longer enforce or implement the I/M program effective January 31, 2026, and have already taken steps to effectuate this. In light of the decision by NHDOS and NHDES to cease implementation of the I/M program and to take steps to dismantle the I/M program in direct contravention of their federal obligations under the CAA and New Hampshire's SIP, this letter serves as notice of Gordon-Darby's intent to commence a civil action under Section 304(a)(1) of the CAA, 42 U.S.C. § 7604(a)(1). If NHDOS and NHDES do not take immediate action to resume implementation of the I/M program and continue such implementation until EPA approves a revised SIP altering that program, Gordon-Darby intends to file suit against Commissioner Quinn and Commissioner Scott seeking declaratory and injunctive relief to compel compliance with the requirements of New Hampshire's SIP.

## I.      Persons Giving Notice

This notice is being sent on behalf of Gordon-Darby Holdings, Inc.., a corporation duly incorporated and in good standing in the State of Delaware. Gordon-Darby Holdings, Inc. is the sole owner of Gordon-Darby NHOST Services, Inc. Its registered agent is CSC, located at 251 Little Falls Drive, Wilmington, DE 19808. For purposes of this notice letter, Gordon-Darby Holdings, Inc. may be contacted through its counsel at:

> Allison D. Wood
> Andrew D. Knudsen
> McGuireWoods LLP
> 888 16th Street N.W., Suite 500
> Washington, DC 20006
> (202) 857-2420
> awood@mcguirewoods.com
> aknudsen@mcguirewoods.com

## II.      Persons Receiving Notice

This notice is being sent to all of the parties for whom service is required under CAA Section 304(b)(1)(A), 42 U.S.C. § 7604(b)(1)(A), and 40 C.F.R. § 54.2.

Specifically, pursuant to 40 C.F.R. § 54.2(a), this notice is being sent by certified mail to EPA Administrator Lee Zeldin. Because this notice relates to violation of an emission standard or limitation in New Hampshire, a copy of this notice is also being mailed to Regional Administrator Mark Sanborn of EPA Region 1.

Pursuant to 40 C.F.R. § 54.2(b), this notice is being sent by certified mail to Commissioner Robert R. Scott as the authorized representative of the state agency charged with responsibility for air pollution control in New Hampshire, with a copy mailed to New Hampshire Governor Kelly Ayotte.

Commissioner Robert L. Quinn
Commissioner Robert R. Scott
October 7, 2025
Page 3

      Finally, pursuant to 40 C.F.R. § 54.2(c), notice is being given to the alleged violators by certified mail addressed to NHDOS Commissioner Robert L. Quinn and NHDES Commissioner Robert R. Scott.

**III.    Basis for Notice**

      Gordon-Darby is giving notice of its intent to sue NHDOS Commissioner Robert L. Quinn and NHDES Commissioner Robert R. Scott under Section 304(a)(1) of the CAA for violations of "an emission standard or limitation under" the CAA.[1] Specifically, under the direction and supervision of Commissioners Quinn and Scott, NHDOS and NHDES have publicly confirmed that they will cease implementing and enforcing the I/M program set forth in New Hampshire's federally-approved SIP and have already taken steps to effectuate the cessation of that I/M program. Through these actions, NHDOS and NHDES are currently in violation of numerous "condition[s] or requirement[s] under [New Hampshire's] applicable implementation plan relating to … vehicle inspection and maintenance programs," and will remain in violation until NHDOS and NHDES resume implementation and enforcement of the I/M program.[2]

      Multiple provisions of the CAA require New Hampshire to implement an enhanced vehicle I/M program in portions of the state. First, under Section 182(c)(3) of the CAA, a state's SIP must include an enhanced I/M program for any "serious" nonattainment areas for the ozone national ambient air quality standards ("NAAQS") with a 1980 population of 200,000 or more.[3] Portions of Hillsborough and Rockingham counties in New Hampshire were formerly designated as part of a serious nonattainment area for the 1979 one-hour ozone NAAQS and otherwise fit the criteria of Section 182(c).

      Second, Congress explicitly included New Hampshire in the Ozone Transport Region ("OTR") established in CAA Section 184.[4] As a member of the OTR, New Hampshire is obligated to maintain an enhanced vehicle I/M program in its SIP that applies to each metropolitan statistical area in the state with a population of 100,000 or more.[5]

      In light of these statutory requirements, New Hampshire has adopted (and EPA has approved) an enhanced vehicle I/M program into its federally enforceable SIP.[6] New Hampshire's vehicle I/M program was first formalized in 1998, when New Hampshire and EPA

---

[1] 42 U.S.C. § 7604(a)(1).

