**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| GORDON-DARBY HOLDINGS, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 25-cv-00508-AJ |
| ROBERT L. QUINN, in his official capacity as Commissioner of the New Hampshire Department of Safety, et al., | |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
<u>EXPEDITED MOTION FOR PRELIMINARY INJUNCTION</u>**

Amy Manzelli (NH Bar No. 17128)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com

Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
Makram B. Jaber (DC Bar No. 458718)
Kirsten M. Bahnson (DC Bar No. 90028947)
McGuireWoods LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com
mjaber@mcguirewoods.com
kbahnson@mcguirewoods.com
(*Applications for Pro Hac Vice Admission Pending*)

*Counsel for Plaintiff Gordon-Darby Holdings, Inc.*

December 9, 2025

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities............................................................................................................ ii

Background ......................................................................................................................... 1

    I.    The Clean Air Act Requires Certain Jurisdictions to Implement I/M Programs. .............. 1

    II.   New Hampshire Has Adopted an I/M Program in Its Federally Approved SIP.................. 3

    III.   Gordon-Darby's Subsidary Carries Out the I/M Program on the State's Behalf.......... 5

    IV.   The Commissioners Are Already Ceasing the I/M Program. ........................................ 6

        A.   New Hampshire Enacted Legislation to Repeal the I/M Program.................................. 6

        B.   The Commissioners Are Terminating the I/M Program Without EPA's Approval. ........ 7

Standard of Decision............................................................................................................ 7

Argument ............................................................................................................................ 8

    I.    Gordon-Darby Will Likely Succeed on the Merits of Its Claim. ....................................... 8

    II.   Preliminary Relief Is Necessary to Prevent Irreparable Harm to Gordon-Darby. ............ 12

    III.   The Balance of Equities and the Public Interest Strongly Favor Preliminary Relief. .. 13

Conclusion .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Citizens for Penn.'s Future v. Mallory*, No. 02-cv-798, 2002 WL 31845880 (E.D. Penn. Dec. 18, 2002) ...................................................................................................................................... 8

*Clean Air Council v. Mallory*, 226 F. Supp. 2d 705 (E.D. Penn. 2002) ........................................ 8

*General Motors Corp. v. United States*, 496 U.S. 530 (1990) ................................................... 2, 11

*Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332 (6th Cir. 1989) ............................................................................................................................. 11

*Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920 (W.D. Ky. 2004) ............................................ 8, 12

*N.H. Hosp. Ass'n v. Burwell*, No. 15-cv-460, 2016 WL 1048023 (D.N.H. Mar. 11, 2016) .......... 13

*New Hampshire v. Ramsey*, 366 F.3d 1 (1st Cir. 2004) ............................................................. 12

*Ryan v. ICE*, 974 F.3d 9 (1st Cir. 2020) ...................................................................................... 8

*Sweat v. Hull*, 200 F. Supp. 2d 1162 (D. Ariz. 2001) ............................................................. 8, 12

*Together Emps. v. Mass General Brigham Inc.*, 32 F.4th 82 (1st Cir. 2022) ................................ 8

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981) ...................................................................... 1

*Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009) .................................. 8, 13

**Statutes**

2025 N.H. Laws Ch. 141 ............................................................................................................. 6

42 U.S.C. § 7409 ........................................................................................................................ 1

42 U.S.C. § 7410(a) ................................................................................................................ 1, 2

42 U.S.C. § 7410(*l*) ................................................................................................................... 2

42 U.S.C. § 7413 ........................................................................................................................ 2

42 U.S.C. § 7511a ...................................................................................................................... 2

42 U.S.C. § 7511c ...................................................................................................................... 2

42 U.S.C. § 7511c(b) .............................................................................................................. 2, 3

42 U.S.C. § 7604 ................................................................................................. 2, 8, 10, 13

RSA § 266:1 .............................................................................................................................. 4

RSA § 266:1-a ........................................................................................................................... 4

**Other Authorities**

"State of New Hampshire: Motor Vehicle Inspection and Maintenance State Implementation Plan Revision" (Nov. 1, 2011) ........................................................................................... passim

**Regulations**

40 C.F.R. § 50.10 ...................................................................................................................... 1

40 C.F.R. § 50.15 ...................................................................................................................... 1

40 C.F.R. § 50.19 ...................................................................................................................... 1

40 C.F.R. § 50.9 ........................................................................................................................ 1

40 C.F.R. § 52.1520(c) ....................................................................................................... 3, 4, 12

40 C.F.R. § 52.1520(d) .............................................................................................................. 3

40 C.F.R. pt. 51, Subpart S ........................................................................................................ 2

