## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

GORDON-DARBY HOLDINGS, INC.,

     *Plaintiff,*

v.

ROBERT L. QUINN, in his official capacity
as Commissioner of the New Hampshire
Department of Safety, et al.,

     *Defendants.*

Civil Action No. 25-cv-00508-AJ

### DECLARATION OF JOEL UNVERZAGT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, JOEL UNVERZAGT, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration:

1.  My testimony includes my professional experience and the role of my employer in New Hampshire's required vehicle inspection and maintenance program as part of the Clean Air Act. My testimony also includes information on the impacts that are occurring now and will occur as a result of HB2, a New Hampshire law that purports to terminate the vehicle inspection and maintenance program, including negative impacts on the environment, public health and safety, the ability to resume the program at a later date, and on my employer and other businesses.

2.  I am the President of Gordon-Darby, Inc. ("Gordon-Darby"), a Kentucky corporation that is a wholly owned subsidiary of Plaintiff Gordon-Darby Holdings, Inc. I have served in this position since June 2021. Prior to becoming the President of Gordon-Darby, I served as Gordon-Darby's Director of Operations for nearly 10 years, starting in that role in July 2011. Prior to my

employment with Gordon-Darby, I was employed by Envirotest Corp. (or its predecessor companies), serving in the vehicle inspection industry since 1991.

3.   In my current position, I have primary responsibility for providing quality service to the public and Gordon-Darby's clients in all of the company's operating programs, ensuring the successful and timely implementation and operation of all contracts. I lead all company operations and oversee the delivery of innovative technology and service solutions across the country. During my time at Gordon-Darby, I have been in positions that oversee the management of Gordon-Darby's contracts with various states, including its contract with the State of New Hampshire.

**Gordon-Darby's Role in New Hampshire's Vehicle Inspection
and Maintenance Program**

4.   The State of New Hampshire operates a motor vehicle emissions inspection and maintenance ("I/M") program as part of its requirements under the federal Clean Air Act. This I/M program is part of the state's broader inspection program for motor vehicles, which also includes safety testing. The I/M program generally requires an annual emissions inspection for light duty vehicles that are 20 model years old and newer. Instead of requiring tailpipe emissions testing, New Hampshire's I/M program relies on analysis of the vehicle's onboard diagnostics ("OBD") system. An inspector connects to the vehicle's OBD system using an analyzer unit, which provides a readout on the performance of the vehicle's emission control systems and identifies any issues that need to be addressed.

5.   Vehicle owners demonstrate their compliance with the annual inspection requirement by use of a windshield sticker. If a vehicle owner passes the required inspection, they are given a windshield sticker to display on their vehicle that is valid until the month of their next required annual inspection. If the vehicle owner does not pass the inspection, they are given a temporary

60-day sticker so that they can complete necessary repairs within that period of time and return for a passing inspection. If the vehicle fails to pass inspection within that 60-day period of time, the inspector may not issue a valid annual inspection sticker, and the vehicle can no longer be operated lawfully on the road until it passes an inspection.

6.  To meet the annual inspection requirement, vehicle owners bring their vehicles to inspection stations that have been licensed by the New Hampshire Department of Safety ("NHDOS") Division of Motor Vehicles to conduct inspections. New Hampshire's I/M program calls for NHDOS to designate a vendor to support these licensed inspection stations in implementing the I/M program's requirements. Licensed inspection stations enter into contracts with the state's designated vendor to provide the necessary testing equipment and other hardware, inspection stickers, software, and training and customer support services.

7.  New Hampshire uses a centralized electronic system known as the Vehicle Inspection Database to collect and store official inspection results. Some state documents refer to this system as the "Vehicle Information Database," but both terms refer to the same system. For clarity, I refer to this system throughout this Declaration as the "VID."

8.  As of December 1, 2025, the VID shows there are 1,566 licensed inspection stations and 5,401 certified inspectors in the State of New Hampshire. According to the VID, 4,723 certified inspectors have conducted at least one inspection during calendar year 2025.

9.  Since New Hampshire's I/M program began in its current form, Gordon-Darby NHOST Services, Inc. ("Gordon-Darby NHOST") has served as the state's designated vendor to support and implement the state's I/M program. Gordon-Darby NHOST is a New Hampshire corporation that is wholly owned by Plaintiff Gordon-Darby Holdings, Inc. Gordon-Darby NHOST's

principal office is located at 10 Dunklee Road, Unit #22, Bow, New Hampshire 03304. Gordon-Darby provides various corporate support services to Gordon-Darby NHOST.

10. Following a competitive bidding process that began in 2002, NHDOS first awarded Gordon-Darby NHOST a contract as its designated vendor for the I/M program in 2004. The first contract between NHDOS and Gordon-Darby NHOST was approved by the New Hampshire Governor and the Executive Council on June 23, 2004, with an initial term through June 23, 2009. That contract was amended on November 2, 2005, to extend the term through June 30, 2010, and then further extended on May 12, 2010, through June 30, 2012.

11. Following another competitive bidding process that began in 2011, Gordon-Darby NHOST was awarded its second contract to serve as the state's designated vendor for the I/M program. The second contract between NHDOS and Gordon-Darby NHOST was approved by the New Hampshire Governor and the Executive Council on May 9, 2012, with an initial term through June 30, 2017. This second contract was extended on March 8, 2017, through June 30, 2019, and subsequently amended on March 27, 2019, to run through December 31, 2019.

12. The current contract between Gordon-Darby NHOST and NHDOS was approved on March 27, 2019, with a term beginning on January 1, 2020. The current contract was originally scheduled to expire on December 31, 2024, but on November 13, 2024, New Hampshire approved a two-year extension of the contract's term to December 31, 2026.

13. Gordon-Darby NHOST's sole business purpose is to implement the New Hampshire motor vehicle inspection program, which includes a safety and an I/M program, pursuant to its contracts with licensed New Hampshire inspection stations and its contract with NHDOS. Gordon-Darby NHOST has four dedicated employees who devote 100 percent of their time to support services for the New Hampshire I/M program. Employees of Gordon-Darby likewise

provide support services for Gordon-Darby NHOST's implementation and operation of the New Hampshire I/M program, in addition to supporting contracts for I/M services with other states.

14. Gordon-Darby NHOST does not receive any revenue from New Hampshire or any of its agencies under its contract. Instead, all payments to Gordon-Darby NHOST related to implementation and operation of the safety and I/M programs are made by individual licensed inspection stations pursuant to their individual contracts with Gordon-Darby NHOST. These contracts provide for payment of fees by the inspection station on a per-test basis. For some stations, this fee is applied as a minimum monthly charge to ensure baseline support and availability of Gordon-Darby NHOST equipment and services.

15. Under the terms of its contracts with licensed inspection stations, Gordon-Darby NHOST provides services, equipment, and other materials for implementation and operation of the safety and I/M programs. The services, equipment, and materials provided to licensed inspection stations include: (a) supplying and maintaining the emissions analyzers and associated printers and peripheral equipment used to conduct inspections; (b) providing the inspection software and secure communications necessary to connect to the VID; (c) furnishing inspection stickers and related control materials; (d) providing initial set up and onboarding support for new inspection stations; (e) operating a help desk for inspectors and inspection station personnel; and (f) providing field service and maintenance for the Gordon-Darby NHOST equipment deployed at the inspection stations.

