### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GORDON-DARBY HOLDINGS, INC., *Plaintiff*, v. ROBERT L. QUINN, in his official capacity as Commissioner of the New Hampshire Department of Safety, et al., *Defendants*. | Civil Action No. 25-cv-00508-AJ |

### DECLARATION OF DANIEL W. BENNETT FILED WITH PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Daniel W. Bennett, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration:

1. I am the President of the New Hampshire Automobile Dealers Association ("NHADA"). I have served in this position since January of 2023. Prior to becoming President of the NHADA, I served in many roles at NHADA since February of 2003, most recently serving as the Vice President of Government Relations for over 12 years.

2. The NHADA is a statewide trade association representing the full spectrum of New Hampshire's motor vehicle industry, comprising over 500 businesses and more than 14,000 employees across every community in every corner of the state.

3. In my current position, I oversee the operations of our five entities: a self-insured workers compensation trust, a health insurance trust, an education foundation, a products and services corporation, and our 501(c)(6) Association that includes our legislative and regulatory affairs oversight.

1

4. New Hampshire operates a motor vehicle inspection and maintenance ("I/M") program that requires the annual inspection of certain vehicles. The inspection requirements include both a safety inspection, consisting of a physical examination of the vehicle's safety-related systems and equipment, and an emissions inspection, primarily consisting of an electronic analysis of the vehicle's on-board diagnostics ("OBD") system. As the state's I/M program is currently structured, the safety and emissions inspection portions of the I/M program are integrated and cannot operate independently. Safety and emissions inspections are conducted by the same inspectors, inspection stations, and the certification process for approved mechanics requires applicants to complete training, pass a knowledge test related to OBD, and a practical skills demonstration involving both safety and emissions inspections. In most all cases the safety and emissions inspection test are statutorily required to be reported through the NHOST unit. Vehicle owners demonstrate compliance with the state's inspection requirements by displaying an inspection sticker on their vehicle, which the vehicle owner can only obtain if the vehicle passes both the safety and emissions inspections required for that vehicle.

5. NHADA members include businesses that operate inspection stations licensed under New Hampshire's I/M program to conduct vehicle inspections in accordance with the current requirements of state law, including both safety inspections and emission control system inspections. Currently, approximately 333 NHADA member companies are licensed by the New Hampshire Division of Motor Vehicles ("DMV") to conduct such inspections. Each of these inspection stations employs at least one approved mechanic certified by the New Hampshire DMV to inspect vehicles pursuant to New Hampshire's I/M program.

6. The New Hampshire Department of Safety has announced that it intends to cease implementing and enforcing the safety and emissions inspection requirements of its I/M program after January 31, 2026.

7. Terminating the I/M program presents increased risk to public safety. New Hampshire's I/M program requires the inspection of several vehicle systems or components that are critical to safe functioning, including the vehicle's brakes, wheels, tires, steering, electrical systems, lights, fuel systems, vehicle body (including bumpers), and exhaust systems. If the inspection identifies a deficiency in any of these systems, that deficiency must be repaired within a specified time.

8. Safety inspections conducted under New Hampshire's I/M program routinely identify deficiencies in these vehicle safety systems. Tables 1, 2, and 3 below present the total number of safety inspections conducted by New Hampshire inspection stations in 2024, 2023, and 2022, respectively, along with the total number of deficiencies identified for each year and a breakdown of the most common deficiencies identified. In each year, approximately 14 percent of vehicles inspected—just over 1 in 7 vehicles—failed inspection for at least one of these systems. In all three years, the most common system deficiency identified was the vehicle's brakes, with roughly 1 in 20 vehicles failing the state's brake safety requirements.

**Table 1 – Results of 2024 Safety Inspections (All Vehicles)**

|  | Count | Percent of Total |
|---|---|---|
| Total Safety Inspections | 1,595,101 |  |
| Total Inspections with Deficiencies | 223,641 | 14.02 % |
| **Top Safety Deficiencies** | | |
| Brakes | 78,755 | 4.94 % |
| Steering | 51,339 | 3.22 % |
| Tires | 43,358 | 2.72 % |
| Exhaust | 28,900 | 1.81 % |
| Rear Lights | 23,569 | 1.48 % |

Table 2 – Results of 2023 Safety Inspections (All Vehicles)

|  | Count | Percent of Total |
|---|---|---|
| Total Safety Inspections | 1,566,133 | |
| Total Inspections with Deficiencies | 227,807 | 14.55 % |
| **Top Safety Deficiencies** | | |
| Brakes | 81,760 | 5.22 % |
| Steering | 52,253 | 3.34 % |
| Tires | 43,437 | 2.77 % |
| Exhaust | 29,387 | 1.88 % |
| Rear Lights | 23,976 | 1.53 % |

Table 3 – Results of 2022 Safety Inspections (All Vehicles)

|  | Count | Percent of Total |
|---|---|---|
| Total Safety Inspections | 1,562,386 | |
| Total Inspections with Deficiencies | 224,898 | 14.39 % |
| **Top Safety Deficiencies** | | |
| Brakes | 76,958 | 4.93 % |
| Steering | 52,626 | 3.37 % |
| Tires | 42,561 | 2.72 % |
| Exhaust | 29,158 | 1.87 % |
| Rear Lights | 24,482 | 1.57 % |

9. The figures presented in Tables 1-3 do not represent the entirety of vehicle safety issues identified through inspections under New Hampshire's I/M program. These figures record only those vehicles for which the inspection identified a deficiency and the vehicle was released to complete repairs on the defective system at a later date. Inspection stations generally do not report an inspection failure for a vehicle when the inspection identifies a deficiency that the vehicle owner then chooses to have repaired during the same visit. Accordingly, the number of vehicles with critical safety issues that are identified and then repaired as a result of New Hampshire's I/M requirements is <u>much higher</u> than the 14 percent figure reported in Tables 1-3 above.

