IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

GORDON-DARBY HOLDINGS, INC.

Plaintiff,

v.

ROBERT L. QUINN, COMMISSIONER NEW HAMPSHIRE DEPARTMENT OF SAFETY; AND
ROBERT R. SCOTT, COMMISSIONER NEW HAMPSHIRE DEPARTMENT OF ENVIRONMENTAL SERVICES

Defendants.

Civil No. 1:25-CV-00508-LM-AJ

**DEFENDANTS' OBJECTION TO MOTION FOR A PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

ROBERT L. QUINN, COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF SAFETY
*in his official capacity*
ROBERT R. SCOTT,
COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF
ENVIRONMENTAL SERVICES
*in his official capacity*

By and through their counsel

JOHN M. FORMELLA
ATTORNEY GENERAL
Mark L. Lucas, Bar #274692
Joshua C. Harrison, Bar #269564
Assistant Attorneys General
Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

Robert Quinn, Commissioner of the New Hampshire Department of Safety ("NHDOS"), and Robert Scott, Commissioner of the New Hampshire Department of Environmental Services ("NHDES"), in their respective official capacities, by and through the Office of the New Hampshire Attorney General, and pursuant to Fed. R. Civ. Proc. 6(c)(2), submit this memorandum of law and accompanying Declarations in opposition to Plaintiff's December 9, 2025 Expedited Motion for Preliminary Injunction ("Motion"). In support of their Objection, Defendants aver as follows:

## INTRODUCTION

The Motion seeks an injunction under the Clean Air Act ("CAA") and the Federal Declaratory Judgment Act to prevent irreparable economic harm to Plaintiff by compelling the State's specific performance of a terminated public contract as to which Plaintiff does not (and cannot) assert any contractual rights. The Motion asserts irreparable harm to the environment and non-vehicle regulated sources of ozone emissions absent any expert declaration or affidavit but does not (and cannot) connect environmental harm to injury to the Plaintiff. The Motion further asserts harm to public safety from the State's discontinuance of vehicle safety inspections (unrelated to tailpipe emissions) but does not (and cannot) identify how vehicle safety is regulated under the CAA. Plaintiff seeks relief based upon allegations that the State is presently not implementing or enforcing the vehicle emission equipment inspection and maintenance program (the "I/M program") contained in the State's federally approved CAA state implementation plan ("SIP"). These allegations are fully refuted by the NHDOS Declaration of John C. Marasco, which in turn establishes that Plaintiff is in fact seeking an injunction to prevent an alleged future violation. Such relief obviously cannot be granted under a CAA citizen suit provision which does not permit a complaint to be filed until the violation has occurred and the alleged violator and the Environmental Protection Agency ("EPA") are both afforded sixty days' notice. 42 U.S.C. § 7604(b).

Plaintiff's Proposed Order first asks this Court to restrain the State "from taking or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of" the I/M program prior to EPA's "final" approval of a SIP amendment discontinuing the I/M program. ECF-10-5, ¶ 2. Plaintiff further requests that the Court mandate the State "to take all steps necessary to resume and ensure the

continued implementation and enforcement" of the SIP. *Id.*, ¶ 3. The apparent intent of this mandate is to require the State to somehow undo its termination of the public contract between NHDOS and Plaintiff's subsidiary, Gordon-Darby NHOST (the "Contract"). However, nothing in the CAA, the Federal Declaratory Judgment Act, or the Supremacy Clause of the U.S. Constitution requires the State to retain Plaintiff as its contracted I/M program vendor or authorizes relief for the economic harm which Gordon-Darby claims it will suffer absent an injunction to undo the termination of the Contract.

