IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| GORDON-DARBY HOLDINGS, INC.<br><br>Plaintiff,<br><br>v.<br><br>ROBERT L. QUINN, COMMISSIONER NEW HAMPSHIRE DEPARTMENT OF SAFETY; AND ROBERT R. SCOTT, COMMISSIONER NEW HAMPSHIRE DEPARTMENT OF ENVIRONMENTAL SERVICES<br><br>Defendants. | ) | Civil No. 1:25-CV-00508-LM-AJ |

**DECLARATION OF NHDES SIP ADMINISTRATOR CATHERINE A. BEAHM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Catherine A. Beahm, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my duties, hereby make the following declaration:

1. I am the State Implementation Plan ("SIP") Administrator for the State of New Hampshire Department of Environmental Services ("NHDES") Air Resources Division ("ARD"). In that capacity, my duties include management of rulemaking pursuant to Revised Statutes Annotated ("RSA") 541-A and SIP development pursuant to the Clean Air Act ("CAA") in partnership with the Atmospheric Science and Analysis group within NHDES/ARD.

2. I graduated from the University of Maine with a B.S. in Chemical Engineering in 1991. I have served as the NHDES SIP Administrator since February 15, 2019. My duties in this role include management of the rulemaking and SIP development program. This entails tracking federal and state legislation which impacts New Hampshire's SIP and revising the SIP when

necessary, reviewing and periodically updating state air rules to comply with federal and state legislation, submitting necessary documentation to the Environmental Protection Agency ("EPA") regarding new or revised National Ambient Air Quality Standards ("NAAQS"), developing and incorporating state plans into the SIP after EPA promulgates new emission guidelines for air sources in New Hampshire, and implementing delegated federal regulatory requirements applicable to air sources in New Hampshire.

3. I was the project manager responsible for the development, submittal and successful approval by EPA of the 2024 vehicle inspection and maintenance ("I/M") SIP, 2022 NH Regional Haze Plan Periodic Comprehensive Revision for the Second Implementation Period (2018-2028), the 2021 Limited Maintenance Plan for the Southeast New Hampshire Area for the 1997 ozone NAAQS, and countless NHDES/ARD administrative rule updates and submittals to EPA for approval into the State's SIP.

4. Prior to my promotion to the position of SIP Administrator, I was also involved in the development of emission reduction strategies associated with the Reasonably Available Control Technology ("RACT") Certification SIP revision for the 2008 and 2015 8-hr ozone NAAQS.

5. My curriculum vitae, which fairly and accurately reflects my education, training and experience, is attached as **Exhibit 1** hereto.

6. I was the principal author and am the project manager for NHDES's SIP revision pertaining to the repeal of the vehicle I/M program and the CAA Section 176A Petition to remove the State of New Hampshire from the Ozone Transport Region ("OTR"), both of which were submitted to the EPA on December 24, 2025.

## I: Introduction

7. I submit this Declaration in response to the contentions and Declarations offered by the Plaintiff to argue that irreparable harm to the environment and non-vehicle air pollution sources and other regulated sectors as a result of repeal of the vehicle I/M program will occur unless the Court orders the continued implementation of New Hampshire's I/M program after January 31, 2026.

8. The December 9, 2025 Declaration of Joel Unverzagt (who does not identify himself as a scientist) contends that the elimination of the I/M program will cause "negative impacts on the environment." Unverzagt Decl., ¶ 1.

9. The December 8, 2025 Declaration of Daniel W. Bennett, contends that "Without an I/M program, New Hampshire will offer the path of least resistance in New England to offload these vehicles, creating a marketplace where vehicles with disabled, tampered, or malfunctioning systems can be easily transferred, sold, and registered. The result will be a structural increase in the number of unsafe and higher-emitting vehicles entering New Hampshire." Bennett Decl.,¶ 12

10. Mr. Bennett (who likewise does not identify himself as a scientist) also contends that "If mobile source emissions spike due to an influx of high-emitting vehicles and the deterioration of emissions control systems, other regulated sectors-including power plants, industrial manufacturers, trucking companies, fuel distributors, and large commercial operators-may be expected to compensate for that shortfall in the form of additional emission limitations imposed under New Hampshire's state implementation plan. The regulated utilities and other companies may be required to adopt more aggressive emission controls and will likely pass some

portion of their compliance costs on to ratepayers and customers in the form of higher prices." Bennett Decl., ¶ 14.