[2] *Id.* § 7604(f)(3).

[3] *Id.* § 7511a(c)(3).

[4] *Id.* § 7511c(a).

[5] *Id.* § 7511c(b)(1)(A).

[6] 40 C.F.R. § 52.1520.

Commissioner Robert L. Quinn
Commissioner Robert R. Scott
October 7, 2025
Page 4

reached an agreement regarding the contours of a decentralized I/M program with statewide applicability. NHDES submitted a SIP revision to EPA presenting the I/M program for approval on September 4, 1998, and EPA formally approved the program as part of New Hampshire's SIP on January 10, 2001.[7]

In 2011, NHDES submitted a SIP revision to EPA reflecting various amendments to the state's vehicle I/M program, including the incorporation of an On-Board Diagnostics ("OBD II") inspection program.[8] As described by NHDES, the state's I/M program primarily consists of three components: (1) annual OBD II testing for model year 1996 and newer light-duty gasoline vehicles and for model year 1997 and newer light-duty diesel vehicles, up to 8,500 pounds gross vehicle weight rating; (2) an enhanced safety inspection for vehicles less than 20 years old; and (3) a roadside diesel opacity testing program.[9] The 2011 SIP Revision set forth the specific program elements and supporting statutory and regulatory authority necessary to satisfy the EPA's regulations at 40 C.F.R. Part 51, Subpart S establishing the requirements for state I/M programs, including but not limited to: the type of program; applicability requirements; adequacy of funding and personnel; testing equipment; quality control and program evaluation requirements; provisions for requiring and enforcing compliance by motorists, inspectors and inspection stations; data collection and reporting; and inspector training and certification.[10]

EPA approved the 2011 SIP Revision on January 25, 2013, and that submission (including the narrative and statutory and regulatory authorities cited therein) was incorporated into New Hampshire's SIP as a matter of federal law.[11] Since that time, EPA has subsequently approved additional updates to the state's SIP reflecting updates to NHDOS regulations at Chapter Saf-C 3200 implementing the I/M program. Most recently, EPA approved a SIP revision on April 25, 2024, incorporating the entirety of Chapter Saf-C 3200 by reference into the Code of Federal Regulations, with the exception of isolated provisions governing state enforcement provisions.[12]

Despite the explicit requirements of the CAA, EPA's regulations, and New Hampshire's SIP, in June 2025 the New Hampshire General Court enacted legislation as part of House Bill 2

---

[7] 66 Fed. Reg. 1868 (Jan. 10, 2001).

[8] *See* NHDES, "State of New Hampshire: Motor vehicle Inspection and Maintenance State Implementation Plan Revision" (Nov. 1, 2011), available at https://www.regulations.gov/document/EPA-R01-OAR-2012-0149-0005 ("2011 SIP Revision").

[9] *Id.* at 7.

[10] *Id.* at 7-23; *see* 40 C.F.R. §§ 51.350-373.

[11] 78 Fed. Reg. 5292 (Jan. 25, 2013); 40 C.F.R. § 52.1520(e) (identifying "SIP Narrative associated with New Hampshire Vehicle Inspection and Maintenance Program SIP Revision" as part of state's SIP).

[12] 89 Fed. Reg. 33,232 (Apr. 29, 2024); 40 C.F.R. § 52.1520(c).

Commissioner Robert L. Quinn
Commissioner Robert R. Scott
October 7, 2025
Page 5

("HB2") purporting to eliminate the state's federally approved I/M program.[13] HB2 repealed the key statutory provisions that underlie New Hampshire's I/M regulations at Chapter Saf-C 3200 and that were incorporated into New Hampshire's SIP. These include the provisions authorizing NHDOS to require motor vehicle inspections and establishing the frequency and timing of such inspections,[14] establishing the fee for inspection stickers,[15] providing for enforcement against motorists and inspection stations,[16] and specifying inspection requirements for emission control equipment.[17] HB2 also abolished the funding source for the motor vehicle air pollution abatement fund administered by NHDES, which is used to help fund administration of the SIP's I/M program.[18]

HB2 purports to eliminate the state's I/M program without first obtaining EPA approval of a revised SIP. The legislation does require NHDES to submit "an amendment to the state implementation plan to alter the emissions testing program consistent with" HB2 to EPA within 180 days.[19] But each of HB2's repeal provisions take effect regardless of whether EPA approves or disapproves that submission.[20] And in any event, EPA *cannot* approve a revised SIP that eliminates New Hampshire's I/M program as set forth in HB2. As discussed above, the plain terms of the CAA explicitly require New Hampshire to include such a program in the state's SIP.[21]