N.H. Code Admin. R. Saf-C 3202.24 ........................................................................................ 5

N.H. Code Admin. R. Saf-C 3203.01 ........................................................................................ 4

N.H. Code Admin. R. Saf-C 3205 ............................................................................................. 5

N.H. Code Admin. R. Saf-C 3210.05(a) ...................................................................... 4
N.H. Code Admin. R. Saf-C 3222 .............................................................................. 4
N.H. Code Admin. R. Saf-C 3247 .............................................................................. 4

**Pleadings**
Decl. of Daniel Bennett ..............................................................................11, 14, 15
Decl. of Joel Unverzagt ................................................................................. passim

**Federal Register**
56 Fed. Reg. 56694 (Nov. 6, 1991) ........................................................................... 3
66 Fed. Reg. 1868 (Jan. 10, 2001) ............................................................................ 3
69 Fed. Reg. 23858 (Apr. 30, 2004) ......................................................................... 3
78 Fed. Reg. 5292 (Jan. 25, 2013) ............................................................................ 3
89 Fed. Reg. 33232 (Apr. 29, 2024) .................................................................... 4, 12

**<u>Memorandum in Support of Plaintiff's Motion for Preliminary Injunction</u>**

Under the federal Clean Air Act ("CAA"), the State of New Hampshire must implement and enforce a statewide motor vehicle inspection and maintenance ("I/M") program. Defendants, New Hampshire Department of Safety ("NHDOS") Commissioner Robert Quinn and New Hampshire Department of Environmental Services ("NHDES") Commissioner Robert Scott, are currently terminating that I/M program, without obtaining the necessary approval from the U.S. Environmental Protection Agency ("EPA"). Plaintiff Gordon-Darby Holdings, Inc. ("Gordon-Darby") brought this suit to compel Defendants to comply with their obligations under the CAA.

Gordon-Darby seeks a preliminary injunction to prevent Defendants from terminating New Hampshire's I/M program while this litigation proceeds. Preliminary relief is warranted here to "preserve the relative positions of the parties" and prevent Defendants from continuing to take steps to end the I/M program by January 31, 2026, which would significantly impede the parties' ability to restore the I/M program after the Court resolves the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Gordon-Darby is likely to prevail on the merits: this case involves a clear violation of Defendants' CAA obligations, and several courts have blocked similar attempts by state officials to terminate their own I/M programs. An injunction is needed to prevent irreparable harm and to protect the public's interest in maintaining a safe and clean vehicle fleet.

## BACKGROUND

### I.     The Clean Air Act Requires Certain Jurisdictions to Implement I/M Programs.

Under the CAA, EPA establishes and periodically revises national ambient air quality standards ("NAAQS") for certain pollutants, including ozone, at levels set to protect the public health and welfare. 42 U.S.C. § 7409; 40 C.F.R. §§ 50.9, 50.10, 50.15, 50.19. Each state must develop a state implementation plan ("SIP") that "provides for implementation, maintenance, and enforcement" of the NAAQS in the state. 42 U.S.C. § 7410(a)(1). A SIP must include "enforceable

1

emission limitations and other control measures … as may be necessary or appropriate to meet the" CAA's requirements, as well as "a program to provide for the enforcement of" these measures and "necessary assurances that the State … will have adequate personnel, funding, and authority under State … law to carry [them] out." *Id.* § 7410(a)(2)(A), (C), (E).

For states with areas that EPA designates as not meeting the NAAQS, known as "nonattainment areas," the CAA sets forth additional requirements that must be addressed in the SIP. *See id.* §§ 7410(a)(2)(I), 7501-7515. Several provisions of the Act require states to develop I/M programs that reduce emissions of ozone-forming pollutants from motor vehicles. For states with ozone nonattainment areas classified as "moderate" nonattainment, the SIP must include a "basic" I/M program. *Id.* § 7511a(b)(4). For nonattainment areas classified as "serious" or worse, the SIP must include a more stringent "enhanced" I/M program for vehicles registered in each urbanized area with a 1980 population of 200,000 or more. *Id.* § 7511a(c)(3) . EPA requires these I/M programs to meet certain minimum requirements. *See* 40 C.F.R. pt. 51, Subpart S.

Congress also created an "ozone transport region" ("OTR") consisting of several northeastern states, including New Hampshire, to better control the interstate transport of ozone and ozone-forming pollutants among these states. 42 U.S.C. § 7511c. The OTR states must meet additional SIP requirements, including the adoption of an enhanced I/M program for each metropolitan statistical area with a population of 100,000 or more. *Id.* § 7511c(b)(1)(A).