16. In addition, under the terms of its contract with NHDOS, Gordon-Darby NHOST provides various services to NHDOS in support of the safety and I/M programs. These services include: (a) supporting inspector training by providing the Gordon-Darby NHOST equipment, computer-based training materials, and technical support used by candidate inspectors in the

certification process; (b) operating and maintaining the central VID that records inspection results; (c) transmitting required inspection data to the NHDOS Division of Motor Vehicles and to the New Hampshire Department of Environmental Services ("NHDES"); (d) generating the standardized reports and data extracts that NHDOS and NHDES use to prepare and submit New Hampshire's annual motor vehicle inspection report to the U.S. Environmental Protection Agency ("US EPA"); (e) assisting NHDOS with audits and quality assurance reviews of inspection stations; and (f) providing technical support to NHDOS related to the design, operation, and security of the safety and I/M program's information technology systems.

### New Hampshire's Termination of the Vehicle Inspection and Maintenance Program

17. On June 27, 2025, the Governor of New Hampshire signed into law House Bill 2 ("HB2"). Among other things, HB2 repealed or amended numerous statutory provisions that authorize and govern New Hampshire's I/M program, including provisions relating to the operation, enforcement, and funding of both emissions and safety inspections.

18. Prior to passage of HB2, in February and March 2025, NHDES Commissioner Robert Scott submitted written comments to the relevant committees of both the New Hampshire Senate and House of Representatives opposing passage of a related bill containing the I/M repeal provisions that would later be incorporated into HB2. In his comment letters, Commissioner Scott stated NHDES's view that: the Clean Air Act requires New Hampshire to have an I/M program; New Hampshire's I/M program is part of the state's federally approved state implementation plan and is federally enforceable; any revisions that change a requirement of the approved I/M program will require approval of a revised state implementation plan by the US EPA; and US EPA would not be able to review and respond to a revised state implementation

plan by January 2026. Copies of Commissioner Scott's letters to the New Hampshire Senate and House of Representatives are attached to this Declaration as Exhibits 1 and 2, respectively.

19. Following passage of HB2, Gordon-Darby NHOST asked the NHDOS Division of Motor Vehicles to provide direction on future implementation and enforcement of the I/M program. In particular, in an email sent on July 10, 2025, Gordon-Darby NHOST notified the Division of Motor Vehicles that inspection sticker forms for use in 2026 and 2027 would need to be ordered "within two weeks" and asked the Division of Motor Vehicles for guidance on "the size or necessity of this pending order." A copy of this email is attached to this Declaration as Exhibit 3.

20. On July 18, 2025, a representative of the NHDOS Division of Motor Vehicles responded and stated that per the Director of the Division of Motor Vehicles, "[t]here will be no enforcement of safety inspections or emissions after January 31st" and "state inspections and stickers will no longer be utilized after January 31st." Accordingly, the representative instructed Gordon-Darby NHOST not to order inspection stickers beyond those necessary to supply inspection stations through January 31, 2026. A copy of this email is attached to this Declaration as Exhibit 4.

21. On September 16, 2025, Defendant Robert L. Quinn, the Commissioner of NHDOS, sent a letter to Gordon-Darby NHOST providing formal notice of NHDOS's intent to terminate its contract for implementation and operation of the safety and I/M programs. The letter cited New Hampshire's passage of HB2 and stated that "[i]n practice, on January 31, 2026, registered vehicles in New Hampshire will no longer be required to have annual safety inspections or OBD testing." The letter cited the contract's provision allowing New Hampshire to terminate the contract for convenience. Defendant Quinn stated that NHDOS intends to terminate the contract effective January 31, 2026, "given the fact that the motor vehicle inspections program will soon

be abolished." NHDOS did not identify any other basis for terminating the contract other than its decision to cease implementing and enforcing the safety and I/M programs. A copy of this letter is attached as Exhibit 5.

22. NHDOS and its representatives have also informed members of the public that it will no longer implement or enforce the state's emissions and safety inspection requirements beginning after January 31, 2026.

23. On or before September 26, 2025, the NHDOS Division of Motor Vehicles posted a statement on its public website titled "FAQ: Termination of the New Hampshire Vehicle Inspection and Emissions Testing Program," available at https://www.dmv.nh.gov/vehicles-boats-and-titles/inspections-emissions. In response to the question "Are vehicle inspections and emissions testing ending in New Hampshire," the website informs the public that HB2 "repealed mandatory annual safety inspections for most passenger vehicles effective January 31, 2026," and that "[e]missions/on-board diagnostics testing will also end on that date." In response to the question "Do I still need an inspection sticker on my windshield in 2025," the website represents to the public that vehicles must still display a sticker "[u]ntil the repeal takes effect in 2026" and that "[n]o stickers will be issued as of February 1, 2026." A copy of these website statements is attached as Exhibit 6.

24. On November 12, 2025, John Marasco, Director of the NHDOS Division of Motor Vehicles, was interviewed on radio station WKBK. An audio recording of this interview is available at https://mykeenenow.com/news/219912-dmv-director-highlights-appointment-system-end-of-inspections-during-wkbk-interview/. During the interview, a member of the public called the radio station to ask the Director for clarification as to whether the emissions testing portion of the state's inspection requirements would be ending or only safety inspections.

Director Marasco responded that "[a]s of February 1, state inspection requirements are no longer in effect here in New Hampshire," including "both the safety and the emissions." When the caller asked whether a vehicle owner could remove the inspection sticker from his windshield "and never have to worry about it again," Director Marasco replied that "you could do that" as of February 1, 2026. This discussion of the vehicle inspection program takes place between 20:52 and 22:10 of the audio recording.

25. The state's actions in announcing the upcoming termination of the safety and I/M programs are already causing a measurable decrease in compliance with the state's inspection requirements. In anticipation of the motor vehicle inspection program's termination and the end of enforcement against non-compliant vehicles, some vehicle owners who are required to have their vehicles inspected during 2025 appear to be forgoing those inspections.

26. A comparison of inspection data from 2019 through 2025 demonstrates that the number of vehicle inspections conducted in New Hampshire has fallen substantially from historical norms in the months since passage of HB2. In July, August, and September of 2025, for example, the total number of inspections conducted across all vehicle types was 10 percent, 17 percent, and 16 percent below 2024 levels for the same months, respectively. The decrease in inspections spiked further in the weeks after NHDOS clarified to the public on its website that it would cease enforcing inspection requirements, with inspections in October and November 2025 falling 24 and 33 percent behind 2024 levels for those months. The inspection data for the months of January through November for the years 2019 through 2025 are shown below in Table 1.

**Table 1**

| MONTH | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2025 drop from 2024 |
|---|---|---|---|---|---|---|---|---|
| January | 122,110 | 135,313 | 121,888 | 108,284 | 113,592 | 117,442 | 123,427 | |
| February | 114,702 | 120,267 | 109,031 | 109,317 | 109,220 | 120,490 | 103,539 | |
| March | 137,710 | 121,510 | 149,216 | 142,740 | 133,980 | 131,444 | 137,666 | |
| April | 142,728 | 99,470 | 143,981 | 136,973 | 135,375 | 136,125 | 142,328 | |
| May | 149,433 | 132,410 | 137,819 | 136,885 | 146,247 | 147,993 | 140,823 | |
| June | 142,748 | 154,311 | 145,186 | 143,597 | 142,646 | 135,867 | 137,394 | |
| July | 139,116 | 144,931 | 133,602 | 127,026 | 125,417 | 137,939 | 124,381 | 10% |
| August | 140,763 | 134,545 | 131,348 | 138,344 | 139,897 | 139,071 | 114,796 | 17% |
| September | 129,366 | 132,005 | 128,526 | 129,193 | 126,654 | 130,235 | 110,029 | 16% |
| October | 135,352 | 132,767 | 126,626 | 129,691 | 135,951 | 141,430 | 107,133 | 24% |
| November | 116,461 | 111,689 | 116,011 | 117,045 | 118,751 | 116,508 | 77,745 | 33% |
| TOTAL | 1,470,489 | 1,419,218 | 1,443,234 | 1,419,095 | 1,427,730 | 1,454,544 | 1,319,261 | |

27. The decrease in total inspections from 2024 to 2025 is becoming more substantial with each passing week, as shown below in Table 2.