10. In addition, some vehicle owners have their vehicles repaired to address known system deficiencies before their required annual inspection in order to ensure that they pass that

4

inspection. Those repairs are attributable to New Hampshire's I/M program but are also not reflected in the figures presented in Tables 1-3 above.

11. If New Hampshire terminates its I/M program, the safety issues identified through the required annual inspections are more likely to go unidentified and to not be repaired. As a result, there will be more vehicles operating on New Hampshire roadways with critical safety defects, including issues such as brakes with insufficient stopping power or leaking fluid, tires with worn tread, or inoperable brake lights or taillights. This will lead to an increase in roadside accidents or emergencies that will have an increased burden on State Police, local law enforcement, DOT roadside assistance crews, emergency response personnel, and possibly tow truck companies. Further intensifying the increased risk to public safety is the elimination of laws and rules that were enforced exclusively through the I/M program, particularly those related to critical safety components such as steering and suspension systems, structural rust, and other essential body components. Without the oversight provided by mandatory inspections, there is a heightened likelihood that unsafe vehicles with serious mechanical or structural deficiencies could remain on the road. Moreover, because these requirements no longer exist in law or rule, law enforcement will have no authority to enforce them.

12. Terminating the I/M program would also exacerbate these increased public safety risks by turning New Hampshire into a regional destination or "dumping ground" for older, higher-polluting vehicles that cannot pass emissions or safety inspection requirements in surrounding jurisdictions. All surrounding states—Massachusetts, Maine, Vermont, Connecticut, and New York—have some form of mandatory I/M programs. When a regulatory gap opens, the market behaves predictably: vehicles that are too costly to repair or cannot pass inspection in their home states will be exported to the state with the weakest or nonexistent regulatory structure. Without

an I/M program, New Hampshire will offer the path of least resistance in New England to offload these vehicles, creating a marketplace where vehicles with disabled, tampered, or malfunctioning systems can be easily transferred, sold, and registered. The result will be a structural increase in the number of unsafe and higher-emitting vehicles entering New Hampshire and potentially harm the consumer, especially the unsuspecting buyer.

13. New Hampshire's announcement that it will cease implementation and enforcement of its I/M program without first obtaining approval from the U.S. Environmental Protection Agency ("EPA") to remove that program from its federally approved state implementation plan creates significant regulatory uncertainty for New Hampshire businesses. NHADA members who operate licensed inspection stations face uncertainty regarding whether their obligations under the I/M program continue to apply as a matter of federal law during the period in which New Hampshire is not enforcing its requirements. Likewise, if New Hampshire seeks EPA's approval to eliminate the I/M program from its state implementation plan and EPA ultimately does not approve that change, NHADA members face uncertainty regarding how, when, and in what manner New Hampshire would proceed to resume implementation and enforcement of its I/M program, including what licensing fees or processes inspection stations may need to satisfy upon program resumption. Additionally, this change can cause NHADA members to face challenges in advising customers accurately about vehicle inspection requirements, which can erode trust and impact business reputation.

14. If New Hampshire terminates its I/M program, we anticipate that the costs of doing business in New Hampshire will increase in response to regulatory requirements to offset any emission reductions lost from terminating the I/M program. New Hampshire's emission inspection requirements reduce motor vehicles' emissions of pollutants that are regulated under

the federal Clean Air Act. If mobile source emissions spike due to an influx of high-emitting vehicles and the deterioration of emissions control systems, other regulated sectors—including power plants, industrial manufacturers, trucking companies, fuel distributors, and large commercial operators—may be expected to compensate for that shortfall in the form of additional emission limitations imposed under New Hampshire's state implementation plan. The regulated utilities and other companies may be required to adopt more aggressive emission controls and will likely pass some portion of their compliance costs on to ratepayers and customers in the form of higher prices. As a result, New Hampshire businesses (including NHADA members) will likely face higher electricity prices, trucking/shipping costs, and other costs of doing business as a result of New Hampshire's actions.

15. The I/M program provides a significant amount of consumer protection by setting clear equipment standards and informing the consumer as to the condition of a vehicle involved in a purchase. It creates a level playing field amongst dealers/vehicle sellers and protects the consumer through transparency as to the condition of the vehicle being purchased/receiving plate registration privileges. Additionally, the I/M program provides recourse to the consumer in the event that a vehicle's condition is misrepresented at the time of purchase.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8th day of December 2025, in Bow, New Hampshire.

_____
Daniel W. Bennett

7