**REQUIRED SHOWING TO SECURE A PRELIMINARY INJUNCTION**

A plaintiff seeking a preliminary injunction must establish: (a) a likelihood of success on the merits; (b) a likelihood of irreparable harm to the plaintiff absent preliminary relief; (c) that the balance of equities tips in the plaintiff's favor, and; (d) that granting an injunction is in the public interest. *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2024), citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This burden is heavy, given that "the right to relief must be clear and unequivocal." *Northwest Bypass Group v. United States Army Corps of Eng'rs*, 470 F. Supp. 2d 30, 36 (D. N.H. 2007) (citations omitted). To decide the Motion, the Court's focus "'must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Café Indigo, LLC v. Pearl River Pastry*, LLC, 2020 U.S. Dist. LEXIS 153794, *4 (D. N.H. 2020) citing *Crowley v. Local No. 82*, 679 F.2d 978, 996 (1st Cir. 1982), rev'd on other grounds by 467 U.S. 526 (1984).

**CONSTITUTIONAL PRIORITY OF DETERMINATIONS**

This Court should "first address[] standing before considering the merits of plaintiffs' claims." *NEA-NH v. NH AG*, 2025 U.S. Dist. LEXIS 195238, *22 (D.N.H. 2025). The Court should not assume "hypothetical jurisdiction" to resolve the contested questions of law at issue in the Motion where its Article III jurisdiction is contested. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). *Steel Co.* requires the Court to first assess its Article III jurisdiction prior to addressing Plaintiff's Motion. *See., e.g.*, *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir. 2006). S*ee also Elec. Privacy Info. Ctr. v. United States DOC*, 928 F.3d 95, 104-105 (D.C. Cir. 2019), citing *Steel Co.*, 523 U.S. at 95 (vacating

order on preliminary injunction and remanding matter for dismissal for lack of standing); *Townley v. Miller*, 722 F.3d 1128, 1136-1137 (9th Cir. 2013) (same).

## ARGUMENT

I. Plaintiff Fails to Show Any Likelihood of Success on the Merits.

Where a movant cannot demonstrate likelihood of success on the merits, '"the remaining factors become matters of idle curiosity."' *Tower v. Zenk*, 2016 U.S. Dist. LEXIS 182947, *9 (D. N.H. 2016) quoting *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 173 (1st Cir. 2015).

*A. Plaintiff Is Unable to Show a Substantial Likelihood of Standing*

A party "must show a 'substantial likelihood' of standing"' in order to establish its likelihood of success on the merits and secure a preliminary injunction. *Pietrangelo v. Sununu*, 2021 U.S. Dist. LEXIS 65632, *14 (D. N.H.) (citations omitted); *Testerman v. NH Sec'y of State*, 2024 U.S. Dist. LEXIS 173821, *10 (D. N.H.). For the reasons articulated in pages 4 through 10 of the State's December 23, 2025 Memorandum of Law in Support of its Motion to Dismiss (ECF-20-1), attached hereto and incorporated by reference herein, Plaintiff is unable to make this showing.

*B. Plaintiff Fails to State a Cause of Action Upon Which Relief May be Granted.*

A Plaintiff who fails to state any claim upon which relief may granted cannot demonstrate likelihood of success on the merits and is accordingly not entitled to injunctive relief. *Tower*, 2016 U.S. Dist. LEXIS 182947, at *9 (citations omitted). For the reasons articulated in pages 10 through 14 of the State's December 23, 2025 Memorandum of Law in Support of its Motion to Dismiss (ECF-20-1), attached hereto and incorporated by reference herein, Plaintiff is unable to make this showing.

*C. The Court Should Reject Plaintiff's Claims of Extant State Violations of the CAA*

Plaintiff claims that Defendants are "working to terminate" the I/M program by engaging in public outreach to inform vehicle owners that the State will cease enforcing the I/M program after January 31, 2026. ECF-10 at 7. Plaintiff contends that such outreach efforts have caused vehicle inspection numbers to fall. *Id.* Plaintiff also argues that such efforts, together with steps taken by

NHDOS "to wind down Gordon-Darby NHOST's implementation of the I/M program[1]", including terminating the subject contract effective January 31, 2026, evince a "type of failure" to enforce and implement a SIP which is actionable under a CAA citizen suit according to *Sweat v. Hull*, 200 F. Supp. 2d 1162 (D. Ariz. 2001); *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705 (E.D. Penn. 2002); *Citizens for Penn.'s Future v. Mallory*, 2002 U.S. Dist. LEXIS 24406 (E.D. Penn. Dec. 18, 2002); *Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920 (W.D. Ky. 2004). ECF-10 at 11.