11. The arguments offered by Mr. Bennett and Mr. Unzverzagt that the discontinuance of the I/M program will impact the environment and other regulated (non-vehicle) sector and sources of air pollution are incorrect and unsupported, as the technical regulatory analyses conducted by NHDES and submitted to EPA in connection with NHDES's pending SIP revision and CAA Section 176A Petition (discussed below) illustrate.

12. My opinion herein is based upon the facts and data supporting those NHDES submittals, as well as my education, training and experience.

13. My involvement with the NHDES submittals has included acting as the project manager and principal author, and collaborator with NHDES, ARD staff and EPA in the development of a robust technical analysis for both the SIP revision and CAA Section 176A Petition, review of historical SIP commitments New Hampshire has made to reach attainment for $O_3$ and CO NAAQS, and coordination with Atmospheric Science and Analysis staff on the trajectory analysis, modeling, and emission estimates performed and analyzed for both documents.

14. In my supervisory capacity as NHDES SIP Administrator, my opinion is based upon facts or data that I have been made aware of and upon which air quality scientists and similarly situated SIP Administrators in other states routinely and reasonably rely in making regulatory decisions under the CAA. NHDES's SIP revision, CAA Section 176A Petition and my opinion herein are based on sufficient data and are the product of reliable principles and methods which are requisite for a State to propose, and EPA to approve, both submittals. Such principles and methods support both submittals and establish that the contentions of Mr. Unverzagt and Mr.

Bennett regarding the environmental and regulatory effects of the State's elimination of the vehicle I/M program are incorrect.

**II: Regulatory Framework and History of New Hampshire's I/M Program**

15. Under the CAA, EPA has established NAAQS for the following criteria pollutants: ozone ("$O_3$"), carbon monoxide ("CO"), nitrogen dioxide ("$NO_2$"), fine and coarse particulate matter ("$PM_{2.5}$" and "$PM_{10}$"), sulfur dioxide ("$SO_2$"), and lead ("Pb"). 42 U.S.C. § 7409(a)

16. Areas that violate a NAAQS are designated as "nonattainment" by EPA. Each State that has been designated as nonattainment must submit an attainment plan to be incorporated into the State's SIP that outlines the manner in which NAAQS will be achieved and maintained by the attainment date established by law.

17. Section 172(c) of the CAA outlines the necessary elements that must be included in an attainment plan submitted by the State to EPA for approval. 42 U.S.C. § 7502(c). In addition, Section 182 and Section 187 of the CAA outline specific SIP requirements for $O_3$ and CO nonattainment areas, respectively. 42 U.S.C. §§ 7511a and 7512a.

18. The CAA requires vehicle I/M programs in many population centers and areas that have experienced a history of high concentrations of $O_3$ or CO. Section 182(c)(3) of the CAA mandates enhanced vehicle I/M in areas designated as serious for $O_3$ nonattainment with a 1980 population of 200,000 or more. 42 U.S.C. § 7511b(c)(30. Under the 1979 1-hour $O_3$ NAAQS, the New Hampshire portion of the Boston-Lawrence-Worcester area and the Portsmouth-Dover-Rochester area were designated serious nonattainment. In addition, parts of Hillsborough and Rockingham counties in New Hampshire were included in the Boston-

Lawrence-Salem Consolidated Metropolitan Statistical Area ("MSA"). Therefore, enhanced vehicle I/M was required in southern New Hampshire.

19. As part of Section 182(b)(4) and Section 187(a)(4) of the CAA, areas designated as moderate nonattainment or higher for $O_3$ and CO are required to implement a vehicle I/M program. 42 U.S.C. §§ 7511a(b)(4) and 7512a(a)(4). Under the 1997 8-hour $O_3$ NAAQS, the New Hampshire portion of the Boston-Manchester-Portsmouth area was designated moderate nonattainment of $O_3$.