EPA has already warned New Hampshire that HB2's repeal of the I/M program is impermissible under the CAA. By letter dated April 25, 2025, EPA Regional Administrator Mark Sanborn responded to a request from NHDES for technical assistance related to the draft repeal legislation that would later be largely incorporated into HB2.[22] That letter spelled out the applicable provisions of federal law and stated in no uncertain terms that "[i]f this legislation passes, New Hampshire will not meet the CAA requirements for I/M programs." Moreover, Regional Administrator Sanborn explained that if New Hampshire were to carry out the I/M program repeal called for by HB2, it would expose the state to a potential finding by EPA that

---

[13] 2025 N.H. Laws Ch. 141, §§ 141:244-141:256.

[14] *Id.* § 141:253(IV) (repealing N.H. Rev. Stat. Ann. § 266:1).

[15] *Id.* § 141:253(VII) (repealing N.H. Rev. Stat. Ann. § 266:2).

[16] *Id.* § 141:253(III, V) (repealing N.H. Rev. Stat. Ann. §§ 260:6-b, 266:1-a).

[17] *Id.* § 141:253(XIV) (repealing N.H. Rev. Stat. Ann. § 266:59-b).

[18] *Id.* § 141:253(I) (repealing N.H. Rev. Stat. Ann. § 125-S:4); *see* 2011 SIP Revision at 12.

[19] 2025 N.H. Laws Ch. 141, § 141:254.

[20] *Id.* § 141:256.

[21] *See* 42 U.S.C. §§ 7511a(c)(3), 7511c(a), (b)(1)(A).

[22] Letter from Mark Sanborn, Regional Adm'r, EPA Region 1, to Robert Scott, Commissioner, NHDES (Apr. 25, 2025) (attached as Exhibit 1).

Commissioner Robert L. Quinn
Commissioner Robert R. Scott
October 7, 2025
Page 6

the I/M requirements of New Hampshire's SIP are "not being implemented" under CAA Section 179(a)(4), 42 U.S.C. § 7509(a)(4). Such a finding would expose New Hampshire to imposition of sanctions, including loss of federal highway funding and additional emission offset requirements.

Indeed, NHDES itself has independently recognized that repeal of the state's I/M program is inconsistent with the CAA. By letter dated February 10, 2025, Commissioner Scott advised the members of the Transportation Committee of the state's I/M obligations under federal law.[23] Commissioner Scott warned the Committee that "[s]hould New Hampshire repeal or even alter the program requirements without obtaining EPA approval it could, if not rectified, subject the state to federal sanctions[] up to and including loss of federal highway funds as provided under the CAA."[24] The letter also noted that EPA could take enforcement action or impose more stringent I/M requirements on the state.[25] Presciently, Commissioner Scott even emphasized the potential for "citizen lawsuits under CAA section 304" of the kind that Gordon-Darby is serving notice of here.[26]

The well-founded legal concerns expressed in the letters from EPA and NHDES reflect the basic principle that as a matter of federal law, New Hampshire cannot unilaterally repeal its I/M program once it has been incorporated into a federally approved SIP. The Supremacy Clause of the United States Constitution establishes that federal law is the supreme law of the land and preempts any conflicting provisions of state law.[27] Under the CAA, once EPA approves a state's SIP, the provisions of that SIP are incorporated into federal law and become federally enforceable.[28] Crucially, it is the version *submitted to and approved by EPA* that applies as federal law, regardless of whether the state subsequently amends or repeals the state laws or regulations underlying its SIP.[29] Even where the state has submitted a revised SIP for review by EPA, the approved version of the SIP remains in effect and federally enforceable unless and until EPA approves the revision.[30] Accordingly, notwithstanding enactment of HB2, the I/M

---

[23] Letter from Robert R. Scott, Commissioner, NHDES, to Thomas Walsh, Chair, Transportation Committee (Feb. 10, 2025) (attached as Exhibit 2).

[24] *Id.* at 2.

[25] *Id.*

[26] *Id.* at 3 (footnote omitted).

[27] U.S. Const. art. VI, cl. 2.

[28] *See, e.g.*, *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705 (E.D. Penn. 2002).

[29] *General Motors Corp. v. United States*, 496 U.S. 530 (1990); *Sweat v. Hull*, 200 F. Supp. 2d 1162 (D. Ariz. 2001).