EPA reviews and approves states' SIPs. *Id.* § 7410(a), (k). Once approved, the SIP's contents are incorporated into federal law and are federally enforceable. *See id.* §§ 7413, 7604. If a state wants to amend its SIP, it may submit a revised SIP to EPA for review and approval, *id.* § 7410(*l*), but the state's approved SIP remains in effect and federally enforceable unless and until EPA approves the revision. *General Motors Corp. v. United States*, 496 U.S. 530, 540 (1990).

II.     **New Hampshire Has Adopted an I/M Program in Its Federally Approved SIP.**

Motor vehicle emissions are a major contributor to New Hampshire's ground-level ozone levels, accounting for half the state's emissions of ozone-forming pollutants. Decl. of Joel Unverzagt (Ex. A) at Ex. 2. The CAA requires the state to maintain an I/M program addressing these emissions. Specifically, portions of several New Hampshire counties were designated as part of serious or moderate nonattainment areas for the 1979 and 1997 ozone NAAQS, requiring New Hampshire to implement I/M for vehicles in those areas under 42 U.S.C. § 7511a. 56 Fed. Reg. 56694, 56799, 56800 (Nov. 6, 1991); 69 Fed. Reg. 23858, 23920 (Apr. 30, 2004). Because it is a member of the OTR, the state must also implement enhanced I/M for areas with a population over 100,000. 42 U.S.C. § 7511c(b)(1)(A).

To satisfy these requirements, New Hampshire adopted (and EPA approved) a statewide I/M program as part of its federally enforceable SIP. *See* 40 C.F.R. § 52.1520(c) (listing Chapters Saf-C 3200 and Saf-C 5800 among EPA-approved regulations). EPA first approved an I/M program as part of New Hampshire's SIP in 2001. 66 Fed. Reg. 1868 (Jan. 10, 2001). New Hampshire substantially amended its I/M program in a SIP revision submitted to EPA in 2011, which EPA approved in 2013. 78 Fed. Reg. 5292 (Jan. 25, 2013). New Hampshire's 2011 SIP submission sets forth the state's programmatic commitments and technical analyses showing the I/M program meets the applicable requirements, and that 2011 submission itself is incorporated into New Hampshire's federally approved SIP. 40 C.F.R. § 52.1520(d) (incorporating "SIP Narrative associated with New Hampshire Vehicle Inspection and Maintenance Program SIP Revision"); *see* NHDES, "State of New Hampshire: Motor Vehicle Inspection and Maintenance State Implementation Plan Revision" (Nov. 1, 2011) ("2011 SIP Narrative") (Ex. B). Since 2013, New Hampshire has submitted to EPA and received approval of various amendments to the text of its I/M rules, none of which significantly altered the nature or stringency of the state's I/M program.

EPA approved the I/M portions of New Hampshire's SIP most recently in 2024, when it explicitly codified N.H. Admin. Code Chapter Saf-C 3200 into the Code of Federal Regulations, with minor exceptions not relevant here. 89 Fed. Reg. 33232, 33233 (Apr. 29, 2024); 40 C.F.R. § 52.1520(c).

NHDOS oversees the I/M program pursuant to state statutes authorizing it to require vehicle inspections, promulgate implementing regulations, and enforce those requirements. *See, e.g.*, RSA §§ 266:1, 266:1-a. The statewide I/M program requires annual inspection of all passenger vehicles. N.H. Code Admin. R. Saf-C 3210.05(a). This program consists of both an emissions inspection and a safety inspection. The emissions inspection primarily involves a computer-based analysis of the vehicle's onboard diagnostic system ("OBD") for light-duty vehicles less than 20 model years old. *Id.* 3222.01. The safety inspection requires checks of the vehicle's equipment, including steering, suspension, brakes, lights, body, tires, wheels, and the electrical, exhaust, and fuel systems. *Id.* 3203.01.

New Hampshire relies on a sticker-based enforcement system to ensure compliance with the I/M program. *See id.* 3222.03, 3247. When a vehicle passes, it receives a windshield sticker that is valid until the month of its next required inspection. If the vehicle fails its OBD test, it receives a temporary 60-day sticker so the vehicle owner can complete necessary repairs and return for another test. If the vehicle does not pass within 60 days, an inspector cannot issue a valid annual inspection sticker. Drivers of vehicles without valid stickers are subject to escalating penalties, including fines, driver's license and registration suspension, and even a bench warrant for arrest. 2011 SIP Revision at 17. As required, New Hampshire's SIP includes a commitment to provide adequate state resources for enforcement of the I/M program. *Id.* at 12.