**Table 2**

| 2024 Week | Total | 2025 Week | Total | % Drop from 2024 |
|---|---|---|---|---|
| 20240902 - 20240908 | 27,711 | 20250901 - 20250907 | 23,246 | 16% |
| 20240909 - 20240915 | 31,409 | 20250908 - 20250914 | 25,843 | 18% |
| 20240916 - 20240922 | 30,690 | 20250915 - 20250921 | 24,447 | 20% |
| 20240923 - 20240929 | 33,057 | 20250922 - 20250928 | 25,504 | 23% |
| 20240930 - 20241006 | 34,245 | 20250929 - 20251005 | 27,505 | 20% |
| 20241007 - 20241013 | 30,574 | 20251006 - 20251012 | 23,751 | 22% |
| 20241014 - 20241020 | 28,455 | 20251013 - 20251019 | 21,754 | 24% |
| 20241021 - 20241027 | 30,972 | 20251020 - 20251026 | 22,136 | 29% |
| 20241028 - 20241103 | 32,962 | 20251027 - 20251102 | 25,055 | 24% |
| 20241104 - 20241110 | 29,717 | 20251103 - 20251109 | 21,759 | 27% |
| 20241111 - 20241117 | 27,679 | 20251110 - 20251116 | 19,851 | 28% |
| 20241118 - 20241124 | 28,370 | 20251117 - 20251123 | 18,937 | 33% |
| 20241125 - 20241130 | 22,217 | 20251124 - 20251130 | 15,338 | 31% |

28. The present reduction in the motor vehicle inspection program's effectiveness is also borne out in other metrics. For example, in the months following passage of HB2, the number of safety inspections where critical items failed inspection or were corrected has fallen each month, as shown below in Table 3. This includes key vehicle components like steering systems, brakes, tires, brake lights, and the vehicle body.

**Table 3**

| September through November | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | % Drop from 2024 |
|---|---|---|---|---|---|---|---|---|
| Total Safety Tests | 387,296 | 384,026 | 379,087 | 383,844 | 388,290 | 395,709 | 300,505 | 24% |
| Total Safety Deficiencies | 62,565 | 57,273 | 54,487 | 55,838 | 56,810 | 55,079 | 34,232 | 38% |
| Brakes | 21,768 | 20,424 | 19,014 | 19,383 | 21,153 | 19,040 | 11,940 | 37% |
| Steering | 16,009 | 13,822 | 12,622 | 12,698 | 12,688 | 12,614 | 7,701 | 39% |
| Tires | 13,374 | 12,069 | 11,006 | 11,289 | 11,038 | 11,008 | 6,736 | 39% |
| Body/Chassis Rust Defects | 4,297 | 3,754 | 3,804 | 3,840 | 3,755 | 3,628 | 1,858 | 49% |
| Stop Lights | 2,797 | 2,331 | 2,140 | 1,943 | 1,827 | 1,664 | 965 | 42% |

## Impacts of New Hampshire's Termination of the Vehicle Inspection and Maintenance Program on Gordon-Darby and Related Entities

29. New Hampshire's announced termination of the safety and I/M programs, and the steps it has already taken to carry out that termination, are having a direct financial impact on Gordon-Darby NHOST and its corporate affiliates.

30. As noted above, New Hampshire's actions have already substantially reduced the number of inspections conducted in the latter half of 2025 as compared to historical norms, with total inspections in November 2025 falling 33 percent below the total for November 2024. This reduction in inspections has reduced Gordon-Darby NHOST's revenue over the period from July 2025 to the present. Based on my estimates, New Hampshire's actions to terminate the I/M program have already cost Gordon-Darby NHOST approximately $355,000 in lost revenue that would have been expected based on historical emission inspection trends. Based on these trends, I expect lost revenues to increase in December 2025 and January 2026.

31. After New Hampshire formally ceases implementation and enforcement of its I/M program on January 31, 2026, I expect that all inspection stations will terminate their contracts with Gordon-Darby NHOST and revenue from inspections will drop to zero. Gordon-Darby NHOST's sole source of revenue comes from the inspection fees and related charges associated with the safety and I/M programs. The current contract between New Hampshire and Gordon-Darby NHOST runs through December 31, 2026. Absent New Hampshire's decision to terminate

the safety and I/M programs and end its contract with Gordon-Darby NHOST effective January 31, 2026, I anticipate that over the last 11 months of that contract Gordon-Darby NHOST would have collected approximately $4,100,000 in inspection fees based on historical emission inspection trends.

32. Gordon-Darby NHOST has already purchased blank inspection stickers and other consumable materials to be supplied to inspection stations to meet a portion of their needs during 2026. These materials will be rendered obsolete once New Hampshire ceases implementing and enforcing its safety and I/M programs. Because Gordon-Darby NHOST's sole source of revenue is fees from inspections and associated fees under contracts with individual inspection stations, once those inspections cease, Gordon-Darby NHOST will have no further opportunity to recover the costs of these materials.

33. Termination of New Hampshire's safety and I/M programs will also inflict financial harm on Gordon-Darby NHOST's corporate parent, Plaintiff Gordon-Darby Holdings, Inc. In addition to the reduced revenue following the enactment of HB2 through the end of January 2026 and the elimination of anticipated future revenue for the remainder of 2026 to its subsidiary Gordon-Darby NHOST, Plaintiff Gordon-Darby Holdings, Inc. will likely also experience a loss in its valuation due to the lost opportunity to bid on future contracts for implementation of New Hampshire's I/M program. Gordon-Darby Holdings Inc.'s valuation may also be negatively impacted by increased uncertainty regarding the stability and predictability of its business model. The value of the contracts that Gordon-Darby Holdings, Inc.'s subsidiaries enter into with states for implementation of their I/M programs is influenced by the fact that under the federal Clean Air Act, a state has to proceed through an orderly process with public notice and comment and approval by the US EPA before modifying or eliminating its I/M program. If New Hampshire

can terminate its I/M program mid-contract without first obtaining that approval, it introduces uncertainty about future revenue streams in other states, which could decide to do the same thing, resulting in a likely reduction in the value of Plaintiff's contracts with other states.

34. In addition to lost revenue and valuation, New Hampshire's termination of the I/M program will also inflict other economic harms on Plaintiff Gordon-Darby Holdings, Inc. and its subsidiaries.

35. With the loss of all revenue from its contracts associated with New Hampshire's safety and I/M programs, Gordon-Darby NHOST will need to wind down all of its business operations.

36. The wind-down of Gordon-Darby NHOST will include terminating the employment of all employees dedicated to servicing contracts under the New Hampshire I/M program, amounting to four full time equivalent positions.

37. Gordon-Darby, Inc. will also need to terminate the employment of additional corporate support personnel due to the decreased need for services supporting Gordon-Darby NHOST's work.

38. Together, these layoffs will amount to a combined loss of approximately 80-100 years of institutional knowledge and program expertise.

39. Terminating the New Hampshire safety and I/M programs will also entail significant effort to recover and transport Gordon-Darby NHOST Equipment that has been provided by Gordon-Darby NHOST to inspection stations under their service agreements. If Gordon-Darby NHOST is not able to take over physical custody over these units, it would prevent Gordon-Darby NHOST from inspecting the hardware condition and obtaining recovery under warranty or securing US EPA verification that these devices were properly decommissioned.