The complaints in all of the above cases were not filed until those states had actually ceased implementing and enforcing their I/M programs. *See Sweat*, 200 F. Supp. 2d at 1164 (complaint filed on August 31, 2000 for ongoing violation occurring as of July 17, 2000); *Clean Air Council*, 226 F. Supp. 2d at 707 (complaint filed on January 12, 2001 for ongoing violation occurring as of December 1, 1998); *Citizens for Penn.'s Future*, 2002 U.S. Dist. LEXIS 24406, *3-4 (complaint filed February 15, 2002 for ongoing violation occurring as of October 1, 1997); *Ky. Res. Council, Inc.* 304 F. Supp. 2d at 924-925 (complaint filed on November 17, 2003 for ongoing violation occurring as of November 1, 2003). Thus, none of the cases upon which Plaintiff relies support the proposition that the "type" of agency actions of which Plaintiff complains constitute an extant violation.

Plaintiff's arguments that "NHDOS is already actively encouraging noncompliance" cannot contort otherwise lawful agency action into a CAA violation. ECF-10 at 11[2]. As the attached Declaration of NHDOS Division of Motor Vehicle ("DMV") Director John Marasco explains, NHDOS continues to implement and enforce the I/M program to date. Marasco Decl., ¶ 12. Plaintiff's contentions that NHDOS's outreach regarding the discontinuance of the I/M program constitutes a CAA violation fall short of alleging an actual violation but instead reflect the ordinary and lawful course of agency operations. *See* Marasco Decl., ¶¶ 14-23. While Plaintiff alleges a recent reduction in public participation in the currently required I/M program, such public noncompliance does not demonstrate a failure to

[1] Gordon-Darby NHOST is obligated to wind down its services by the subject contract in any event. Marasco Decl., ¶ 10 and Exhibit 1 thereto, I/M Contract, Section 13.2.2.

[2] This is solely an argument of Gordon-Darby's counsel and is not contained in either Declaration.

enforce the SIP or any other violation thereof by the State. Absent any demonstrated failure to enforce or implement the I/M program, there exists no extant CAA violation.

Rather, the clear driver of the Motion is Plaintiff's desire to prevent the termination of the Contract which would otherwise take effect on January 31, 2026. Plaintiff even argues that the State's "premature termination" of the Contract is a violation of the CAA. ECF-10 at 10-11. However, Plaintiff's contractual exigencies cannot override the requirement for Plaintiff to comply with the 60-day notice requirement of 42 U.S.C. § 7604(b) by waiting until a violation has actually occurred before serving notice and then affording sixty days for the State or for EPA to act before filing suit. As is set forth in more detail at pages 10 through 14 of the State's December 23, 2025 Memorandum of Law in Support of its Motion to Dismiss (ECF-20-1), Plaintiff is not likely to succeed on "pre-violation" CAA claims.

*D. Plaintiff's Contention that Federal Injunctions Can Repeal State Laws Lacks Merit*

Plaintiff relies on *Sweat*, 200 F. Supp. 2d at 1172, and *Ky. Res. Council*, 304 F. Supp. 2d at 926-27, for the proposition that the New Hampshire Legislature's repeal of NHDOS's statutory authority to require vehicle inspections is rendered ineffective by the Supremacy Clause. ECF-10 at 12. Federal preemption of conflicting state law decides which law prevails, but it does not serve to commandeer state sovereignty by repealing state law, as cases decided since *Sweat*, *Ky. Res. Council*, and *Mallory*, 226 F. Supp. 2d 705, make clear.

First, the Supremacy Clause operates as a *non obstante* provision declaring that federal law shall be supreme, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding--" *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 621 (2011) (citing U.S. Const., Art. VI, cl. 2). State law is not actually repealed, only "effectively" and "impliedly" repealed. *Id.* at 621-622. Consequently, "[a] federal injunction does not erase an unconstitutional state law from existence; federal courts cannot repeal state laws." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521-522 (7th Cir. 2021) (citations omitted).