20. In addition to and notwithstanding the preceding paragraphs, Section 184(b) of the CAA also mandates enhanced vehicle I/M consistent with CAA Section 182(c)(3) in each MSA within the OTR with a 1990 population of 100,000 or more, regardless of air quality status. 42 U.S.C. § 7511c(b). The Portsmouth-Dover-Rochester MSA (part of Rockingham County and most of Strafford County) and the Manchester MSA (parts of Hillsborough and Rockingham counties, and two towns in Merrimack County), each had 1990 populations of more than 100,000, and New Hampshire is a member of the OTR, therefore these areas were required to have enhanced vehicle I/M because they fell under this criterion.

21. The specific requirements of a vehicle I/M program were established in the Code of Federal Regulations ("CFR") under Title 40 CFR Part 51, Subpart S, *Inspection/Maintenance Program Requirements* which was initially issued November 5, 1992. The rule stated that counties, which are at least in part within an MSA that is mandated to have enhanced vehicle I/M, must be in the program in their entirety. An exemption is provided if the 1990 population density of the county is less than 200 persons per square mile and over 50 percent of the MSA is in another county which is covered by the vehicle I/M program. Based on these criteria, Merrimack County was exempted from the requirement.

22. On February 28, 1994, April 19, 1994, and April 21, 1994, New Hampshire submitted SIP revisions pertaining to a vehicle I/M program for the three nonattainment areas established under the 1979 1-hour $O_3$ NAAQS. EPA conditionally approved the SIP revisions on July 18, 1994. On August 18, 1994, New Hampshire submitted a SIP revision to fulfill the requirements for an enhanced vehicle I/M program for Hillsborough, Merrimack, Rockingham and Strafford counties as required by Section 182(c)(3) and Section 184(b) of the CAA and to address the conditional approval. Under 40 CFR 51.350(b)(1), portions of Merrimack County were not required to implement vehicle I/M programs. However, all of Merrimack County was included in the enhanced vehicle I/M program to provide an opportunity to generate enforceable emission reductions that could be used for future economic growth. EPA conditionally approved the SIP revision on October 12, 1994. EPA's conditional approval was scheduled to expire on July 29, 1995.

23. On June 14, 1995, New Hampshire submitted a letter to EPA requesting an extension of the conditional approval until November 14, 1995. New Hampshire noted in the letter that as provided in Section 110(k)(4) of the CAA, conditional approval may be made effective for the full one-year period and EPA was working on regulatory changes to provide more flexibility for vehicle I/M programs. 42 U.S.C. § 7410(k)(4). EPA approved the extension on September 12, 1995.

24. On June 6, 1997, EPA issued a letter to New Hampshire for failure to implement an enhanced vehicle I/M program in Hillsborough, Rockingham, and Strafford counties. Pursuant to Section 179 of the CAA (42 U.S.C. § 7509), the June 6, 1997 letter started an 18-month sanctions clock in New Hampshire that could have led to economic development constraints and withholding of federal highway funding.

25. On September 4, 1998, New Hampshire submitted a SIP revision pertaining to the state's vehicle I/M program. The submittal included New Hampshire Code of Administrative Rules, Part Saf-C 3220, *Official Motor Vehicle Inspection Requirements,* which required an Enhanced Safety Inspection ("ESI") program, Part Saf-C 5800, *Roadside Diesel Opacity Inspection* which required an on-road diesel opacity testing program, Part Env-A 3200, *NOx Budget Trading Program,* which made enforceable NOx emission reductions from the utility sector, a commitment to implement on-board diagnostics ("OBD II") in lieu of the ESI program at a future date, and a pilot program to examine oxygen sensor failures. The ESI program was an enhancement to the existing New Hampshire Safety Inspection Program and included visual checks for proper connection of emissions control components on model year 1980 and newer vehicles. The on-road diesel opacity testing program was an opacity testing program focused on heavy duty trucks. The NOx reductions from the utility sector were a reduction of at least 500 tons per year of which 100 tons per year were required to occur during the ozone season. The SIP submittal required implementation of the vehicle I/M program for the entire State of New Hampshire beginning on January 1, 1999.