[30] As discussed above, EPA cannot approve a SIP revision for New Hampshire that removes the enhanced vehicle I/M program because the CAA requires New Hampshire to have such a program as part of its SIP. *See* 42 U.S.C. §§ 7511a(c)(3), 7511c(a), (b)(1)(A).

Commissioner Robert L. Quinn
Commissioner Robert R. Scott
October 7, 2025
Page 7

requirements of New Hampshire's federally-approved SIP continue to apply as a matter of federal law.

Nonetheless, NHDOS and NHDES have taken steps to cease implementation of the I/M program effective January 31, 2026. In public pronouncements on the website for the New Hampshire Division of Motor Vehicles, NHDOS has informed the public that it will cease administering and enforcing the I/M requirements for both mandatory annual safety inspections and emissions/on-board diagnostics testing as of January 31, 2026.[31] Additionally, on September 16, 2025, NHDOS sent a letter to Gordon-Darby NHOST Services, Inc. giving notice of its intent to terminate the state's contract for services related to the I/M program.[32] In that letter, NHDOS asserted that "[i]n practice, on January 31, 2026, registered vehicles in New Hampshire will no longer be required to have annual safety inspections or OBD testing" and terminated its contract with Gordon-Darby effective as of January 31, 2026.

This decision by NHDOS and NHDES to cease carrying out a required component of New Hampshire's federally approved SIP, prior to approval of a revised SIP by EPA, is in direct violation of the state's obligations under federal law. The agencies' violations are occurring where NHDOS and NHDES conduct business in Concord, New Hampshire, and commenced no later than September 16, 2025, the date on which NHDOS notified Gordon-Darby NHOST Services, Inc., of the termination of its contract for services related to the I/M program. NHDOS and NHDES will remain in violation until they resume implementing and enforcing that program. This violation is actionable under CAA Section 304(a)(1) as a violation of an "emission standard or limitation" under the CAA.

In particular, this includes violations of the agencies' obligations to administer and enforce the I/M program set forth in the EPA-approved SIP. These obligations are reflected most prominently in the NHDES Commissioner's duty to "[c]arr[y] out a program of inspection and testing of all modes of transportation."[33] They are also reflected in the duties and obligations assigned to the Commissioner of NHDOS under the numerous statutes and regulations he is charged with administering in connection with the I/M program. Each of these statutes and regulations are incorporated in the state's SIP and, having been approved by EPA under the CAA, remain in effect as a matter of federal law notwithstanding the enactment of HB2.

Additionally, the actions of NHDOS and NHDES violate numerous requirements of the state statutes and regulations that are incorporated into the Code of Federal Regulations by reference and that require specific actions be taken by those agencies. These requirements

---

[31] New Hampshire Department of Motor Vehicles, a division of NHDOS, Inspections & Emissions, https://www.dmv.nh.gov/vehicles-boats-and-titles/inspections-emissions.

[32] Letter from Robert L. Quinn, Commissioner, NHDOS, to Robert Tefft, President, Gordon-Darby NHOST Services, Inc. (Sept. 16, 2025) (attached as Exhibit 3).

[33] N.H. Rev. Stat. Ann. § 125-C:6(XII).

Commissioner Robert L. Quinn
Commissioner Robert R. Scott
October 7, 2025
Page 8

include, but are not limited to, obligations to: provide necessary enforcement resources for state troopers; issue certificates of appointment and approval cards for inspection stations and mechanics that meet regulatory requirements; provide mechanic training sessions; provide counter service for inspection sticker purchases and to accept the return of unused stickers; to report tampering to EPA; to act on waiver applications; and to maintain a "contracted vendor" for the automated safety/emissions inspection program.[34]

       As discussed above, New Hampshire is obligated to maintain an enhanced I/M program under the plain terms of the CAA, and EPA cannot approve a revised SIP that eliminates this program as set forth in HB2. But at a minimum, NHDOS and NHDES have an obligation to continue implementing and enforcing New Hampshire's federally approved I/M program unless and until EPA approves such a revised SIP. For that reason, Gordon-Darby respectfully demands that NHDOS and NHDES take immediate steps to resume implementation of the I/M program and provide for its continued implementation until such time as EPA approves a SIP providing for the amendment or repeal of that program. In the event that NHDOS and NHDES do not take such action, Gordon-Darby may, without further notice at any time after the 60th day from service of this letter, commence a civil action against Commissioner Quinn and Commissioner Scott seeking declaratory and injunctive relief to compel compliance with the requirements of New Hampshire's SIP.