Vehicle inspections must be conducted by approved mechanics at inspection stations certified by the NHDOS Division of Motor Vehicles ("DMV"). As of December 1, 2025, the state

has 1,566 licensed inspection stations and 5,401 certified inspectors. Unverzagt Decl. ¶ 8. To become certified, an inspection station must apply to the DMV, obtain local government approval, pay a fee, and pass a physical audit demonstrating the station meets applicable requirements. N.H. Code Admin. R. Saf-C 3205.01, .02, .05. Inspection stations must also employ at least one DMV-certified mechanic to conduct inspections. *Id.* 3205.05(a)(3). To become certified, a mechanic must attend a classroom training session and pass a state-administered practical test demonstrating their ability to conduct an inspection. *Id.* 3205.03, .04. Mechanic certifications expire if the mechanic does not conduct an inspection for more than one year. *Id.* 3205.10(e) .

New Hampshire's I/M program provides significant air quality benefits. Comparing its program to EPA's minimum requirements, NHDES estimated that in 2015 its I/M program would yield *additional* reductions *per day* of 5.18 tons of nitrogen oxides, 1.75 tons of volatile organic compounds, and 30.35 tons of carbon monoxide. 2011 SIP Narrative at 10. The emission reductions achieved as compared to a scenario with no I/M program are necessarily even greater.

## III.    Gordon-Darby's Subsidiary Carries Out the I/M Program on the State's Behalf.

The I/M program cannot function without the services of a vendor contracted by NHDOS to administer and support the program. *See* N.H. Code Admin. R. Saf-C 3202.24; 2011 SIP Narrative at 11-12, 15, 16, 18-23. Licensed inspection stations enter contracts with the state's designated vendor to provide the services and equipment necessary for inspections, including: OBD analyzers, printers, and other inspection-related hardware; inspection stickers; software and secure communications necessary to connect to the program's vehicle inspection database; and training and customer support services. Unverzagt Decl. ¶¶ 6, 15. The vendor also provides services to the state itself in support of the I/M program, including: operating and maintaining the vehicle information database; generating reports for use by the NHDOS, DMV, and NHDOS;

supporting the mechanic training and certification processes; assisting NHDOS with audits and

quality assurance; and providing technical support related to the program's systems. *Id.* ¶ 16.

Gordon-Darby's subsidiary, Gordon-Darby NHOST, has served as the state's vendor since

2004. *Id.* ¶¶ 10, 11. Gordon-Darby NHOST's current contract with the state ran through December

31, 2024, but was extended through December 31, 2026. *Id.* ¶ 12, The contract imposes no costs

on the state. Gordon-Darby NHOST's sole source of revenue is from payments made by inspection

stations pursuant to their individual contracts with Gordon-Darby NHOST. *Id.* ¶¶ 13, 14.

**IV.    The Commissioners Are Already Ceasing the I/M Program.**

**A.    New Hampshire Enacted Legislation to Repeal the I/M Program.**

In June 2025, the New Hampshire General Court passed legislation known as House Bill

2 ("HB2") containing provisions purporting to eliminate the state's I/M program. 2025 N.H. Laws

Ch. 141, §§ 141:244-141:256. HB2 repealed the statutory provisions underlying both the emissions

and safety inspection portions of New Hampshire's I/M program, including the provisions:

authorizing NHDOS to require inspections and establishing the frequency and timing of such

inspections; establishing the fee for inspection stickers; providing for enforcement against

motorists and inspection stations; and specifying inspection requirements for emission control

equipment and OBD systems. *Id.* § 141:253 (repealing, *inter alia*, RSA §§ 260:6-b, 266:1, 266:1-

a, 266:2, 266:5, 266:6, and 266:59-b). HB2 also defunded NHDES's motor vehicle air pollution

abatement fund, which pays for the I/M program's administration. *Id.* § 141:253(I).

HB2's repeal provisions take effect without any EPA approval. The bill requires NHDES

to *submit* a SIP revision to EPA seeking to "alter the emissions testing program consistent with"

HB2. *Id.* § 141:254. But the repeal takes effect regardless of whether or when EPA acts on any

such submission. *Id.* § 141:256(II), (III). In particular, the repeal of NHDOS's authority to require

vehicle inspections (which underpins the entire program) takes effect on January 31, 2026.

**B. The Commissioners Are Terminating the I/M Program Without EPA's Approval.**

Despite the fact that New Hampshire's I/M program is still codified in the state's federally approved SIP and is required by the CAA, NHDOS and NHDES are already working to terminate the program. NHDES has not submitted—much less obtained EPA approval of—any revised SIP removing or otherwise amending the I/M program. Nonetheless, NHDOS has confirmed it will no longer implement or enforce the I/M program after January 31, 2026. Unverzagt Decl. ¶¶ 20, 21.