40. Proper end-of-life handling of this Gordon-Darby NHOST equipment could require Gordon-Darby NHOST to retrieve, store, and ultimately decommission and dispose of over 1,700 analyzers, printers, and support hardware currently in the custody of licensed inspection stations. Many inspection stations may simply discard, recycle, or permanently remove their Gordon-Darby NHOST equipment once New Hampshire ceases implementing and enforcing the safety and I/M programs, resulting in the unrecoverable loss of that Gordon-Darby NHOST equipment.

41. Wind-down of Gordon-Darby NHOST's operations will also require the termination of the company's office and warehouse leases and telecommunications and security contracts entered into for implementation and operation of the safety and I/M programs. Some of these leases and vendor contracts have early termination penalties that may be triggered. Gordon-Darby NHOST will have to incur expenses to restore any warehouse modifications that were made and remove any utilities that were installed in its leased facilities. Gordon-Darby NHOST will also bear the burden of offloading any facility furnishings, including shelves, forklifts, desks, appliances, and company vehicles. Gordon-Darby NHOST will also incur costs associated with retrieving, packaging, and shipping company-owned assets back to the corporate office in Kentucky upon termination of employment and closure of the facilities.

42. Ending vehicle inspections will also complicate Gordon-Darby NHOST's ability to recover outstanding amounts due from inspection stations. The company's automated billing and ACH collection systems are tied to active inspection activity, and once inspections cease, Gordon-Darby NHOST will be required to manually reconcile open invoices, refunds, and past-due balances for each station. Termination of the safety and I/M programs will also result in the

termination of Gordon-Darby NHOST's service agreements with inspection stations, further complicating efforts to collect outstanding amounts owed.

**Impacts of New Hampshire's Termination of the Vehicle Inspection and Maintenance Program on the Environment and Public Health and Safety**

43. If New Hampshire stops implementing and enforcing its safety and I/M programs, there will be direct impacts to the environment and to public health and safety.

44. If emissions inspections end, emissions of harmful pollutants from vehicles will increase. New Hampshire's I/M program helps to reduce motor vehicle emissions by making sure that eligible vehicles' emission control systems are in good working order. In fact, NHDES's own website and Commissioner Scott's February 10, 2025 letter to the New Hampshire House Transportation Committee affirm that motor vehicles account for half of the air pollution that causes the formation of ground level ozone. The required inspections identify vehicles with faulty emission control systems and require the vehicle owner to repair any defects identified. A copy of the relevant NHDES website materials is attached as Exhibit 7. Commissioner Scott's February 10, 2025 letter, which is also discussed in paragraph 18, is attached as Exhibit 2.

45. Historical data over the life of New Hampshire's I/M program show that 9 percent of OBD eligible vehicles failed the emissions test and needed repair. Absent emissions inspections, those defects will go unaddressed, and vehicle emissions will be higher.

46. The I/M program's positive effect on the environment and public health cannot be measured only in the number of vehicles that fail inspection and require repairs. Based on my experience, the inspection requirement also has a preventative effect that encourages vehicle owners to repair their vehicles and address any issues in their emission control systems before their required inspection to ensure that they pass. This preventative effect provides additional emission reductions beyond what is reflected in the inspection failure rate. In addition to and

independent of this preventative effect, vehicles that were tested, failed, and repaired in prior years also contribute to reduced overall emissions for the State not just in that year but in the following years; this future effect on the environment is masked when simply looking at failure data for a single year.

47. The negative effects of New Hampshire's decision to cease the safety and I/M programs are already being felt, as the number of inspections conducted has already gone down significantly over previous years since the enactment of HB2. As fewer vehicles are inspected, more faulty emissions systems will go undetected, and vehicle emissions will increase. These problems will compound as the program becomes completely terminated after January 31, 2026, and as more vehicles over time suffer emissions control system breakdowns that are not addressed in response to inspections.

48. New Hampshire's decision to cease implementing and enforcing the safety and I/M programs will also threaten public safety. The state's emissions inspection program is incorporated into its mandatory safety inspection program, which New Hampshire also plans to stop implementing and enforcing after January 31, 2026. These safety inspections routinely identify issues with vehicle components and systems that are critical to safe driving, including steering, brakes, tires, brake lights, and the vehicle body. Inspection data show that thousands of vehicles each month fail inspection or require corrective measures for these systems, as shown above in Table 3. Importantly, the inspection data in Table 3 significantly underreport the actual safety deficiencies that are identified and repaired as a result of an inspection because many inspection stations do not log the inspection as a "failure" in the system if the repair is made during the inspection.

49. Inspection data for 2025 also show that identification of these critical safety issues is down over previous years since enactment of HB2, as vehicle owners skip their required inspections. Once New Hampshire formally ceases implementing its vehicle inspection program after January 31, 2026, more vehicles with safety defects will go undetected, making New Hampshire's roads less safe.

**Impacts of New Hampshire's Termination of the Vehicle Inspection and Maintenance Program on the Ability of New Hampshire to Restore and Resume the Program**

50. Terminating New Hampshire's I/M program will also lead to loss of significant skills, manpower, and institutional equity built up in the program.

51. Once New Hampshire fully ceases implementing the I/M program, it will lead to the loss of the licensed inspection stations that carry out required inspections, either effective immediately or gradually over time. NHDOS has not clarified whether it will consider existing licenses issued to inspection stations to become void immediately after January 31, 2026. If so, then over 1,500 inspection stations will lose their licenses to conduct emission inspections under the I/M program. If not, then individual inspection stations' licenses will expire over time as they reach the end of their authorized lifetime with no mechanism or incentive to renew those licenses.

52. Once New Hampshire fully ceases implementing the I/M program, it will also lead to the loss of certified vehicle inspectors who carry out the inspections required under the program. NHDOS has not clarified whether it will consider inspector certifications to become void immediately after January 31, 2026. If so, then over 5,400 inspectors will lose their certifications and will no longer be qualified to conduct inspections under the I/M program. If not, then as with station licenses, these inspectors' certifications will expire over time with no mechanism or incentive for recertification.

53. Further, many certified vehicle inspectors will likely be laid off once their services are no longer needed. These inspectors may go on to find other employment, leading to substantial brain drain, and making it difficult to rehire skilled inspectors if and when New Hampshire's safety and I/M programs are reinstated.

54. Termination of the I/M program will also break the continuous emissions inspection data and audit trail that New Hampshire is required to maintain for compliance with US EPA regulations. Compliance with these regulations requires a continuous flow of validated inspection results and associated system verification records to be provided to NHDES. These records have been transmitted to NHDES from the VID operated by Gordon-Darby NHOST and used by NHDES to prepare the reports required by US EPA. Once inspections cease, however, NHDES will no longer receive validated inspection data or the associated system verification records it needs to comply with US EPA regulations.

55. Once New Hampshire formally ceases implementing and enforcing its safety and I/M programs as planned, it will be significantly more difficult and time- and resource-intensive to reinstate the programs at a later date.

56. In order for inspections to resume under the vehicle inspection program, New Hampshire would need to redevelop a sufficient number of licensed inspection stations staffed by certified inspectors to carry out those inspections. Inspection stations with lapsed licenses would need to prepare and submit license applications, and the NHDOS Division of Motor Vehicles would need to process and grant those licenses. If New Hampshire considers previously issued licenses to become void after January 31, 2026, then resuming the program could require reauthorization of over 1,500 inspection stations.

57. Likewise, New Hampshire would need to ensure a sufficient workforce of certified inspectors is available to carry out these inspections at licensed inspection stations. For any inspectors whose certificates are no longer valid (whether due to expiration during the program's lapse or because NHDOS considers all certificates to become void after January 31, 2026), the NHDOS Division of Motor Vehicles would need to provide the training courses required for certification and process those inspectors' certification applications.

58. Moreover, many of the skilled inspectors who are currently licensed to carry out inspections under the safety and I/M programs will likely find other employment during any lapse in the programs. Those inspectors will be unavailable for hire once the program resumes, and new inspectors will need to be trained and certified, creating an even longer lead time to reinstate inspections.