It is one thing to acknowledge that the requirements of an EPA-approved SIP "become[] enforceable as part of the CAA" in federal Court under 42 U.S.C. § 7604(a). *Conservation Law Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 83 (2025) (citation omitted). It is quite another thing to say that this Court has the power to strike down State law and thereby authorize a state agency to implement and enforce a regulatory program where the State legislature has repealed the authority to do so. The former is a matter of settled law, the latter would violate the Tenth Amendment by usurping authority reserved to the State. The requirements of the SIP are indisputably enforceable in this Court, by injunction if properly justified, without any need to attempt to resuscitate repealed legislation. The Court's role in granting an injunction is to provide relief to claimants who have suffered actual harm and not to "shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

II. Plaintiff Fails to Show Irreparable Injury to Itself Absent Preliminary Relief.

The Motion contends that an injunction is warranted to prevent significant harm to Gordon-Darby, the public, and the environment. ECF-10 at 1. As a threshold matter, Gordon-Darby lacks standing to assert the rights of others. *See* ECF-20-1 at 5-6. In addition, Gordon-Darby's contentions of environmental harm are supported by nothing more than the conclusions of two lay witness Declarants, whose testimony must be properly confined to matters of personal knowledge, (Fed. R. Evid. 602) and to limited opinions that are rationally based on the witnesses' perceptions (Fed. R. Evid. 701). *See Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 80 (1st Cir. 1998). As the expert Declaration of NHDES's SIP Administrator Catherine Beahm explains, the SIP amendment pending before EPA is supported by a technical demonstration which shows that the discontinuance of the State's I/M program will not result in harm to the environment, irreparable or otherwise, in New Hampshire or elsewhere. Beahm Decl., ¶¶ 11, 40-52.

Gordon-Darby, in any event, can only assert harm to itself, and the injunctive relief which it seeks "must be tailored to the specific harm to be prevented." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000). The only harm which Gordon-Darby alleges it will suffer are the purely

economic consequences of the State's termination of the Contract with Plaintiff's subsidiary, Gordon-Darby NHOST. Plaintiff contends that the termination of the Contract will result in Gordon-Darby suffering "an estimated loss of $4.1 million *for the remainder of 2026.*" ECF-10 at 12 (emphasis supplied), in addition to impacts to Gordon-Darby's loss of Gordon-Darby's valuation, contracts and opportunities. ECF-10 at 12.[3] However, Gordon-Darby fails to demonstrate that it has a legitimate legal interest in the continuation of the Contract that could sustain a grant of injunctive relief.

Injunctions are a "potent weapon that should be used only when necessary to safeguard a litigant's <u>legitimate</u> interests." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) (emphasis supplied). Gordon-Darby does not allege that the State has any contractual or regulatory duty to retain Gordon-Darby as the State's I/M program vendor. Indeed, the Complaint shows that the Contract was terminated by the State for convenience. ECF-1, Exhibit 3 thereto. Harm to Gordon-Darby (if any) flows not from the State's violation of any regulatory or contractual obligation, but from the commercial risk assumed by Gordon-Darby when its' subsidiary entered into a public contract terminable without cause by the State.

Plaintiff attempts to manufacture a legitimate interest by arguing that NHDOS violated the CAA by its "premature termination of its contract with Gordon-Darby NHOST [which] means there will no longer be a "supplier" as required by NHDOS regulations." EC-10 at 10-11. NHDOS's rules define a "supplier" as "<u>the</u> contracted vendor for the department's automated safety and emissions inspection program." N.H. Admin. Rules, Saf-C 3202.23. However, the rules do not define Gordon-Darby NHOST as "the" supplier. Plaintiff simply assumes that if the State is ordered to implement its I/M program, Gordon-Darby NHOST would be retained as "the" program supplier. Having been haled into Court,