26. During the 1998-1999 transition period from the 1979 1-hour $O_3$ NAAQS to the 1997 8-hour $O_3$ NAAQS, EPA issued final rules for many areas that were attaining the 1979 1-hour $O_3$ NAAQS, finding that the 1979 1-hour $O_3$ NAAQS no longer applied to these areas. While EPA later rescinded this action on July 20, 2000, it is important to note this in the context of EPA's review of the 1998 SIP revision pertaining to New Hampshire's vehicle I/M program. On November 20, 1998, New Hampshire submitted a letter regarding OTR requirements and revocation of the 1979 1-hour $O_3$ NAAQS. In the letter, New Hampshire noted that the state was now in attainment with the 1979 1-hour $O_3$ NAAQS and was not contributing significantly to

areas elsewhere in the OTR, but instead of removing the state from the OTR given pending designation for the 1997 8-hour $O_3$ NAAQS, New Hampshire requested flexibility regarding the vehicle I/M program requirements. In the context of the attainment status of New Hampshire during this time period, EPA approved the 1998 SIP revision pertaining to the vehicle I/M program as a SIP strengthening measure revision on January 10, 2001.

27. On November 17, 2011, New Hampshire submitted a SIP revision, which included a robust decentralized vehicle I/M program consisting of a test and repair network including OBD II testing of model year 1996 and newer vehicles and an anti-tampering program on vehicles up to 20 years old that were not subject to an OBD II inspection. The SIP revision addressed all of the enhanced vehicle I/M requirements contained in 40 CFR Part 51, Subpart S. EPA determined that the emissions modeling, SIP narrative, and other technical documentation submitted by New Hampshire met the requirements of 40 CFR Part 51, Subpart S and EPA approved this revision into the New Hampshire SIP on January 25, 2013.

28. On June 30, 2025, HB2 was signed into law. Specifically related to the vehicle I/M program and the requirement to submit a SIP revision, HB2 mandated the repeal of portions of RSA Chapter 260 *Administration of Motor Vehicle Laws*, RSA Chapter 266 *Equipment of Vehicles*, and RSA Chapter 125-S *Motor Vehicle Air Pollution Abatement Fund*. HB2 required NHDES to submit a revision of the SIP to alter the emissions testing program consistent with the provisions of HB2 to the EPA for approval as soon as practicable, but no later than 180 days from June 30, 2025.

29. Part Saf-C 5800, *Roadside Diesel Opacity Inspection* which requires an on-road diesel opacity testing program and Part Env-A 3200, *NOx Budget Trading Program* which

mandates enforceable NOx emission reductions from the utility sector were not repealed as a result of HB2.

**III: NHDES SIP Revision to Discontinue the I/M Program and Supporting CAA Section 176A Petition Which Were Submitted to EPA on December 24, 2025**

30. In order to revise the SIP, NHDES is required to submit a noninterference demonstration pursuant to CAA Section 110(l), which states: "Each revision to an implementation plan submitted by a State under this chapter shall be adopted by such State after reasonable notice and public hearing. The Administrator shall not approve a revision of a plan if the revision would interfere with any applicable requirement concerning attainment and reasonable further progress (as defined in Section 171 of this title), or any other applicable requirement of this Act." 42 U.S.C. 7410(l).

31. Currently, all of New Hampshire, parts of Maine and ten other states along with the District of Columbia comprise the OTR. As noted above, Section 184(b) of the CAA mandates enhanced vehicle I/M consistent with CAA Section 182(c)(3) within the OTR regardless of air quality status. Therefore, in addition to the SIP revision, the State of New Hampshire must submit a CAA Section 176A Petition requesting that the EPA remove the entire State of New Hampshire from the OTR.