       Sincerely,

Allison D. Wood
Andrew D. Knudsen
Counsel for Gordon-Darby Holdings, Inc.

cc:     (by certified mail)
       The Honorable Kelly Ayotte, Governor of the State of New Hampshire
       Lee Zeldin, Administrator, U.S. Environmental Protection Agency
       Mark Sanborn, Regional Administrator, EPA Region 1

---

[34] *See id.* § 266:1-a(II); N.H. Admin. Code §§ Saf-C 3202.05-06, Saf-C 3205.03, Saf-C 3205.10, Saf-C 3209.02(a), Saf-C 3222.04(c), Saf-C 3222.08(g)-(h), Saf-C 3222.09(g)-(h), Saf-C 3209.01(d).

# Exhibit 1



## REGION 1 ADMINISTRATOR

### BOSTON, MA 02109

April 25, 2025

**SENT VIA ELECTRONIC MAIL**

Robert Scott, Commissioner
NH Department of Environmental Services
29 Hazen Drive, PO Box 95
Concord, NH 03302-0095
Robert.Scott@des.nh.gov

RE: New Hampshire Proposed Legislation - HB649

Dear Commissioner Scott:

EPA is providing information pursuant to your request for technical assistance on recently proposed legislation in the New Hampshire State Legislature to remove the annual inspection and testing requirements from New Hampshire's motor vehicle inspection and maintenance (I/M) program; specifically, House Bill (HB) 649.[1] If the proposed legislation is finalized, New Hampshire's motor vehicle I/M program will not be consistent with the I/M requirements under the Clean Air Act (CAA) nor with the State's current federally enforceable State Implementation Plan (SIP).

The CAA, 42 U.S.C. 7401, et seq., requires certain states to implement an Enhanced I/M program to ensure that light-duty motor vehicles with excessive emissions of certain air pollutants have their emissions control systems repaired. Section 182 of the CAA contains I/M program requirements for ozone nonattainment areas, and Section 184 of the CAA includes I/M requirements for states in the Ozone Transport Region (OTR). EPA regulations at 40 CFR part 51, subpart S, implement these provisions of the Act. As a result of having areas formerly designated nonattainment for ozone, and by virtue of its inclusion in the OTR, New Hampshire has implemented vehicle testing programs under the CAA requirements since 1999.

The current SIP-approved New Hampshire I/M program requires light-duty cars and trucks to undergo an annual emissions inspection, as required by the CAA and 40 CFR part 51, subpart S.  The proposed HB 649 legislation, however, would remove this requirement. If this legislation passes, New Hampshire will not meet the CAA requirements for I/M programs.

---

[1] Proposed legislation can be accessed online at https://gc.nh.gov/bill_Status/billinfo.aspx?id=205&inflect=2.

Furthermore, we would evaluate the legislation to determine whether EPA should use its authority pursuant to CAA Section 179(a)(4) to issue a finding that the CAA I/M requirements of New Hampshire's currently approved State Implementation Plan are not being implemented. Issuance of such finding could result in the imposition of the sanctions listed in CAA Section 179(b) if the deficiency is not timely corrected. If the legislation—which, as explained above, is counter to the applicable statutory and regulatory requirements for I/M and to the state's federally-enforceable SIP – is adopted as proposed, New Hampshire would have significant challenges meeting its required SIP obligations and CAA regulatory requirements.

If you or your staff have any questions regarding this issue or if we can provide input on program changes that would comply with CAA requirements, please contact Lynne Hamjian at hamjian.lynne@epa.gov or (617) 918-1601.

Sincerely,

Mark Sanborn
Regional Administrator
EPA Region 1

cc:    Jessica Wilcox, NH DES
       Mike Fitzgerald, NH DES
       Craig Wright, NH DES
       Adam Crepeau, NH DES

# Exhibit 2

The State of New Hampshire
# Department of Environmental Services



### Robert R. Scott, Commissioner

February 10, 2025

The Honorable Thomas Walsh
Chair, Transportation Committee
Legislative Office Building
Concord, NH 03301

**Re: HB 649-FN, An Act** removing the requirement for physical safety inspections and on-board diagnostic tests for passenger vehicles and eliminating funding for the motor vehicle air pollution abatement fund.

Dear Chair Walsh and Members of the Committee:

Thank you for the opportunity to comment on behalf of the New Hampshire Department of Environmental Services (NHDES) regarding HB 649-FN which seeks to eliminate the motor vehicle safety and emissions inspection and repeal the Motor Vehicle Air Pollution Abatement Fund. NHDES takes no position on this bill but provides information for consideration by the General Court relative to the emissions portion of the annual inspection. NHDES does not address safety issues in our comments.