NHDOS has engaged in public outreach to inform vehicle owners that it will cease enforcing inspection requirements. On its website and in interviews, NHDOS and its officials have represented to the public that emissions and safety inspections will not be required after January 31, 2026, and that vehicles do not need to display an inspection sticker after that date. *Id*. ¶¶ 22-24. Inspection data indicate drivers are already not complying with I/M requirements. Inspection numbers have fallen from historically observed levels each month since HB2 was enacted and NHDOS announced the program's termination, with total inspections in October and November 2025 falling 24 and 33 percent below those same months in 2024, respectively. *Id.* ¶¶ 25-27.

NHDOS has also taken steps to wind down Gordon-Darby NHOST's implementation of the I/M program. In July 2025, a state official instructed Gordon-Darby NHOST not to procure stickers to supply inspection stations' needs beyond January 31, 2026. *Id.* ¶¶ 19-20. And on September 16, 2025, Commissioner Quinn notified Gordon-Darby NHOST that the NHDOS would be terminating its contract for implementation of the I/M program effective January 31, 2026, citing "the fact that the motor vehicle inspections program will soon be abolished." *Id.* ¶ 21.

**STANDARD OF DECISION**

A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Together Emps.*

*v. Mass General Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022). The first prong "weighs most heavily in the preliminary injunction calculus." *Ryan v. ICE*, 974 F.3d 9, 18 (1st Cir. 2020). The irreparable harm measure can be a "sliding scale, working in conjunction with a moving party's likelihood of success on the merits." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009).

## ARGUMENT

### I.    Gordon-Darby Will Likely Succeed on the Merits of Its Claim.

New Hampshire is not the first state to have second thoughts about its I/M program. At least three other jurisdictions have attempted to repeal or simply not implement their SIP's I/M requirements without first obtaining EPA approval of a revised SIP removing those requirements. *Sweat v. Hull*, 200 F. Supp. 2d 1162 (D. Ariz. 2001); *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705 (E.D. Penn. 2002); *Citizens for Penn.'s Future v. Mallory*, No. 02-cv-798, 2002 WL 31845880 (E.D. Penn. Dec. 18, 2002); *Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920 (W.D. Ky. 2004). In each case, courts held the state's failure to implement its I/M program violated the CAA. As in those cases, Gordon-Darby is likely to succeed on its claim that Defendants' termination of the state's I/M program, and the steps taken already to that end, violate their CAA obligations.

Gordon-Darby brings this case under the CAA's citizen suit provision, which provides a cause of action "against any person … who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of an emission standard or limitation under" the CAA. 42 U.S.C. § 7604(a)(1) (cleaned up). Thus, Gordon-Darby must demonstrate that: (1) the Commissioners are "persons" subject to suit; (2) the state's I/M program requirements are CAA "emission standard[s] or limitation[s]"; and (3) the Commissioners have violated or are violating those requirements. Gordon-Darby is likely to satisfy each of these elements.

First, the Commissioners are "persons" under the CAA, *id.* § 7602(e), and are appropriate defendants here under the *Ex parte Young* doctrine. Although the Eleventh Amendment limits state

agencies' liability, courts may "enjoin state officials to conform future conduct to the requirements of federal law." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015). This exception is satisfied if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021) (internal quotations omitted). Courts have routinely allowed CAA citizen suits against state officials seeking to require compliance with SIP requirements. *See, e.g.*, *Clean Air Council*, 226 F. Supp. 2d at 711-22; *Sweat*, 200 F. Supp. 2d at 1165-76; *Ky. Res. Council*, 304 F Supp. 2d at 928-29.

Here, Plaintiff alleges NHDOS and NHDES are violating their obligations under New Hampshire's I/M program, which is a matter of federal law due to the program's incorporation into the state's SIP. *See Clean Air Council*, 226 F. Supp. 2d at 717-22 (suit to enforce state's SIP alleged violations of federal, not state, law); *Sweat*, 200 F. Supp. 2d at 1168-71. Plaintiff also seeks only prospective relief requiring Defendants to carry out the I/M program as the current SIP requires.

Likewise, the Commissioners have the requisite responsibilities under the I/M program to serve as appropriate defendants. *See Cotto v. Campbell*, 126 F.4th 761, 772-73 (1st Cir. 2025) (official must have "some connection" to violation). Commissioner Quinn oversees NHDOS. RSA § 21-P:4. His duties include administering and enforcing motor vehicle laws, and the laws underlying the I/M program task NHDOS with administering and enforcing the program's requirements. *See id.* § 266:1; *see also* 2011 SIP Narrative at 8 (explaining NHDOS administers I/M program). Commissioner Scott oversees NHDES, which must "[c]arry[] out a program of inspection and testing of all modes of transportation" and administer the motor vehicle air pollution abatement fund used to pay for the I/M program. RSA §§ 125-C:6, 125-S:3.