59. Gordon-Darby NHOST (or any other vendor New Hampshire selects) would need substantial time and resources to deploy or restore the systems and equipment necessary to carry out New Hampshire's safety and I/M programs. Gordon-Darby NHOST would need to enter into new service contracts with the individual licensed inspection stations, since the over 1,500 existing contracts that Gordon-Darby NHOST maintains with these stations will be canceled if New Hampshire's termination of its vendor contract with Gordon-Darby NHOST takes effect on January 31, 2026.

60. Upon finalizing contracts with individual inspection stations, Gordon-Darby NHOST would need to resupply those stations with the NHOST Equipment recovered during the program wind-down. Before inspections could resume, each unit would require system verification to ensure proper performance, updated firmware and software, and successful communication testing with the VID. Historically, performing these steps requires several hours per unit,

excluding shipping and scheduling delays. For a network of more than 1,700 units, this effort would require thousands of technician hours and would take several months, even under accelerated conditions. Some units may also require repair or replacement before redeployment, further increasing the time required.

61. To supply stations with stickers needed for a reinstated program would require three to four months for sticker form acquisition and distribution to stations, at a cost of over $400,000.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 9th day of December 2025.

_____
Joel Unverzagt

# EXHIBIT 1

The State of New Hampshire
# Department of Environmental Services


---

### Robert R. Scott, Commissioner

March 31, 2025

The Honorable Daniel Innis
Chair, Senate Commerce Committee
State House, Concord, NH 03301

**Re:  HB 649-FN - An Act removing the requirement for physical safety inspections and on-board diagnostic tests for passenger vehicles and eliminating funding for the motor vehicle air pollution abatement fund.**

Dear Chair Innis and Members of the Committee:

Thank you for the opportunity to comment on behalf of the New Hampshire Department of Environmental Services (NHDES) regarding HB 649-FN which proposes to repeal fifteen (15) NH Revised Statutes Annotated (RSAs) with the objective of eliminating the annual motor vehicle safety and emissions inspection and maintenance (I/M) program in its entirety.  Chief amongst these is RSA 266:1 which requires all vehicles to undergo an annual inspection, including an On-Board Diagnostics (OBD) system check, as applicable.  Although NHDES is opposed to this legislation as written, we highlight issues and offer information for consideration by the General Court relative to the emissions portion of the program.  NHDES does not address the safety inspection issues in our comments.

**Required by federal law:** The federal Clean Air Act (CAA) Section 184, requires NH to have an I/M program, including the OBD check, because 1) portions of the state have exceeded federal air quality standards for ozone, a respiratory and cardiovascular health irritant, and 2) the state is located in the federally designated Ozone Transport Region (OTR)[1].  OTR states include those in the Northeast and Mid-Atlantic region of the country, and all OTR states are required to have programs that address ozone pollution, including vehicle I/M programs[2].  It should be noted this is a federal statutory requirement, not simply an EPA rule.

**EPA discretion is limited:** The CAA requires states to submit a motor vehicle I/M State Implementation Plan (SIP) to the Environmental Protection Agency (EPA) committing to the implementation of programs that will keep them compliant with federal air quality standards.  NH's federally approved I/M SIP submittal includes authorizing statutes and state administrative rules that are federally enforceable.  Any revisions that change a requirement of the approved I/M program will require federal review and approval of a revised SIP.  In April 2024, EPA approved a revision to NH's I/M SIP that incorporates minor changes to Department of Safety (DOS) rules.  HB 649-FN would take effect January 1, 2026, which does not provide

---

[1] Plan provisions for States in the OTR: https://www.govinfo.gov/content/pkg/USCODE-2013-title42/html/USCODE-2013-title42-chap85-subchapI-partD-subpart2-sec7511c.htm
[2] EPA Overview of Vehicle I/M Programs with map: https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1013CC0.pdf

The Honorable Daniel Innis
Chair, Senate Commerce Committee
March 31, 2025

sufficient time for the state to process or EPA review and response to such a major NH SIP action. At a minimum the Department requests the effective date of the bill include language to condition the repeal of the emissions portion of the program on federal approvals.

**Potential for additional reductions and costly lawsuits:** The "anti-backsliding" provisions of the CAA Section 110(I) prevent EPA from approving revisions to state SIPs that would weaken emissions controls.  Therefore, any increase in emissions due to exemption of vehicles from inspection would need to be offset by corresponding reductions from other sectors.  Air quality modeling would need to be developed to determine those losses, and the burden of offsetting the added emissions would most likely fall on the business sector, including industries and utilities, with the potential to affect their consumers.  Even if the EPA chose not to enforce this requirement, environmental advocates could sue under the citizen lawsuit[3] provision of the CAA Section 304 to require federal enforcement of the I/M requirements, which could pose unquantifiable, but potentially significant, costs to defend and rectify if the state does not prevail in those lawsuits.

**Current I/M program results from a compromise with EPA:** NH's current I/M program is the result of lengthy negotiations and settlement with EPA by NHDES, (then) Department of Safety Commissioner Richard Flynn, and (then) House Science, Technology, and Energy Committee Chair Jeb Bradley, to avoid a more onerous and costly tailpipe testing requirement (as strictly required by the CAA) in lieu of the less intrusive and lower cost electronic OBD system check. NH also agreed to require additional controls on the Merrimack Station power generation plant as part of the negotiation. This agreement was established into law in HB 1513 (1998).

**Program response to economic hardship:** Inspection reports are provided to consumers and promote the availability of economic hardship waivers.  At the end of 2023, of the 1,053,453 tests performed, a total of only 62 economic hardship/time extension waivers were applied for and approved by the NH Department of Motor Vehicles (DMV).  Notably, only 47 were actually used, indicating that most consumers can make necessary repairs which in many cases can save consumers money by avoiding more significant and expensive future failures.  For example, a failed spark plug would trigger the "check engine light."  If not repaired it could cause damage to the catalytic converter, which is very expensive to replace.  Such replacement could be excluded from the warranty because the underlying cause, of which the consumer was alerted to, was not addressed.

**OBD system only identifies components that are related to emissions:** Under federal statute vehicle manufacturers must design their OBD systems so that only problems that will result in elevated emissions can trigger the "check engine" light and cause an OBD failure. For example, when a loose gas cap turns on the check engine light, it is the result of fuel vapors (hydrocarbons) being released into the atmosphere due to failure of the sealed Evaporative

---

[3] Citizen Suits, CAA Section 304: https://www.epa.gov/ogc/notices-intent-sue-us-environmental-protection-agency-epa

The Honorable Daniel Innis
Chair, Senate Commerce Committee
March 31, 2025

Emissions system which, when working, captures and reuses fuel vapors to reduce emissions. A faulty or missing gas cap can allow up to 22 gallons of fuel to evaporate into the air each year.

Thank you again for the opportunity to comment on HB 649-FN.  Should you have further questions or need additional information please feel free to contact Jessica Wilcox, Technical Services Bureau Administrator (271-6749, jessica.wilcox@des.nh.gov) with NHDES' Air Resources Division.

Sincerely,

Robert R. Scott
Commissioner

ec:    Sponsors of HB 649-FN: Representatives Granger, Osborne, Harvey-Bolia, Sirois, Sellers, and Sabourin dit Choiniere.

# EXHIBIT 2

The State of New Hampshire

# Department of Environmental Services

### Robert R. Scott, Commissioner



February 10, 2025

The Honorable Thomas Walsh
Chair, Transportation Committee
Legislative Office Building
Concord, NH 03301

**Re:  HB 649-FN, An Act** removing the requirement for physical safety inspections and on-board diagnostic tests for passenger vehicles and eliminating funding for the motor vehicle air pollution abatement fund.