---

[3] The Unzveragt Declaration does not explain how the discontinuance of the I/M program in New Hampshire will cause Gordon-Darby to suffer lost customers and future business and reputational harm. *Id.*, ¶ 33. Unsupported claims as to such losses "are not sufficient to establish irreparable harm." *WE, LLC v. M.R.J. Distribs., Inc.*, 2025 U.S. Dist. LEXIS 214523, *15-16 (D. Puerto Rico 2025). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II,* 370 F.3d at 162 (citations omitted).

however, the State may not want to rehire Gordon-Darby NHOST, who was the selected bidder over three other vendors for the Contract. Marasco Decl., ¶ 5. "[A]rtful pleading cannot not transform ordinary harm into the basis for an injunction." *Together Emps.*, 32 F.4th at 86. Gordon-Darby lacks any legitimate legal interest warranting this Court to force the State (contrary to the State's contract rights and procurement laws) to reinstate the Contract.

In addition, Plaintiff fails to demonstrate the requested relief will remedy the claimed harm. Preliminary injunctions serve to preserve "the court's ability to render a meaningful decision on the merits . . ." and prevent the judicial process from being "rendered futile." *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). A court "should refrain from issuing a preliminary injunction where it would be ineffective to prevent the damage which it seeks to prevent." *Mt. Grace Regional Transport Corp. v. Franklin Regional Transit Auth.*, 1982 U.S. Dist. LEXIS 12945, *17 (D. Mass. 1982). Here, there is nothing to prevent the State, even under an order of this Court to enforce and implement the I/M program, from simply replacing Gordon-Darby as its vendor. In fact, the Unverzagt Declaration acknowledges that the State may select another vendor if the I/M program is not discontinued. ECF ¶ 59.

Similarly, the traditional economic harm claimed by Plaintiff – alleged damages from termination of the Contract – (to the extent it exists under contract law) can be remedied by compensatory awards and is consequently not irreparable. *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009). Plaintiff seeks to invoke the exception to this rule by arguing that "the potential economic loss is so great as to threaten" its existence. ECF-10-1 at 13, citing *Vaqueria Tres Monjitas*, 587 F.3d at 485. Plaintiff does not, however, contend that the alleged economic harm is so great as to threaten its existence, and instead contends that the discontinuance of the I/M program "will eliminate the sole source of business for Gordon-Darby's subsidiary," Gordon-Darby NHOST. ECF-10-1 at 12. Having incorporated a subsidiary whose sole business purpose was to implement the New Hampshire I/M program, Gordon-Darby cannot equate the elimination of such a sole-purpose subsidiary to the elimination of itself as the parent corporation,

whose client list includes several states which are much larger than New Hampshire. *See* Marasco Decl., ¶ 11.[4]

Regardless, with the subsidiary entering into a public contract which was terminable (and terminated) for convenience, it is entirely unclear what unlawful harm an injunction would be required to prevent, but any compensable economic loss would be recoverable by an action at law. The availability of such adequate legal remedies precludes a finding by this Court that Plaintiff will suffer irreparable harm in the absence of an injunction. *Together Emps.*, 32 F.4th at 85.

Finally, the CAA includes numerous and adequate legal remedies for an alleged failure of a state to enforce its SIP. *See, e.g.*, 42 U.S.C. §§ 7413(a)(2) (EPA enforcement) 7410(k)(5), 7410(m) (compliance schedule pending imposition of a federal SIP or "FIP") 7509(a) (withholding grants), 7509(b) (sanctions). All such remedies include a timeline (up to 18 months) for a state to come into compliance. It is thus unsurprising that none of the cases relied upon by Plaintiff support the proposition that an alleged failure to enforce the I/M program contained in a SIP warrants the drastic remedy of a preliminary injunction. The District Court in *Ky. Res. Council, Inc.* granted a nonfinal order following a hearing held subsequent to plaintiff's request for an preliminary injunction. That order was issued only "to the extent that the District ha[d] violated the Clean Air Act" by its discontinuance of a required I/M program after EPA had already rejected a SIP amendment to discontinue the program. 304 F. Supp. 2d at 925, 933. The court stayed its imposition "of the precise and final" equitable remedy pending the review of subsequent filings and a hearing "concerning the exact scope and timetable for the injunctive relief." *Id.* at 934. *See also Citizens for Penn.'s Future v. Mallory*, 2002 U.S. Dist. LEXIS 24406, *36. Plaintiff's requested precipitous relief is not driven by the CAA, but by its contract. Any harm plaintiff may allege cannot be considered irreparable.