32. Section 176A(a) of the CAA states: "Whenever, on the Administrator's own motion or by petition from the Governor of any State, the Administrator has reason to believe that the interstate transport of air pollutants from one or more States contributes significantly to a violation of a national ambient air quality standard in one or more other States, the Administrator may establish, by rule, a transport region for such pollutant that includes such States. The Administrator, on the Administrator's own motion or upon petition from the Governor of any

State, or upon the recommendation of a transport commission established under subsection (b) of this section, may:

a. Add any State or portion of a State to any region established under this subsection whenever the Administrator has reason to believe that the interstate transport of air pollutants from such State significantly contributes to a violation of the standard in the transport region, or

b. Remove any State or portion of a State from the region whenever the Administrator has reason to believe that the control of emissions in that State or portion of the State pursuant to this section will not significantly contribute to the attainment of the standard in any area in the region."

42 U.S.C. § 7506(a).

33. NHDES drafted Technical Analysis Protocols for the CAA Section 110(l) demonstration and the CAA Section 176A Petition based on weekly discussions with EPA. NHDES sent the Technical Analysis Protocol for CAA Section 110(l) to EPA on August 18, 2025, and received verbal comments from EPA on the approach during weekly meetings. NHDES sent the Technical Analysis Protocol for the CAA Section 176A Petition to EPA on July 24, 2025, and received written comments from EPA on August 11, 2025.

34. On September 22, 2025, NHDES submitted a draft SIP revision pertaining to the vehicle I/M program and a draft CAA Section 176A Petition to EPA for their preliminary review and comment.

35. On September 25, 2025, NHDES sent Motor Vehicle Emission Simulator version 5 ("MOVES5") input files to EPA for their review.

36. EPA responded to NHDES with comments on the draft SIP revision and draft CAA Section 176A Petition documents on October 3, 2025.

37. NHDES presented information regarding the draft CAA Section 176A Petition at the Ozone Transport Commission & Mid-Atlantic/Northeast Visibility Union (OTC & MANE-VU) Air Directors Fall 2025 Virtual Meeting on Wednesday, October 15, 2025, to receive feedback. NHDES answered a few minor questions during the meeting but did not receive any additional feedback.

38. NHDES conducted a hybrid public hearing on the draft SIP revision and draft CAA Section 176A Petition via Microsoft Teams and in person on Monday, November 17, 2025. The public comment period remained open until Friday, November 21, 2025, to allow the submittal of written comments.

39. NHDES compiled a summary of comments and responses which is included along with the original comments as part of the SIP revision and CAA Section 176A Petition.

40. NHDES submitted the SIP revision requesting that the EPA revise the New Hampshire SIP to remove the motor vehicle I/M program and the CAA Section 176A Petition to remove the entire State from the OTR to the EPA on December 24, 2025. SIP at 1.

41. NHDES expects EPA to approve both the SIP revision and CAA Section 176A Petition based on the conclusions reached as a result of the robust technical analysis contained in both documents.

42. In the SIP revision, New Hampshire concluded that the repeal of New Hampshire's vehicle I/M program will not interfere with New Hampshire's ability to be in attainment or maintain attainment of the NAAQS for $O_3$ and CO based on current monitored $O_3$ and CO design values and evaluation of multisector emissions data. In addition, New Hampshire

committed in the SIP revision to retaining all other control measures, besides the vehicle I/M program, that are contained in the New Hampshire SIP and which allowed the State of New Hampshire to come into attainment with the $O_3$ and CO NAAQS.

43. In the CAA Section 176A Petition, New Hampshire concluded that the removal of the State of New Hampshire from the OTR will not degrade the air quality in New Hampshire or in any other state. New Hampshire has been and continues to be in attainment with the NAAQS for $O_3$ throughout the State, and NOx and VOC emissions (precursors to $O_3$) from New Hampshire sources do not significantly contribute to the $O_3$ attainment status of any part of the OTR.

44. Mr. Bennett's conjecture that other regulated sectors and sources of air pollution would be subject to additional emission restrictions to make up for the "shortfall" if the I/M program is discontinued (Bennett Decl., ¶ 14), is accordingly incorrect. Reliable science convincingly shows that there will be no air quality "shortfall" for other sources and sectors to offset with increased emission controls.