HB 649-FN proposes to repeal fifteen (15) New Hampshire Revised Statutes Annotated (RSAs) to eliminate the New Hampshire inspection program in its entirety. Chief amongst these is RSA 266:1 which requires all vehicles to undergo an annual inspection, including the On-Board Diagnostics (OBD) inspection as applicable.

Motor vehicles in New Hampshire account for half of the air pollution that causes the formation of ground level ozone, a respiratory irritant. New Hampshire is required to have the annual vehicle emissions inspection and maintenance (I/M) program, including OBD, because portions of the state have exceeded federal air quality standards for ozone and because we are in the federally designated Ozone Transport Region (OTR). OTR states include only those in the Northeast and Mid-Atlantic region of the country, and all OTR states are committed to programs that address ozone pollution, including vehicle emissions inspections.

Vehicle I/M programs, including New Hampshire's OBD inspection pursuant to RSA 266:59-b, paragraph III, are a proven way to reduce emissions from motor vehicles. NH's current program is the result of lengthy negotiations and settlement with EPA, by then Representative Jeb Bradley in his position as Chair of the House Science, Technology and Energy Committee, to avoid a more onerous and expensive tailpipe testing requirement.

The Honorable Thomas Walsh
Chair, House Transportation Committee
February 10, 2025

The federal Clean Air Act (CAA) requires states to submit an I/M State Implementation Plan (SIP) to the Environmental Protection Agency (EPA) defining programs that will be implemented to keep states compliant with federal air quality standards. New Hampshire's federally approved vehicle I/M SIP submittal includes authorizing statutes and state administrative rules for implementing the current I/M program. Therefore, upon approval of the SIP by EPA the current state statutes and state rules are federally enforceable and any revisions that change a requirement of the approved program will require submittal and approval of a revised SIP. In April 2024, EPA approved a revision to New Hampshire's I/M SIP that incorporated updates to Department of Safety rules. The timeline for EPA to review and act upon proposed changes to an approved SIP is generally 18 to 24 months from the date of submittal. HB 649-FN would go into effect January 1, 2026, which does not provide sufficient time to complete the process. NHDES recommends that the committee consider effective date language similar to that proposed in SB 157-FN, section 3 to allow appropriate time for EPA review and response to such an major NH SIP action.

Should New Hampshire repeal or even alter the program requirements without obtaining EPA approval it could, if not rectified, subject the state to federal sanctions[1] up to and including loss of federal highway funds as provided under the CAA[2]. However, approval is not guaranteed, and HB 649-FN does not provide for this potential.

Additionally, EPA is authorized to take enforcement action against violators of federally approved SIPs and consequentially could impose even more stringent requirements. The EPA Office of Inspector General (OIG) conducted an audit[3] on EPA's Inspection and Maintenance (I/M) Program requirements, evaluating compliance with the on-road testing requirement. Based on recommendations from the OIG audit EPA issues the March 2020 "Guidance for On-Road Testing Requirements for Enhanced Vehicle I/M Programs."[4] Any major SIP revision involving New Hampshire's I/M program could result in more burdensome requirements, and the cost to implement such requirements are indeterminate.

Further, the anti-backsliding provisions of the CAA Section 110(I) prevent EPA from approving revisions to state SIPs that would weaken or eliminate emissions controls. Therefore, any increase in emissions due to exemption of vehicles from inspection would need to be offset by corresponding reductions from other sectors. Air quality modeling would need to be developed to determine those losses, and the burden of offsetting the added emissions would most likely fall on the business sector, including industries and utilities, with the potential to affect their

---

[1] EPA Sanctions: https://www.epa.gov/air-quality-implementation-plans/status-active-sanctions-clocks-under-clean-air-act
[2] CAA Section 110(m) and Section 179(a) and (b): http://epa.gov/oar/caa/title1.html#ia
[3] OIG evaluation of EPA I/M Program: https://www.epa.gov/office-inspector-general/report-collecting-additional-performance-data-states-would-help-epa-better
[4] EPA On-Road Testing Requirements:
https://nepis.epa.gov/Exe/ZyPDF.cgi/P100YQX8.PDF?Dockey=P100YQX8.PDF

The Honorable Thomas Walsh
Chair, House Transportation Committee
February 10, 2025

consumers.  Additionally, citizen lawsuits[5] under CAA section 304 could pose unquantifiable, but potentially significant, costs for NHDES and NHDOJ to defend.