Second, the provisions of New Hampshire's I/M program are "emission standard[s] or limitation[s]" under the CAA's citizen suit provision, which defines that term to include "any

condition or requirement under an applicable [SIP] relating to … vehicle inspection and maintenance programs." 42 U.S.C. § 7604(f)(3). A state's obligations and commitments under its SIP to implement and enforce its I/M program meet this definition. *See Sweat*, 200 F. Supp. 2d at 1168-71 (finding Arizona's repeal of a portion of its I/M program violated CAA); *Ky. Res. Council*, 304 F. Supp. 2d at 926 (finding district's decision to stop implementing and enforcing I/M program violated CAA); *Clean Air Council*, 226 F. Supp. 2d at 720-21 (finding Pennsylvania's failure to fully implement second phase of I/M requirements by deadline established in SIP violated CAA).

Third, NHDOS and NHDES are violating their I/M program obligations. The agencies are currently working to terminate the state's I/M program, contrary to the requirements of New Hampshire's applicable SIP. Courts have held that this type of failure to implement a SIP's I/M requirements is actionable under the CAA's citizen suit provision. In *Sweat*, *Kentucky Resources Council*, *Clean Air Council*, and *Citizens for Pennsylvania's Future*, state or local regulators eliminated or otherwise failed to implement I/M requirements without first obtaining EPA approval of a revised SIP. In each case, the court held the agency's failure to implement and enforce its SIP constituted a CAA violation. *See, e.g.*, *Clean Air Council*, 226 F. Supp. 2d at 722 (liability turns on whether state "compl[ied] with its own federally mandated plan"); *Sweat*, 200 F. Supp. 2d at 1171 ("[T]he repeal of [specific I/M requirements], and in turn Arizona's subsequent non-enforcement of the EPA-approved SIP, constituted a violation of federal law.").

Defendants may argue they are not yet "in violation" because their termination of the program will not be complete until after January 31. But Defendants are in violation *now* based on actions they are currently taking to effectuate the program's termination. These actions have already severely undermined the state's ability to implement and enforce its I/M program on an ongoing basis. For one, NHDOS's premature termination of its contract with Gordon-Darby

NHOST means there will no longer be a "supplier" as required by NHDOS regulations to provide inspection stations with the OBD testing equipment, stickers, and software necessary to conduct inspections and report results. N.H. Code Amin. R. Saf-C 3202.24; Unverzagt Decl. ¶ 15. The state itself will also lose its capability to train inspectors, maintain its central vehicle information database, and perform a host of data auditing and reporting functions required under its SIP. Unverzagt Decl. ¶ 16; 2011 SIP Narrative at 15-16, 18-22; 40 C.F.R. § 51.366.

Moreover, NHDOS is already actively encouraging noncompliance with the SIP's I/M requirements. Despite the fact that the I/M program is and will remain in effect as a matter of federal law, NHDOS has repeatedly told the public that emissions and safety inspections will no longer be required after January 31, that troopers will not enforce I/M requirements, and that vehicle owners can remove their inspection stickers without consequence. Unverzagt Decl. ¶¶ 22-24. These actions are causing noncompliance *now*, as some vehicle owners forgo their required inspections. In November 2025, total emissions inspections were 33 percent below 2024 levels. *Id.* ¶ 26. This noncompliance is harming Gordon-Darby through reduced revenue and presents immediate risks to the environment and public health and safety as faulty vehicles go undetected and unrepaired. *Id.* ¶¶ 30, 44-49; Decl. of Daniel Bennett ¶¶ 7-11 (Ex. C).

Defendants may also argue they are not in violation of the SIP because HB2 repealed the authority underlying the I/M program. This is untrue, however, because HB2 is preempted by the Supremacy Clause of the U.S. Constitution to the extent it conflicts with the state's federally approved SIP. Once EPA approves a SIP, its requirements become federal law and are federally enforceable. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 335 (6th Cir. 1989). And once EPA approves a SIP, its provisions remain in effect as federal law unless and until EPA approves a revision to the SIP. *General Motors*, 496 U.S. at 540.