Dear Chair Walsh and Members of the Committee:

Thank you for the opportunity to comment on behalf of the New Hampshire Department of Environmental Services (NHDES) regarding HB 649-FN which seeks to eliminate the motor vehicle safety and emissions inspection and repeal the Motor Vehicle Air Pollution Abatement Fund.  NHDES takes no position on this bill but provides information for consideration by the General Court relative to the emissions portion of the annual inspection.  NHDES does not address safety issues in our comments.

HB 649-FN proposes to repeal fifteen (15) New Hampshire Revised Statutes Annotated (RSAs) to eliminate the New Hampshire inspection program in its entirety. Chief amongst these is RSA 266:1 which requires all vehicles to undergo an annual inspection, including the On-Board Diagnostics (OBD) inspection as applicable.

Motor vehicles in New Hampshire account for half of the air pollution that causes the formation of ground level ozone, a respiratory irritant.  New Hampshire is required to have the annual vehicle emissions inspection and maintenance (I/M) program, including OBD, because portions of the state have exceeded federal air quality standards for ozone and because we are in the federally designated Ozone Transport Region (OTR).  OTR states include only those in the Northeast and Mid-Atlantic region of the country, and all OTR states are committed to programs that address ozone pollution, including vehicle emissions inspections.

Vehicle I/M programs, including New Hampshire's OBD inspection pursuant to RSA 266:59-b, paragraph III, are a proven way to reduce emissions from motor vehicles.  NH's current program is the result of lengthy negotiations and settlement with EPA, by then Representative Jeb Bradley in his position as Chair of the House Science, Technology and Energy Committee, to avoid a more onerous and expensive tailpipe testing requirement.

The Honorable Thomas Walsh
Chair, House Transportation Committee
February 10, 2025

The federal Clean Air Act (CAA) requires states to submit an I/M State Implementation Plan (SIP) to the Environmental Protection Agency (EPA) defining programs that will be implemented to keep states compliant with federal air quality standards.  New Hampshire's federally approved vehicle I/M SIP submittal includes authorizing statutes and state administrative rules for implementing the current I/M program.  Therefore, upon approval of the SIP by EPA the current state statutes and state rules are federally enforceable and any revisions that change a requirement of the approved program will require submittal and approval of a revised SIP.  In April 2024, EPA approved a revision to New Hampshire's I/M SIP that incorporated updates to Department of Safety rules.  The timeline for EPA to review and act upon proposed changes to an approved SIP is generally 18 to 24 months from the date of submittal.  HB 649-FN would go into effect January 1, 2026, which does not provide sufficient time to complete the process.  NHDES recommends that the committee consider effective date language similar to that proposed in SB 157-FN, section 3 to allow appropriate time for EPA review and response to such an major NH SIP action.

Should New Hampshire repeal or even alter the program requirements without obtaining EPA approval it could, if not rectified, subject the state to federal sanctions[1] up to and including loss of federal highway funds as provided under the CAA[2].  However, approval is not guaranteed, and HB 649-FN does not provide for this potential.

Additionally, EPA is authorized to take enforcement action against violators of federally approved SIPs and consequentially could impose even more stringent requirements.  The EPA Office of Inspector General (OIG) conducted an audit[3] on EPA's Inspection and Maintenance (I/M) Program requirements, evaluating compliance with the on-road testing requirement.  Based on recommendations from the OIG audit EPA issues the March 2020 "Guidance for On-Road Testing Requirements for Enhanced Vehicle I/M Programs."[4]  Any major SIP revision involving New Hampshire's I/M program could result in more burdensome requirements, and the cost to implement such requirements are indeterminate.

Further, the anti-backsliding provisions of the CAA Section 110(I) prevent EPA from approving revisions to state SIPs that would weaken or eliminate emissions controls.  Therefore, any increase in emissions due to exemption of vehicles from inspection would need to be offset by corresponding reductions from other sectors.  Air quality modeling would need to be developed to determine those losses, and the burden of offsetting the added emissions would most likely fall on the business sector, including industries and utilities, with the potential to affect their

---

[1] EPA Sanctions: https://www.epa.gov/air-quality-implementation-plans/status-active-sanctions-clocks-under-clean-air-act
[2] CAA Section 110(m) and Section 179(a) and (b): http://epa.gov/oar/caa/title1.html#ia
[3] OIG evaluation of EPA I/M Program: https://www.epa.gov/office-inspector-general/report-collecting-additional-performance-data-states-would-help-epa-better
[4] EPA On-Road Testing Requirements: https://nepis.epa.gov/Exe/ZyPDF.cgi/P100YQX8.PDF?Dockey=P100YQX8.PDF

The Honorable Thomas Walsh
Chair, House Transportation Committee
February 10, 2025

consumers.  Additionally, citizen lawsuits[5] under CAA section 304 could pose unquantifiable, but potentially significant, costs for NHDES and NHDOJ to defend.

Thank you again for the opportunity to comment on HB 649-FN.  Should you have further questions or need additional information please feel free to contact Jessica Wilcox, Technical Services Bureau Administrator (603-271-6749, jessica.wilcox@des.nh.gov) with NHDES' Air Resources Division.

Sincerely,

Robert R. Scott
Commissioner

ec:    Sponsors of HB 649-FN: Representatives Granger, Osborne, Harvey-Bolia, Sirois, Sellers, and Sabourin dit Choiniere.

---

[5] Citizen Suits, CAA Section 304: https://www.epa.gov/ogc/notices-intent-sue-us-environmental-protection-agency-epa

EXHIBIT 3

 Outlook

---

**Inspection Stickers**

---

**From** Steve Smith <smith.s@gordon-darby.com>

**Date** Thu 7/10/2025 7:02 AM

**To** Marasco, John <john.c.marasco@dos.nh.gov>

**Cc** Joel Unverzagt <unverzagt.j@gordon-darby.com>; Joshua McInturff <mcinturff.j@gordon-darby.com>; Curtis Barry <curtis@barrygr.com>


Good morning Director,

Following the passage of HB2 and considering the uncertainty around the future of the Safety and Emissions Testing Program, we are seeking your guidance on several urgent matters directly affecting sticker procurement and management:

    1. OBD Inspection Enforcement Post-Jan. 31, 2026
    Our understanding is that per the contract, inspection stickers will continue to serve as proof of compliance for OBD inspections after January 31, 2026. How do you envision demonstration of compliance and enforcement of OBD inspections beginning February 1, 2026?

    2. Sticker Order for 2027 Stickers
    Our order for the 2027 sticker forms—which would be used during 2026 and into 2027—needs to be placed in the very near future. Based on conversations with our supplier, this would need to be ordered within two weeks of today. Historically, we would order approximately 1.3
    million forms. Given the current legislative situation, what is your recommendation regarding the size or necessity of this pending order?

    3. Policy on Sticker Retrieval
    If inspection stickers are ultimately no longer required for demonstrating OBD compliance under HB2, what will the policy and procedure be for retrieving and accounting for unused sticker inventory from stations? We raise this now because it will influence decisions about shipping
    quantities and inventory management, given the uncertainty about when OBD inspections could end.

    4. Discontinuation of the $3.25 Sticker Fee
    RSA 266:2, which authorizes collection of the $3.25 sticker fee, is repealed effective January 31, 2026. Does the Department of Safety intend to issue guidance regarding discontinuation of the sticker fee collection and any adjustments to billing procedures needed under our contract
    starting February 1, 2026?

Due to the recent legislation, prompt action is needed. We would appreciate your guidance to ensure we move forward quickly and appropriately while minimizing costs and operational disruptions.