---

[4] According to its website, Gordon-Darby's current partners include, in addition to the State, the Arizona Department of Environmental Quality, the Texas Commission on Environmental Quality, the Texas Parks and Wildlife Department, the Nevada Department of Wildlife, and the New York State Department of Environmental Conservation. Marasco Decl., ¶ 11..

An injunction "must be tailored to the specific harm to be prevented." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000). This is particularly so where a plaintiff seeks to enjoin state officials on constitutional grounds, in which case the injunction must (a) directly address and relate to the constitutional violation itself, and (b) must not require more than is necessary of state actors to assure their compliance with the constitution. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (citations omitted). Because the alleged irreparable harm to Gordon-Darby arises from commercial risk assumed by Plaintiff's subsidiary and cannot be restrained by a judicial order to comply with the CAA, Gordon-Darby is unable to meet its burden to demonstrate that "a denial of interim relief is likely to cause irreparable harm . . ." *Charlesbank Equity Fund II*, 370 F.3d at 162.

III. <u>The Public Interest and the Balance of the Equities Militate Against a Preliminary Injunction.</u>

"When, as here, the defendants are government entities or officials sued in their official capacities, the balance of equities and public interest factors merge." *Nat'l Educ. Ass'n-New Hampshire v. NH AG*, 2025 U.S. Dist. LEXIS 195238, *6 (D. N.H. 2025), citing *Doe 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021). Balancing the equities requires the Court to weigh the respective impositions upon the movant if no injunction issues and on the nonmovant if the relief is granted. *Esso Std. Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) (citations omitted). Courts should pay particular regard to "the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Plaintiff summarily concludes that "the balance of the equities and the public interest also support the requested relief, which asks that Defendants continue carrying out their current obligations under an I/M program . . ." ECF-10 at 1-2. Should the Court deny the injunction, Plaintiff will simply be left with such legitimate rights as it may have, along with the knowingly assumed consequences of entering into a public contract which was terminable at will upon notice. Since there is no legal harm to Gordon-Darby, the equities do not shift in its favor one iota. The balance of the equities favors holding Gordon-Darby to the obligations it assumed under the Contract and preserving the State's rights thereunder. *See Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.*, 595 F. Supp. 497, 501 (N.D. Tx 1984). Requiring a party to perform its contract duties does not impose any hardship in the context of a preliminary injunction.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 612 F. Supp. 3d 563, 598 (E.D. Va. 2020). Even if there were legal harm to Gordon-Darby (which there is not), contentions of lost profits "merit[] little equitable consideration." *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988).

The harm to the State's sovereign rights to lawfully terminate a public contract for convenience, however, are of constitutional dimensions, as would be the harm from this Court further commandeering State sovereignty in derogation of the 10th Amendment to declare repealed State law reenacted. Plaintiff cannot identify any right derived from contract or federal law or other legitimate interest against which the Court could balance the State's interests in sovereignty and its rights to terminate the subject public contract. Conseuqently, the balance of the equities weighs heavily in the State's favor, and merges with the public interest underlying such state interests.

**CONCLUSION**

In the light of all the foregoing, the Court should dismiss the Complaint with prejudice and deny the Motion as moot.

Respectfully submitted,

ROBERT L. QUINN, COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF SAFETY
*in his official capacity*

ROBERT R. SCOTT,
COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF
ENVIRONMENTAL SERVICES
*in his official capacity*

By and through their counsel

JOHN M. FORMELLA
ATTORNEY GENERAL

December 30, 2025

/s/ Mark L. Lucas
Mark L. Lucas, Bar #274692
Joshua C. Harrison, Bar #269564
Assistant Attorneys General
Environmental Protection Bureau

Office of the Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

/s/ Mark L. Lucas
Mark L. Lucas, Bar #274692