45. As noted, the SIP revision shows that (a) the repeal of New Hampshire's vehicle I/M program will not interfere with attainment or maintenance of the NAAQS for $O_3$ and CO; (b) current monitored $O_3$ and CO design values are below the corresponding NAAQS and have trended downward since the CAA Amendments of 1990; and (c) evaluation of overall estimated NOx, VOC, and CO emissions from New Hampshire point, area, non-road, and on-road sectors are expected to decrease by 16 percent for NOx, 2.7 percent for VOC and 1.9 percent for CO. The emission data included in this analysis came from the National Emissions Collaborative's 2022v1 Emissions Modeling Platform ("EMP") with updated EPA's MOVES5 results for the on-road sector (i.e. vehicles) comparing 2022 emission estimates with the implementation of New

Hampshire's vehicle I/M program to 2026 projected year emissions without the implementation of New Hampshire's vehicle I/M program.

46. Specifically related to estimated emissions from the on-road sector, the results of this analysis showed that estimated NOx, VOC, and CO emissions are expected to decrease by 20 percent for NOx, 10.9 percent for VOC, and 6.5 percent for CO from the on-road sector alone.

47. In the CAA Section 176A Petition, New Hampshire provided conclusive proof that New Hampshire's NOx and VOC emissions are insignificant contributors to nonattainment of the $O_3$ NAAQS in any portion of the OTR. New Hampshire's technical demonstration includes the following:

a. NHDES' trajectory analysis which illustrates New Hampshire's emissions are insignificant contributors to $O_3$ transport in any nonattainment areas within the OTR. Thus, emissions in New Hampshire do not adversely impact $O_3$ air quality in any region of the OTR currently in violation of the $O_3$ NAAQS.

b. EPA and OTC source contribution modeling results for both the 2008 and 2015 $O_3$ NAAQS which demonstrate that New Hampshire's contribution to $O_3$ NAAQS violations in states in the OTR with $O_3$ nonattainment is less than 1 percent of the NAAQS.

c. An analysis of New Hampshire's NOx and VOC emissions that demonstrates that statewide NOx and VOC emissions in 2038 are forecasted to decline by about 45 percent and 7 percent, respectively, from 2022 levels.

d. Removal of New Hampshire from the OTR and the elimination of its motor vehicle I/M program will not interfere with attainment and maintenance of the

ozone NAAQS or any other applicable requirement of the CAA. The continuation of NOx and VOC reduction programs on a statewide basis as a SIP strengthening measure will help to guarantee the continued maintenance of ozone air quality throughout the State while providing ancillary benefits addressing a variety of air quality concerns, including regional haze, fine particulates, hazardous air pollutants, eutrophication and acid deposition. Finally, New Hampshire's Limited Maintenance Plan for the former Boston-Manchester-Portsmouth (Southeast New Hampshire Area) Ozone Nonattainment Area will ensure that ozone air quality throughout the State is reassessed on a periodic basis and that NHDES will swiftly address any violations of the ozone NAAQS, should they occur.

48. New Hampshire has demonstrated that NOx, VOC, and CO emissions will continue to decline even after the repeal of the vehicle I/M program and therefore, will not result in the requirement to implement additional emission reductions. New Hampshire committed as part of the vehicle I/M SIP revision to retain all other control measures, besides the vehicle I/M program which allowed the State of New Hampshire to come into attainment with the $O_3$ and CO NAAQS. In addition, NHDES maintains a robust and comprehensive air monitoring network to evaluate whether air pollutant levels meet the NAAQS. The CAA and commitments made in the NH SIP provide for air quality monitoring, assessment, and regulatory action (subject to a public process) in the event of statistically significant negative air quality trends.

49. Mr. Unverzagt's contention that historical data over the life of New Hampshire's I/M program show that 9 percent of OBD eligible vehicles failed the emissions test and needed repair . . ." (Unverzagt Decl., ¶ 45) is also incorrect.