Thank you again for the opportunity to comment on HB 649-FN.  Should you have further questions or need additional information please feel free to contact Jessica Wilcox, Technical Services Bureau Administrator (603-271-6749, jessica.wilcox@des.nh.gov) with NHDES' Air Resources Division.

Sincerely,

Robert R. Scott
Commissioner

ec:     Sponsors of HB 649-FN: Representatives Granger, Osborne, Harvey-Bolia, Sirois, Sellers, and Sabourin dit Choiniere.

---

[5] Citizen Suits, CAA Section 304: https://www.epa.gov/ogc/notices-intent-sue-us-environmental-protection-agency-epa

# Exhibit 3



## State of New Hampshire

**DEPARTMENT OF SAFETY**
**OFFICE OF THE COMMISSIONER**
**33 HAZEN DR. CONCORD, N.H. 03305**
**603-271-2791**

ROBERT L. QUINN
COMMISSIONER OF SAFETY

September 16, 2025

**VIA CERTIFIED MAIL: 7022 1670 0003 0746 2731**
**and FIRST CLASS MAIL**
Mr. Robert Tefft, President
Gordon-Darby NHOST Services, Inc.
2410 Ampere Drive
Louisville, KY 40299

RE:    **Termination of Contract, G&C Item #61 on March 27, 2019, and extended by**
        **Item #5 O, as approved November 13, 2024**

Dear Mr. Tefft:

This letter is in reference to the above captioned contract between Gordon-Darby NHOST Services, Inc. and the State of New Hampshire, Department of Safety, Division of Motor Vehicles ("State"), executed and approved by Governor & Council (Item #61) on March 27, 2019  and extended by Governor and Council on November 13, 2024 (Item #5 O), referred to herein as "Agreement". The Agreement was entered into for the purpose of providing a computer-based system for all licensed New Hampshire Inspection Stations to facilitate motor vehicle safety inspections and accurate On-Board Diagnostics (OBD) testing, as required by New Hampshire laws, RSA 266:1 and RSA 266:59-b, respectively.

As you are aware, in the most recent legislative session, the Legislature has eliminated the State's motor vehicle inspection program, including OBD testing. In practice, on January 31, 2026, registered vehicles in New Hampshire will no longer be required to have annual safety inspections or OBD testing. This is 11 months short of the expiration of our Agreement.

While we have appreciated the professional partnership with Gordon-Darby NHOST Services, Inc., given the fact that the motor vehicle inspections program will soon be abolished, the State is exercising Part 2, Section 13.2 of the Agreement to Terminate For Convenience, effective January 31, 2026. Although Section 13.2 of the Agreement requires only 30-days written notice, I am sending you this notification of the State's intent to terminate the Agreement in order that we may develop a mutually agreeable work plan to wind down services, develop appropriate messaging, and discuss post-termination assistance from Gordon-Darby NHOST Services, Inc. with regards to State data.

*Mr. Robert Tefft, President*
*Gordon-Darby NHOST Services, Inc.*
*09/16/25*
*Page 2*

I would like to personally thank you for the opportunity to work with you during our contract period.

Sincerely,

Robert L. Quinn

Enclosure

Cc:     Joel Unverzagt, President
        Gordon-Darby NHOST Services, Inc.
        10 Dunklee Road, Unit 22
        Bow, NH  03304.