Whenever state laws conflict with federal law requirements, "the Supremacy Clause requires that they be given no effect." *New Hampshire v. Ramsey*, 366 F.3d 1, 30 (1st Cir. 2004). When other state legislatures attempted to repeal their federally approved I/M requirements prior to EPA approval of a revised SIP, courts have found those state laws preempted. *Sweat*, 200 F. Supp. 2d at 1172; *Ky. Res. Council*, 304 F. Supp. 2d at 926-27. Here, the state laws implementing the I/M program are part of its applicable SIP, and EPA incorporated the state's I/M regulations (including both emissions and safety inspection requirements) into the Code of Federal Regulations by reference. 40 C.F.R. § 52.1520(c); 89 Fed. Reg. at 33233. Defendants cannot dispute that HB2's provisions purporting to repeal the I/M program conflict with New Hampshire's SIP. Indeed, NHDES recognized as much in its comments to the state legislature opposing the program's repeal. *See* Unverzagt Decl. Ex. 1 at 1, Ex. 2 at 1-2. Accordingly, those provisions of HB2 are preempted and cannot excuse Defendants' violations of the CAA, and Gordon-Darby is likely to prevail on the merits of its claim.

## II.    Preliminary Relief Is Necessary to Prevent Irreparable Harm to Gordon-Darby.

Gordon-Darby will likely suffer irreparable harm if preliminary relief is not granted while this litigation proceeds. If Defendants end the I/M program on January 31, this will eliminate the sole source of business for Gordon-Darby's subsidiary, Gordon-Darby NHOST, at an estimated loss of $4.1 million for the remainder of 2026. Unverzagt Decl. ¶ 31. Gordon-Darby's valuation will also suffer due to lost opportunities for future contracts and lost confidence in its business. *Id.* ¶ 33. With no remaining business in the state, Gordon-Darby will need to end its New Hampshire operations, including terminating employment of four Gordon-Darby NHOST employees and additional corporate support personnel collectively representing 80-100 years of institutional knowledge and program expertise. *Id.* ¶¶ 35-38. Gordon-Darby will suffer other unrecoverable losses as part of its wind-down, including costs of: retrieving and decommissioning testing

equipment from inspection stations, with potential loss of some units; vacating and restoring leased facilities; and obsolescence of supplies purchased for 2026 inspections. *Id.* ¶¶ 32, 39-42.

These injuries constitute irreparable harm. Although some of these harms may be considered economic losses, such harms are deemed irreparable if "the potential economic loss is so great as to threaten the existence of the movant's business." *Vaqueria*, 587 F.3d at 485. Here, allowing Defendants to terminate the I/M program would wipe out Gordon-Darby NHOST's entire business, require layoffs, and damage Gordon-Darby's goodwill. Likewise, economic harm is irreparable where "no adequate remedy at law exists for a plaintiff to recover its alleged damages." *N.H. Hosp. Ass'n v. Burwell*, No. 15-cv-460, 2016 WL 1048023, *17 (D.N.H. Mar. 11, 2016). Even if Gordon-Darby ultimately prevails in this case, the harms Gordon-Darby would suffer from the I/M program's temporary termination cannot be fully remedied. As in *New Hampshire Hospital Association*, a plaintiff cannot recover money damages in a CAA citizen suit. *Id.* at *18; 42 U.S.C. § 7604(a) (authorizing only injunctive relief and civil penalties). Moreover, an order requiring Defendants to reinstate the I/M program would not fully restore Gordon-Darby's losses: the company would likely be unable to replace the institutional knowledge and expertise of its laid off personnel and would have no avenue to recover its costs spent to wind down the program. Indeed, Gordon-Darby would need to incur *additional* unrecoverable costs to support the program's reinstatement, such as costs to redeploy and reinstall testing equipment at each inspection station. Unverzagt Decl. ¶¶ 59-60. Accordingly, the second prong of this test is met.

### III.    The Balance of Equities and the Public Interest Strongly Favor Preliminary Relief.

The third and fourth equitable factors weigh heavily in Gordon-Darby's favor. The significant risk of irreparable harm firmly outweighs any harm a preliminary injunction might cause Defendants. Indeed, it is unclear what harm Defendants would suffer at all. Gordon-Darby seeks only limited relief to preserve the status quo and require Defendants to continue

implementing the I/M program as codified in New Hampshire's SIP during this litigation. Continuing the program imposes no costs on New Hampshire. Gordon-Darby NHOST's services supporting the program are paid entirely by inspection stations, *id.* ¶ 14, and the state's own I/M program activities are self-funded through inspection sticker fees, *see* 2011 SIP Narrative at 12; RSA § 266:2.[1] The balance of equities thus supports a preliminary injunction.