Thank you for your attention on this,

Steve

# EXHIBIT 4

 Outlook

---

**RE: Sticker order for 2026**

---

**From** Pike, Robbin <robbin.c.pike@dos.nh.gov>

**Date** Fri 7/18/2025 9:08 AM

**To** Steve Smith <smith.s@gordon-darby.com>

**Cc** Joshua McInturff <mcinturff.j@gordon-darby.com>; Dyment, Kathleen <Kathleen.A.Dyment@DOS.NH.GOV>; O'Leary, Jennifer <Jennifer.N.OLeary@DOS.NH.GOV>

---

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Morning, Steve,

The Director has informed me that;

"If we have enough stickers to cover inspections done through January 31st then we do not need to order any more.  The only order that should be placed is to provide stickers for anticipated inspections conducted through January 31st, 2026.
There will be no enforcement of safety inspections or emissions after January 31st, a plan will be developed for sticker retrieval in the near future, and I'm not sure about the $3.25 at this time; however, state inspections and stickers will no longer be utilized after January 31st, so there should not be any incoming revenue after that date that would need to be allocated or addressed."

I do know there are quite a few things in the works and as soon as we are informed, we will let you and everyone know.


Thank you for your patience,

Robbin C Pike, Program Specialist
Dealer/Inspection Desk and Arbitration
Bureau of Registration
23 Hazen Dr
Concord NH 03305
603-227-4120

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by law. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing or copying of this e-mail is strictly prohibited and may be subject to criminal prosecution. If you have received this e-mail in error, please immediately notify me by telephone at 603-227-4120. You will be reimbursed for reasonable costs incurred in notifying us.



**From:** Steve Smith <smith.s@gordon-darby.com>
**Sent:** Thursday, July 17, 2025 9:26 AM
**To:** Pike, Robbin <robbin.c.pike@dos.nh.gov>; Dyment, Kathleen <kathleen.a.dyment@dos.nh.gov>
**Cc:** Joshua McInturff <mcinturff.j@gordon-darby.com>
**Subject:** Sticker order for 2026

**EXTERNAL EMAIL WARNING!** This email originated outside of the New Hampshire Executive Branch network. Do not open attachments or click on links unless you recognize the sender and are expecting the email. Do not enter your username and password on sites that you have reached through an email link. Forward suspicious and unexpected messages by clicking the Phish Alert button in your Outlook and if you did click or enter credentials by mistake, report it immediately to helpdesk@doit.nh.gov!

Good morning Robbin,

Here is the email that we sent to the Director last Thursday morning. If you could find out what his thoughts are on this I would greatly appreciate it!

*Following the passage of HB2 and considering the uncertainty around the future of the Safety and Emissions Testing Program, we are seeking your guidance on several urgent matters directly affecting sticker procurement and management:*

  1. *OBD Inspection Enforcement Post-Jan. 31, 2026*
   *Our understanding is that per the contract, inspection stickers will continue to serve as proof of compliance for OBD inspections after January 31, 2026. How do you envision demonstration of compliance and enforcement of OBD inspections beginning February 1, 2026?*

  2. *Sticker Order for 2027 Stickers*
   *Our order for the 2027 sticker forms—which would be used during 2026 and into 2027—needs to be placed in the very near future. Based on conversations with our supplier, this would need to be ordered within two weeks of today. Historically, we would order approximately*

*1.3*

*million forms. Given the current legislative situation, what is your recommendation regarding the size or necessity of this pending order?*

3. *Policy on Sticker Retrieval*
   *If inspection stickers are ultimately no longer required for demonstrating OBD compliance under HB2, what will the policy and procedure be for retrieving and accounting for unused sticker inventory from stations? We raise this now because it will influence decisions about shipping*
   *quantities and inventory management, given the uncertainty about when OBD inspections could end.*

4. *Discontinuation of the $3.25 Sticker Fee*
   *RSA 266:2, which authorizes collection of the $3.25 sticker fee, is repealed effective January 31, 2026. Does the Department of Safety intend to issue guidance regarding discontinuation of the sticker fee collection and any adjustments to billing procedures needed under our contract*
   *starting February 1, 2026?*

*Due to the recent legislation, prompt action is needed. We would appreciate your guidance to ensure we move forward quickly and appropriately while minimizing costs and operational disruptions.*

Thanks again,
Steve

NOTICE: This electronically transmitted information is intended only for the named person or entity to which it is addressed and may contain confidential and/or privileged material. This information should not be transmitted to or received by anyone other than the named addressee (or a person authorized to deliver it to the named addressee). Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you receive this transmission in error, please contact the sender immediately and delete the material from any computer or system without copying or forwarding.

# EXHIBIT 5



# State of New Hampshire

**DEPARTMENT OF SAFETY**
**OFFICE OF THE COMMISSIONER**
**33 HAZEN DR. CONCORD, N.H. 03305**
**603-271-2791**

ROBERT L. QUINN
COMMISSIONER OF SAFETY

September 16, 2025

<u>**VIA CERTIFIED MAIL:**</u>  7022 1670 0003 0746 2731
**and FIRST CLASS MAIL**
Mr. Robert Tefft, President
Gordon-Darby NHOST Services, Inc.
2410 Ampere Drive
Louisville, KY 40299

**RE:    Termination of Contract, G&C Item #61 on March 27, 2019, and extended by**
**Item #5 O, as approved November 13, 2024**

Dear Mr. Tefft:

This letter is in reference to the above captioned contract between Gordon-Darby NHOST Services, Inc. and the State of New Hampshire, Department of Safety, Division of Motor Vehicles ("State"), executed and approved by Governor & Council (Item #61) on March 27, 2019   and extended by Governor and Council on November 13, 2024 (Item #5 O), referred to herein as "Agreement". The Agreement was entered into for the purpose of providing a computer-based system for all licensed New Hampshire Inspection Stations to facilitate motor vehicle safety inspections and accurate On-Board Diagnostics (OBD) testing, as required by New Hampshire laws, RSA 266:1 and RSA 266:59-b, respectively.

As you are aware, in the most recent legislative session, the Legislature has eliminated the State's motor vehicle inspection program, including OBD testing. In practice, on January 31, 2026, registered vehicles in New Hampshire will no longer be required to have annual safety inspections or OBD testing. This is 11 months short of the expiration of our Agreement.

While we have appreciated the professional partnership with Gordon-Darby NHOST Services, Inc., given the fact that the motor vehicle inspections program will soon be abolished, the State is exercising Part 2, Section 13.2 of the Agreement to Terminate For Convenience, effective January 31, 2026. Although Section 13.2 of the Agreement requires only 30-days written notice, I am sending you this notification of the State's intent to terminate the Agreement in order that we may develop a mutually agreeable work plan to wind down services, develop appropriate messaging, and discuss post-termination assistance from Gordon-Darby NHOST Services, Inc. with regards to State data.

*Mr. Robert Tefft, President*
*Gordon-Darby NHOST Services, Inc.*
*09/16/25*
*Page 2*

I would like to personally thank you for the opportunity to work with you during our contract period.

Sincerely,

Robert L. Quinn

Enclosure

Cc:     Joel Unverzagt, President
        Gordon-Darby NHOST Services, Inc.
        10 Dunklee Road, Unit 22
        Bow, NH  03304.

# EXHIBIT 6



 🌐 Change Site Language    🔍 Search The Site

⚠ **ALERT**

**Scam Alert:** The New Hampshire DMV is aware of an <u>active scam targeting residents through text messages</u>. The NH DMV never sends text messages regarding payments.



**New Hampshire**
## Division of Motor Vehicles
A Division of the New Hampshire Department of Safety



 **OPEN MENU**

# Inspections & Emissions

*What you need to know about vehicle inspections, emissions and On-Board Diagnostics.*

## FAQ: Termination of the New Hampshire Vehicle Inspection and Emissions Testing Program

⌄ Are vehicle inspections and emissions testing ending in New Hampshire?