50. NHDES has further reviewed the percentage of OBD eligible vehicles failing an initial OBD II test for the period 2006 through 2024. Over that time period, the average failure rate was 7.4 percent. Over the last 10 years that rate has fallen to 6.2 percent and over the last 5 years, the average failure rate has dropped to 5.3 percent. This information indicates that vehicle owners maintain their vehicles at increasing rates, not decreasing.

51. Mr. Bennett's contention that discontinuance of the I/M program will result in an influx of vehicles with "disabled or tampered" emission systems (Bennett Decl., ¶ 12) overlooks the CAA's prohibition against disabling or tampering with emission control equipment. Section 203(a)(3)(B) of the CAA makes it a violation for "any person to manufacture or sell, or offer to sell, or install, any part or component (i.e., "defeat device") intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under Title II of the CAA, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." 42 U.S.C. § 7522(a)(3)(B). Also, Section 203(a)(3)(A) of the CAA prohibits "any person from knowingly removing or rendering inoperative any such emissions control device or element of design." 42 U.S.C. § 7522(a)(3)(A). Repeal of the vehicle I/M program does not repeal the federal CAA requirements. Therefore, vehicles with disabled, tampered, or malfunctioning systems cannot be more easily transferred, sold, and registered in New Hampshire after the repeal of the vehicle I/M program.

52. In the light of all the foregoing, I therefore disagree with any contentions that the State's repeal of the I/M program through the SIP revision will result in negative environmental impacts or result in widespread tampering or increase in high-emitting vehicles.

**IV: Conclusion**

In conclusion, the repeal of the I/M program through the submittal and expected approval by EPA of the SIP revision and CAA Section 176A Petition will not result in harm to the environment, irreparable or otherwise, in State or elsewhere. The technical analysis supporting both documents demonstrates that New Hampshire will continue to attain both the $O_3$ and CO NAAQS. This analysis contained a robust technical analysis that was developed in consultation with EPA under the requirements of the CAA. New Hampshire committed in the vehicle I/M SIP revision to retain all other control measures, besides the vehicle I/M program which allowed the State of New Hampshire to come into attainment with the ozone and CO NAAQS. No additional regulatory measures will be required of other regulated entities. NHDES maintains a comprehensive air quality monitoring network and New Hampshire has committed to the consideration and, if warranted, implementation of emissions reduction contingency measures should a measured violation of the NAAQS occur. I hold my opinions expressed herein to a reasonable degree of scientific certainty.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 29, 2025.

Catherine A Beahm

Catherine A. Beahm

# EXHIBIT 1

# CATHERINE BEAHM


## CONTACT

NHDES, Air Resources Division
29 Hazen Drive, P.O. Box 95
Concord, NH 03301

(603) 271-6793

catherine.a.beahm@des.nh.gov


## EDUCATION

May 1991
University of Maine – Orono, ME
Bachelor of Science – Chemical Engineering

## SKILLS

- Implementation of Clean Air Act and NH air regulations
- Expertise in state implementation plan and rule development
- Extensive background in air permitting and compliance
- Air Resources Division's operating and capital budgets
- Right-to-Know requests
- Special focus on PFAS air emission sources including deposition modeling, stack testing, and control equipment

## REWARDS AND RECOGNITIONS

- NHDES Employee of the Year (2025)
- David S. Chase Memorial Award for Extraordinary Achievement in Science (2018)

Dedicated environmental and chemical engineer seeking a dynamic role that leverages expertise in air quality, process improvement practices, and innovative solutions to drive efficient operation and regulatory implementation. Committed to advancing a career through opportunities that challenge analytical skills and foster professional growth. Adept at collaborating with cross-functional teams to improve outcomes.

## WORK HISTORY

February 2019 - Current
**State Implementation Plan Administrator** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH

- Facilitated compliance by preparing documentation for revised National Ambient Air Quality Standards.
- Coordinated revisions of state implementation plans and regulations effectively.
- Maintained updated EPA delegation for relevant federal environmental regulations.
- Implemented key SIP actions, including 2025 repeal of motor vehicle inspection and maintenance program via SIP revision and 176A petition for NH to leave Ozone Transport Region.
- Led comprehensive revisions for New Hampshire's Regional Haze Plan and Limited Maintenance Plan for the 1997 ozone National Ambient Air Quality Standards (NAAQS).