# EXHIBIT 2

Emissions in thousands of tons

| State FIPS | State | Tier 1 Code | Tier 1 Description | Pollutant | emissions2024 |
|---|---|---|---|---|---|
| 33 | NH | 01 | Fuel Comb. Elec. Util. | NOX | 0.864305234 |
| 33 | NH | 02 | Fuel Comb. Industrial | NOX | 0.99992049 |
| 33 | NH | 03 | Fuel Comb. Other | NOX | 4.428432762 |
| 33 | NH | 04 | Chemical & Allied Product Mfg | NOX | 0 |
| 33 | NH | 05 | Metals Processing | NOX | 0 |
| 33 | NH | 06 | Petroleum & Related Industries | NOX | |
| 33 | NH | 07 | Other Industrial Processes | NOX | 0.011811661 |
| 33 | NH | 08 | Solvent Utilization | NOX | 0 |
| 33 | NH | 09 | Storage & Transport | NOX | 0 |
| 33 | NH | 10 | Waste Disposal & Recycling | NOX | 0.776364391 |
| **33** | **NH** | **11** | **Highway Vehicles** | **NOX** | **4.980248141** |
| 33 | NH | 12 | Off-Highway | NOX | 3.960724579 |
| 33 | NH | 14 | Miscellaneous | NOX | 0.021948053 |
| 33 | NH | 15 | Wildfires | NOX | 0.001294092 |
| 33 | NH | 16 | Prescribed fires | NOX | 0.018920079 |
| | | | **Total NH NOx Emissions** | | **16.06396948** |
| | | | | | |
| 33 | NH | 01 | Fuel Comb. Elec. Util. | VOC | 0.025957364 |
| 33 | NH | 02 | Fuel Comb. Industrial | VOC | 0.05124922 |
| 33 | NH | 03 | Fuel Comb. Other | VOC | 10.47219453 |
| 33 | NH | 04 | Chemical & Allied Product Mfg | VOC | 0 |
| 33 | NH | 05 | Metals Processing | VOC | 0 |
| 33 | NH | 06 | Petroleum & Related Industries | VOC | |
| 33 | NH | 07 | Other Industrial Processes | VOC | 0.255749776 |
| 33 | NH | 08 | Solvent Utilization | VOC | 9.361710182 |
| 33 | NH | 09 | Storage & Transport | VOC | 1.048603722 |
| 33 | NH | 10 | Waste Disposal & Recycling | VOC | 1.420639417 |
| **33** | **NH** | **11** | **Highway Vehicles** | **VOC** | **4.069035283** |
| 33 | NH | 12 | Off-Highway | VOC | 6.715725189 |
| 33 | NH | 14 | Miscellaneous | VOC | 0.632366267 |
| 33 | NH | 15 | Wildfires | VOC | 0.014424089 |
| 33 | NH | 16 | Prescribed fires | VOC | 0.289216638 |
| | | | **Total NH VOC Emissions** | | **34.35687168** |

# EXHIBIT 3



# State of New Hampshire

**DEPARTMENT OF SAFETY**
**OFFICE OF THE COMMISSIONER**
**33 HAZEN DR. CONCORD, N.H. 03305**
**603-271-2791**

ROBERT L. QUINN
COMMISSIONER OF SAFETY

September 16, 2025

**VIA CERTIFIED MAIL:  7022 1670 0003 0746 2731**
**and FIRST CLASS MAIL**
Mr. Robert Tefft, President
Gordon-Darby NHOST Services, Inc.
2410 Ampere Drive
Louisville, KY 40299

**RE:    Termination of Contract, G&C Item #61 on March 27, 2019, and extended by**
**Item #5 O, as approved November 13, 2024**

Dear Mr. Tefft:

This letter is in reference to the above captioned contract between Gordon-Darby NHOST
Services, Inc. and the State of New Hampshire, Department of Safety, Division of Motor Vehicles
("State"), executed and approved by Governor & Council (Item #61) on March 27, 2019   and
extended by Governor and Council on November 13, 2024 (Item #5 O), referred to herein as
"Agreement". The Agreement was entered into for the purpose of providing a computer-based
system for all licensed New Hampshire Inspection Stations to facilitate motor vehicle safety
inspections and accurate On-Board Diagnostics (OBD) testing, as required by New Hampshire
laws, RSA 266:1 and RSA 266:59-b, respectively.

As you are aware, in the most recent legislative session, the Legislature has eliminated the State's
motor vehicle inspection program, including OBD testing. In practice, on January 31, 2026,
registered vehicles in New Hampshire will no longer be required to have annual safety inspections
or OBD testing. This is 11 months short of the expiration of our Agreement.

While we have appreciated the professional partnership with Gordon-Darby NHOST Services,
Inc., given the fact that the motor vehicle inspections program will soon be abolished, the State is
exercising Part 2, Section 13.2 of the Agreement to Terminate For Convenience, effective January
31, 2026. Although Section 13.2 of the Agreement requires only 30-days written notice, I am
sending you this notification of the State's intent to terminate the Agreement in order that we may
develop a mutually agreeable work plan to wind down services, develop appropriate messaging,
and discuss post-termination assistance from Gordon-Darby NHOST Services, Inc. with regards
to State data.

*Mr. Robert Tefft, President*
*Gordon-Darby NHOST Services, Inc.*
*09/16/25*
*Page 2*

I would like to personally thank you for the opportunity to work with you during our contract period.

Sincerely,

Robert L. Quinn

Enclosure

Cc:    Joel Unverzagt, President
       Gordon-Darby NHOST Services, Inc.
       10 Dunklee Road, Unit 22
       Bow, NH  03304.