The public interest also strongly favors the requested relief, as allowing Defendants to terminate the I/M program during this litigation would substantially harm the public.[2] Termination would harm the environment and public health and safety by increasing motor vehicle emissions. New Hampshire's I/M program significantly reduces harmful emissions by identifying vehicles with faulty emission control systems. Unverzagt Decl. ¶ 44. Nearly one in ten vehicles fails its emissions inspection and requires repair, while the program simultaneously incentivizes drivers to maintain their vehicles to avoid such failures. *Id.* ¶¶ 45-46. In the program's absence, emission control defects will go unidentified and unrepaired, increasing motor vehicle emissions in the state.

Terminating the I/M program would also eliminate required safety inspections, which routinely identify defects in critical equipment like brakes, steering, tires, and lights, allowing dangerous vehicles on the state's roads. Bennett Decl. ¶ 7-8. From 2022 to 2023, nearly one in seven vehicles failed some aspect of the safety inspection, with one in twenty requiring brake repairs. *Id.* ¶ 8; *see id.* ¶ 9-10 (explaining true figures likely higher). Without the program, unsafe vehicles would be undetected, endangering drivers, and the state would become a dumping ground for sales of vehicles that cannot pass required inspections in neighboring states. *Id.* ¶¶ 11-12.

---

[1] Notably, granting the requested relief would not prevent New Hampshire from seeking EPA's approval of a revised SIP eliminating the I/M program while this litigation proceeds.

[2] In weighing this factor, the Court should consider Gordon-Darby's strong merits arguments, since "ensur[ing] compliance with the CAA is in the public interest." *Env't Democracy Project v. Green Sage Mgmt.*, No. 22-cv-3970, 2022 WL 4596616, *4 (N.D. Cal. Aug. 23, 2022).

Allowing Defendants to end the program while this case proceeds would also cause regulatory uncertainty, as businesses and individuals would be left without clarity on what (if anything) they should do to comply with federal law. *Id.* ¶ 13. And if Gordon-Darby ultimately prevails, the whiplash of terminating then restoring the program will cause public confusion and raise difficult questions as to potential liability for those who relied on Defendants' representations. For example, if a vehicle owner removed her vehicle's inspection sticker, it is unclear how she could demonstrate compliance once the I/M program resumes. *See* Unverzagt Decl. ¶¶ 23-24.

Finally, the public interest supports an injunction because it will become exponentially more difficult and time-consuming to restore the program if it is allowed to end on January 31. Gordon-Darby NHOST's contracts with inspection stations will end, and the testing stations will be dismantled. *Id.* ¶¶ 31, 40-41. To reinstate the program, new contracts with inspection stations, redeploying the necessary testing equipment, and ensuring the stations' integration into the vehicle inspection database would be needed, all requiring considerable time and resources. *Id.* ¶¶ 59-60.

Also, if Defendants terminate the I/M program, the certificates issued to inspection stations and mechanics will become invalid. *Id.* ¶¶ 51-52. To reinstate the program could potentially require the recertification of all 1,566 inspection stations and 5,401 mechanics in the state. Unverzagt Decl. ¶¶ 8, 51-52. Recertifying these stations and mechanics would substantially lengthen the time necessary to reinstate the I/M program, particularly given the need to administer the in-person audits and skills tests required for these certifications. It is in the public interest to avoid these wasteful and unnecessary efforts in the event Gordon-Darby prevails on the merits, which is substantially likely.

## CONCLUSION

For the foregoing reasons the Court should grant Gordon-Darby's motion.

Dated: December 9, 2025                    Respectfully submitted,

                                           GORDON-DARBY HOLDINGS, INC.,

                                           By and through its attorneys,

                                           /s/ *Amy Manzelli*
                                           Amy Manzelli (NH Bar No. 17128)
                                           BCM Environmental & Land Law, PLLC
                                           3 Maple Street
                                           Concord, NH 03301
                                           (603) 225-2585
                                           manzelli@nhlandlaw.com

                                           Allison D. Wood (DC Bar No. 466928)
                                           Andrew D. Knudsen (DC Bar No. 1019697)
                                           Makram B. Jaber (DC Bar No. 458718)
                                           Kirsten M. Bahnson (DC Bar No. 90028947)
                                           MCGUIREWOODS LLP
                                           888 16th Street, N.W., Suite 500
                                           Washington, D.C. 20006
                                           (202) 857-1700
                                           awood@mcguirewoods.com
                                           aknudsen@mcguirewoods.com
                                           mjaber@mcguirewoods.com
                                           kbahnson@mcguirewoods.com
                                           (*Applications for Pro Hac Vice Admission Pending*)

                                           *Counsel for Plaintiff Gordon-Darby Holdings, Inc.*