Under the new State budget (House Bill 2), New Hampshire repealed mandatory annual safety inspections for most passenger vehicles effective January 31, 2026. Emissions/on-board diagnostics testing will also end on that date. Until then, safety and emission inspections remain required as usual.

⌄ Do I still have to get my car inspected in 2025?

⌄ If my car fails inspection in late 2025, can I just wait until 2026?

⌄ Will commercial vehicles still need inspections after 2026?

⌄ Will there still be safety laws for vehicles after inspections end?

⌄ Do I still need an inspection sticker on my windshield in 2025?

Yes. Until the repeal takes effect in 2026, vehicles are still required to display a valid inspection sticker as proof of compliance with current laws. No stickers will be issued as of February 1, 2026.

⌄ Can a repair shop still perform an inspection after the sticker requirement ends?

### Vehicle Inspections    ⌄

#### Vehicle Inspections

All New Hampshire registered vehicles require a safety inspection to be conducted within ten (10) days of the registration. After the initial inspection, registered vehicles must be re-inspected every year, no later than ten (10) days after the end of the owner's birth month. When a vehicle changes owners, it must be inspected in the new owner's name within ten (10) days of the registration date, even if the original inspection sticker has not expired. Please note that antique motor vehicles must be inspected in the month of May (<u>RSA 266:1</u>).

Please review our <u>Administrative Rules, Saf-C 3200</u> for more information regarding the inspection process.

#### Where to Get a Vehicle Inspected

Vehicles may be inspected and OBD tested at any state licensed inspection station or an authorized New Hampshire automobile dealer. Not every mechanic is certified to perform inspections but all authorized stations are required to post a notice indicating that the station is an authorized inspection station. The State of New Hampshire does not mandate the amount a station may charge for an inspection. Prices generally range from $20 to $50 per vehicle.

#### Inspection Process

Inspection information from both the safety and emission inspections will be entered into a computer system and electronically transferred to the DMV. Vehicles which pass both the safety and emissions inspections will be issued an inspection sticker. It will be valid for the same time period as the vehicle's registration. The mechanic is required to give a copy of the official Vehicle Inspection Report (VIR) to the motorist every time the vehicle is inspected.

Below is a list of items which are included in the general inspection process:

- Registration, plates, registration certificate and vehicle identification number.
- Steering, front end and suspension.

# EXHIBIT 7




29 Hazen Drive, Concord, New Hampshire 03301 • (603) 271-3503 • www.des.nh.gov

ARD-30                                                                                                    2020

# On-Board Diagnostics: A New Generation of Motor Vehicles

**What is On-Board Diagnostics? State-of-the-Art Technology**

Beginning in the early 1980s, automobiles have been equipped with technology that helps technicians identify problems associated with computerized engine systems. This technology, known as on-board diagnostics or OBD, is made up of various sensors that communicate their findings to a technician by means of diagnostic trouble codes stored in the automobile's computer.

The federal Clean Air Act Amendments of 1990 required all 1996 and newer light duty vehicles to have more advanced OBD systems, known as OBD II. OBD II systems monitor vehicle conditions and components that are related to vehicle emissions, such as the catalyst in the catalytic converter, engine misfire, engine coolant temperature, and oxygen sensors. OBD II inspection programs ensure that the motor and emissions control equipment are operating correctly.

**What are the benefits of OBD?**

Cars and trucks are responsible for approximately half of the air pollution that causes smog and acid rain and contribute to climate change. While it is true that modern cars emit less air pollution than older vehicles, they are only cleaner if their emission control systems are operating properly.

The OBD II system can often detect a vehicle malfunction before the driver becomes aware of the problem. Early detection and repair of malfunctions will result in fewer emissions and the early repair of minor problems may prevent more significant and more expensive engine problems that could develop if left unrepaired.

For example, a poorly performing spark plug can cause the engine to misfire, a condition sometimes unnoticed by the driver, but one that will be detected by the OBD II system. This engine misfire can, in turn, quickly degrade the performance of the catalytic converter and permanently damage the catalyst. By responding to the check engine light (turned on by the OBD II system) in a timely manner, the driver would be faced with a relatively inexpensive spark plug repair. However, without OBD II detection, the driver could be faced with an expensive catalytic converter repair in addition to the spark plug repair.

By storing the malfunction information in the computer's memory at the time it occurs, OBD II allows the service technician to more accurately identify the problem and make the proper repairs. This saves time for the repair technician, money for the consumer, and reduces air pollution.

**How does the OBD II system work?**

The OBD II system monitors a variety of engine conditions and outputs while the car is being driven. When the OBD II system detects a problem with the emission control system, a dashboard light is illuminated indicating "Check Engine." A corresponding diagnostic trouble code is stored in the computer's memory documenting which emissions control component is experiencing the problem, and under  what conditions. The repair technician will retrieve the diagnostic trouble code information from the computer using a computer scan tool. By using this information, a properly trained technician can more accurately find and fix the problem.

If the malfunction indicator light illuminates with a steady, continuous light, the vehicle operator should contact a repair technician and schedule a service visit. This is not an emergency situation, but the vehicle should be serviced soon. However, if the malfunction indicator light blinks or flashes, this indicates certain severe engine malfunctions. When this occurs, the vehicle operator should stop the car immediately and refer to the owner's manual to determine if the car can be driven or if it should be towed to a service station. Continued operation of the vehicle could result in damage to the engine or emissions control components, specifically the catalytic converter, a very costly component.

Sometimes the malfunction indicator light goes out by itself. This indicates that the problem that initially triggered the light no longer exists. This could happen if, for example, the gas cap was not on tight, but was then fixed. In this case, the light should reset itself and go out after several trips, eliminating the need for a service visit.

Some repairs may be covered under the vehicle's regular warranty or under a special warranty related to the OBD system and certain emission control components. Vehicle owners should check the warranty information and ask their technician what repairs are covered.

**Who can service OBD II related problems?**

Only qualified, trained technicians using the correct equipment should perform OBD II related service. Vehicle owners should ask their repair facility if the technicians are certified to ASE A6, A8 and L1 standards, if they have the necessary diagnostic tools and especially if they will stand behind their work.

**New Vehicle Safety Inspection Testing Requirements**

New Hampshire's annual enhanced vehicle safety inspection is now fully computerized and includes a test of the OBD II system on all model year 1997 and newer vehicles. The electronic



reporting and check of the OBD II system should add less than five minutes to the safety inspection time. Vehicles that pass the enhanced safety inspection and the OBD II test will be issued a New Hampshire vehicle inspection sticker. Vehicles that fail the safety portion of the inspection will not receive a sticker and must be repaired and re-inspected by the 10th of the month following the inspection month. If a vehicle fails the OBD portion of the test only, the vehicle operator is provided with a test report that specifies the reason for the failure. These vehicles must be repaired and retested within 60 days although the owner may apply for a 1-year-only hardship waiver from this requirement.

The OBD II system may tell the technician that certain components are not "ready" for testing and the vehicle owner may be asked to drive the vehicle for a few days to complete the "drive cycle," then return for testing. The "drive cycle" can generally be completed by operating the vehicle in a combination of in-town and highway driving. Essentially, a drive cycle puts a vehicle through enough different situations to allow the OBD II system to adequately evaluate the various components and will return the system to "ready" mode. A vehicle may not be ready for a number of reasons, including a recently disconnected battery or recent clearing of diagnostic codes using an OBD II scan tool.

**For More Information**

New Hampshire Department of Safety Division of Motor Vehicles (603) 271-8800

New Hampshire Department of Environmental Services Air Resources Division (603) 271-1370