March 2016 - February 2019
**Air Permit Programs Manager** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH

- Achieved timely permit issuance by coordinating Title V and state permit programs.
- Established strategic goals to direct air permitting staff effectively.
- Enhanced operational efficiency through comprehensive policy and procedure development.
- Collaborated to formulate effective rules, state plans, and SIP revisions including RACT Certification for 2008 and 2015 ozone NAAQS.
- Acted as PFAS Liaison for NHDES PFAS Team in Air Resources Division.
- Managed PFAS air issues as primary contact for Saint-Gobain Performance Plastics, Merrimack, NH.

June 2010 - February 2016
**Technical Assistance Specialist** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH

- Evaluated applications and issued state and Title V permits.
- Provided critical comments on federal regulations and their effects for NH sources.

## REWARDS AND RECOGNITIONS (continued)

- US EPA Environmental Merit Award Recipient – NHDES PFAS Coordination Team (2018)
- NHDES Above and Beyond Award – Southern NH PFOA Investigation Team (2016)
- NHDES Excellence in Customer Service Award (2011)

## PROFESSIONAL DEVELOPMENT COURSES AND WORKSHOPS

- NH Certified Public Manager (2018)
- NH Certified Public Supervisor (2017)
- U.S. EPA, Region I Air Toxic Workshop (2011, 2014 - 2020)
- CIBO Industrial Emissions Control Technology Conferences & Natural Gas Conversion Workshops (2011-2018)
- Toastmaster's Speechcraft Workshop Graduate (2011)
- LEAN Process Improvement Workshop (2010)

## WORK EXPERIENCE PRIOR TO ENVIRONMENTAL WORK

- December 1992 - August 1993
  Process Engineer
  James River Corporation, Old Town, ME
- June 1991 - November 1992
  Process Engineer
  Champion International Corporation, Norway, MI
- August 1989 - January 1990 and
  May 1990 - August 1990
  Co-Op Student
  S.D. Warren Research, A Subsidiary of Scott Paper Company, Westbrook, ME

- Led rulemaking for new permit types and revised application forms to enhance permitting strategies.
- Developed and implemented new and revised regulations and provided comprehensive outreach and educational materials.
- Facilitated database and online permitting system design, ensuring operational efficiency.
- Supervised interns, assigning tasks and assessing their performance.

April 2009 - May 2010
**Air Pollution Control Engineer** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH
- Enhanced air quality by issuing state and Title V permits.
- Evaluated applications for permitting applicability, calculated emissions accurately, prepared referrals for air dispersion modeling.
- Conducted site visits to assess permitting applicability and provide assistance.

July 2001 - January 2002
**Air Pollution Control Engineer** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH
- Reviewed permitted source's environmental reports to determine compliance with all state and federal air quality requirements.

June 1996 - September 1999
**State Permitting Coordinator** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH
- Enhanced state permitting program by developing goals, evaluating outcomes, and supervising staff.
- Established rule applicability and compliance policies, streamlining permit review and issuance.
- Assigned applications and reviewed draft permits, improving application processing efficiency.
- Contributed to development of rules for stationary sources.
- Developed general state permit program from rule development to implementation.

December 1994 - May 1996
**Air Pollution Control Engineer** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH
- Reviewed applications and drafted permits for new and existing stationary sources of air pollution, incorporating all state and federal regulations. Testified at public hearings.
- Drafted and finalized RACT Orders.
- Calculated air pollutant emissions for statewide emission inventory.
- Conducted inspections and site visits to determine compliance and provide assistance.
- Documented decisions related to tax exemption requests.

January 1994 - December 1994
**Atmospheric Dispersion Modeler** ***NH Department of Environmental Services, Air Resources Division***, Concord, NH
- Conducted air dispersion modeling. Evaluated consultant modeling.
- Participated in source inspections for active modeling projects.
- Streamlined modeling procedures to improve efficiency.