IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| GORDON-DARBY HOLDINGS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:25-CV-00508-LM-AJ |
| | ) | |
| ROBERT L. QUINN, COMMISSIONER | ) | |
| NEW HAMPSHIRE DEPARTMENT OF | ) | |
| SAFETY; AND | ) | |
| ROBERT R. SCOTT, COMMISSIONER | ) | |
| NEW HAMPSHIRE DEPARTMENT OF | ) | |
| ENVIRONMENTAL SERVICES | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO STAY ORDER PENDING APPEAL AND SUPPORTTING
MEMORANDUM OF LAW**

ROBERT L. QUINN, COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF SAFETY
*in his official capacity*
ROBERT R. SCOTT, COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF
ENVIRONMENTAL SERVICES
*in his official capacity*
By and through their counsel

JOHN M. FORMELLA
ATTORNEY GENERAL
Mark L. Lucas, Bar #274692
Joshua C. Harrison, Bar #269564
Assistant Attorneys General
Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

Defendants Robert Quinn, Commissioner of the New Hampshire Department of Safety ("NHDOS") and Robert Scott, Commissioner of the New Hampshire Department of Environmental Services ("NHDES"), by and through their counsel, the Office of the New Hampshire Attorney General (collectively, the "State"), submit the following Memorandum of Law in support of their Motion to Stay the January 27, 2026 Order of the District Court granting Plaintiff's motion for a preliminary injunction (the "Order") (ECF-35) (McCafferty, J.) pursuant to Fed. R. Civ. P. 62(d) and Fed. R. App. Proc. 8(a)(1).

**<u>Standard of Decision</u>**

To stay the Order pending appeal, the State must show: (1) a strong likelihood of success on appeal; (2) irreparable injury absent a stay; (3) no substantial injury to the Plaintiff, and; (4) that the stay is in the public interest. *New Jersey v. Trump*, 131 F.4th 27, 34-35 (1st Cir. 2025) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)).  The first two factors are the most critical.  *Id*. "There is substantial overlap between these and the factors governing preliminary injunctions." *Nken*, 556 U.S. at 434.  A reviewing court will uphold the grant a preliminary injunction unless the order constitutes an abuse of discretion.  *Doe v. Trs. of Bos. Coll*., 942 F.3d 527, 532 (1st Cir. 2019).  The First Circuit reviews decisions to grant a preliminary injunction for "abuse of discretion" within a framework where legal questions are reviewed de novo, findings of fact for clear error, and the balancing of the four preliminary injunction factors for abuse of discretion. *Grant v. Trial Ct.*, 137 F.4th 1, 4 (1st Cir. 2025) (citing *Russomano v. Novo Nordisk Inc.*, 960 F.3d 48, 52-53 (1st Cir. 2020)).  Under this framework, application of an improper legal standard in determining the likelihood of success on the merits or misapplication of the law to the facts is an abuse of discretion.  *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981) (citations omitted).

1

**I.    THE STATE IS LIKELY TO SUCCEED ON APPEAL AND NO SUBSTAINTIAL INJURY WILL RESULT TO GORDON-DARBY AS A MATTER OF LAW.**

    A.    <u>The Court's Deferral of a Pending Rule 12(b)(1) Motion In Order to Hear and Decide a Motion for a Preliminary Injunction Was an Error of Law</u>.

As a preliminary matter, the State is likely to succeed on appeal on the basis that the Court erred as a matter of law by failing to consider the State's Rule 12(b)(1) motion to dismiss for lack of standing prior to reaching the merits of Plaintiff's motion for a preliminary injunction. Over the State's objection, the Court deferred the Plaintiff's objection deadline to the State's pending December 23, 2025 12(b)(1) motion to dismiss on Article III standing (ECF-20 and 20-1) and scheduled a hearing on Plaintiff's motion for a preliminary injunction on January 22, 2026.[1]  The Court thus assumed "hypothetical jurisdiction" to resolve the contested questions of law before confirming its own jurisdiction over a case or controversy, contrary to *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). *See also, Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir. 2006).

In bypassing the jurisdictional sufficiency of the complaint's allegations, the Court concluded that it was not limited to the allegations of the complaint in determining whether Plaintiff showed a substantial likelihood of standing.  ECF-35 at 15-16.  In so doing, the Court overlooked the State's jurisdictional facial challenge to the sufficiency of the complaint and treated the State's 12(b)(1) motion (incorporated by the State in its objection) as a factual challenge to Plaintiff's standing. *See Valentín v. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). A factual challenge targets the accuracy rather than the jurisdictional sufficiency of facts asserted by plaintiff by proffering evidentiary material. *Id*. The State's 12(b)(1) motion is a facial challenge to the Complaint, which takes all well pleaded facts as true and liberally construes the

---

[1] Plaintiff's objection to the State's 12(b)(1) motion is due on February 10, 2026, two weeks from the date of the Order. ECF-23.

complaint to infer economic harm. ECF-20-1 at 6 of 15.  Where the complaint fails to allege

standing, the Court lacks Article III jurisdiction to proceed to the merits of the case.  By

deferring consideration of the State's 12(b)(1) motion, and considering facts not alleged in the

complaint, the Court improperly grafted jurisdiction onto a deficient complaint and made

unallowed findings to issue a preliminary injunction unrelated to the allegations of the complaint.

ECF-35 at 33-40[2]; 41. The Order thus impermissibly addresses "matter[s] lying wholly outside

the issues in the suit." *De Beers Consol. Mines, Ltd. v. U.S.*, 325 U.S. 212, 220 (1945).  As a

result, the Court further improperly found that the State Implementation Plan ("SIP") requires

both emissions and safety checks[3] (ECF-35 at 7 (citing N.H. Code Admin. R. Saf-C 3203.01))

and "the continuation of an annual safety inspection requirement that keeps unsafe vehicles off

the roads" is in the public interest. ECF-35 at 41.  The Clean Air Act (the "Act"), however, does

not (and constitutionally could not) express any federal authority to regulate the safety (unrelated

to emissions) of State-registered vehicles, which is a traditional and preexisting state police

power. *See Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847, 857 (6th Cir. 2025) (citation

omitted). Nothing in RSA 266:59-b or the SIP itself (see ECF-10-3 at p. 8-9) incorporates

vehicle safety requirements unrelated to emissions as any condition or requirement relating to the

I/M program.[4] 42 U.S.C. § 7604(f)(3).

---

[2] In particular, the Court made findings as to contract claims not raised in the complaint to determine that a preliminary injunction was warranted because Gordon-Darby lacked a remedy at law. ECF-35 at 33-40. The State objected to Plaintiff raising such unalleged issues. ECF-29 at 1-2 of 7.

[3] This claim was raised by Plaintiff for the first time in its reply to the State's objection to the motion notwithstanding the State's objection. ECF-29 at 5 of 7, n.2. The complaint, by contrast, alleges that the I/M requirements of the SIP constitute an "emission standard or limitation under this chapter" within the meaning of 42 U.S.C. § 7604(a)(1) and (f)(3) (ECF-1, ¶ 54) and did not allege that vehicle safety requirements unrelated to emissions are also an enforceable requirement of the SIP. ECF-1, ¶ 49.

[4] N.H. Admin. R. Saf-C 3203.01, relied on by the Order (ECF-35 at 7), is nothing more than a laundry list of safety inspection topics and contains no substantive requirements or authority to conduct safety inspections.  The substantive safety inspection components of Saf-C chapter 3200 were expressly omitted from the SIP.  *See* Supplemental Declaration of NHDES's Catherine Beahm, ¶¶ 9-14 and Exhibit A thereto.

Because the Order bypasses the State's facial standing challenge and relies on facts and claims unalleged in the complaint, the Order is likely to be vacated and remanded for dismissal for lack of standing. *Steel Co.*, 523 U.S. at 101; *Nisselson* 469 F.3d at 151; *Elec. Privacy Info. Ctr. v. United States DOC*, 928 F.3d 95, 104-105 (D.C. Cir. 2019).

B.    <u>The Order Improperly Requires the Defendants to Take Action Beyond Their Legal Authority</u>.

In ordering the Defendants to "ensure the continued implementation of the State of New Hampshire's vehicle inspection and maintenance program" (ECF-35 at 44), the Court improperly mandates Defendants to take actions beyond their legal authority.  As the Court itself acknowledged, "HB2 repeals NHDOS's statutory authority to require inspections," and therefore, "NHDOS will lack statutory authority to require inspections after January 31, 2026." ECF-35 at 9, n.4.  Notwithstanding this acknowledged lack of statutory authority to require inspections, the Order requires Defendants to continue to implement an I/M program which Defendants lack State statutory authority to implement.[5]

Nor does the incorporation of state regulations into a federally enforceable SIP provide any independent legal authority for Defendants to continue the I/M program.  The state regulations incorporated into the SIP address emissions testing and visual inspections of emissions equipment but do not include the legal authority to compel vehicle inspections or enforce non-compliance.  Such authority was located in statutes (now repealed) and was not

---

The State offers this evidence to an argument raised for Plaintiff's reply or alternately as an offer of proof to show why 40 C.F.R. §52.1520(c) does not incorporate vehicle safety requirements unrelated to emissions into the SIP. *See also* NHDES 2011 SIP Revision. ECF-10-3 at p. 8-9; RSA 266:59-b, I(a) (same).

[5] Of course, the State has an obligation under the CAA to implement its SIP, including to operate an inspection and maintenance program.  Nonetheless, the Defendants (NHDOS and NHDES) no longer have any legal authority to operate an I/M program. Only the General Court has the authority to adopt state law to require vehicle inspections and empower the Defendants to implement and enforce such a program.

4

incorporated into the SIP.  *See* 40 C.F.R. Part 52 Subpart EE; Supplemental Declaration of

NHDES's Catherine Beahm, ¶¶ 9-14.  While the SIP's requirement to implement the I/M

program is enforceable against the State, the SIP alone does not empower the Defendants to

implement and enforce the I/M program.  The Defendants cannot rely on the SIP as authority to

compel vehicle inspections in New Hampshire any more than the EPA could.  This is precisely

why the State was required to demonstrate in its SIP that the State had the legal authority to

implement and enforce its I/M program.  40 C.F.R. §51.230.  Notwithstanding Defendants'

arguments to the contrary (ECF-20-1 at 7-8) and the Court's acknowledgement of the repeal of

NHDOS's authority to require vehicle inspections, the Court ordered Defendants to "ensure the

continued implementation and enforcement" of the I/M program.  ECF-35, pg. 44.  In so doing,

the Court erred and the preliminary injunction is likely to be vacated.

        C.       <u>The Order Erroneously Found a Substantial Likelihood that Plaintiff Has Standing</u>.

Standing alone, the undisputed fact that the January 31, 2026 repeal of the statutory

authority to require vehicle inspection and enforce the I/M program would put the State in

violation of its SIP does not establish Plaintiff's standing to bring a citizen suit.  While the Court

may have desired to prevent an imminent future violation, it must nonetheless operate within its

constitutional bounds and only address actual Article III cases or controversies. The State is

accordingly likely to prevail in demonstrating on appeal that the Court erred in finding that

Plaintiff demonstrated a substantial likelihood of standing.

        1.  *Injury in Fact and Causation*

The CAA permits a citizen suit against a state in its "regulatory capacity." *American

Lung Ass'n v. Kean*, 871 F.2d 319, 324-325 (6th Cir. 1989).  In such cases, the Court is

authorized to enforce emission standards or limitations and to apply any appropriate civil

5

penalties. 42 U.S.C. § 7604(a). Here, Plaintiff must allege Article III standing connected to an alleged CAA violation. *Conservation Law Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 83 (1st Cir. 2025).  Indeed, the Order specifically finds that Plaintiff's harm "flow[s] from New Hampshire exercising its contractual rights" (ECF-35 at 36) but does not identify any "invasion of a legally protected interest" authorizing the Court to forestall such harm. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (standing requirements limit federal courts to providing "redress for a legal wrong.").  An injury, however substantial, must be legally cognizable as a threshold matter to establish standing.

The Court similarly erred in finding causation.  The Order finds that the State violated the SIP by exercising its bargained-for contractual rights by terminating the contract with Gordon-Darby's subsidiary for convenience effective January 31, 2026. ECF-35 at 29-30 (citing 40 C.F.R. §51.350(c), pertinently requiring "[t]he State" to "commit to fully implement and enforce" the I/M program until EPA approves a SIP revision discontinuing it). Yet, Plaintiff's contract is not an enforceable requirement of the SIP.  Moreover, the Court acknowledges that the Commissioners are not responsible for the repeal of the I/M program.  ECF-35 at 30, n. 9. Any failure to fully commit to and enforce the SIP arises from the General Court's enactment of HB2 and not from NHDOS's termination of the contract.

In fact, the very reason the contract was terminated is because HB2 repealed the mandate for vehicle inspections set out in RSA 266:1.  The Defendants' action in its procurement capacity of terminating the subject contract, and the economic harm alleged by Gordon-Darby, therefore, are themselves an <u>effect</u> of the repeal of RSA 266:1 by the New Hampshire General Court. Standing cannot be premised upon harm caused by independent actions of third parties not before the court. *Lujan*, 504 U.S. at 560.  Accordingly, the Court erred in finding Plaintiff

satisfied the causation prerequisite for a preliminary injunction.

### 2. *Redressability*

The CAA vests district courts with jurisdiction to enforce emission standards or limitations, to order EPA to perform a nondiscretionary duty, and to apply any appropriate civil penalties to a person found to be in violation.  42 U.S.C. § 7604(a).  Private remedies are not authorized in a citizen suit.  *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16-17 (1981).  The Act instead limits citizen suits against a state to actions taken in a state's "regulatory capacity" (*American Lung Ass'n*, 871 F.2d at 324-325) and restricts injunctive relief to the "relief expressly provided for" by 42 U.S.C. § 7604(a). *Sánchez ex rel. D.R.-S. v. United States*, 671 F.3d 86, 95 (1st Cir. 2012).  The Court consequently erred in finding that Plaintiff's alleged harm from termination of its contract was "likely" to be redressed by issuance of a preliminary injunction.  ECF-35 at 19.

While the Order concludes that N.H. Code Admin. R. Saf-C 3202.24 "requires [the State] to contract with <u>a</u> vendor to administer and support the program" (ECF-35 at 7),[6] the Court did not dispute that neither the Act or the SIP require the State to retain Plaintiff as the vendor. Indeed, the Order carefully avoids ordering any such direct relief to Plaintiff.  Instead, the Court erroneously concluded that "a preliminary injunction will *likely* redress Gordon-Darby's injuries" because due to the practical difficulties of timely finding a new vendor "it is *likely* that the state elects to reinstate Gordon-Darby NHOST's contract."  ECF-35 at 18-20 (emphasis added).

The Order overlooks and does not account for the material fact that the contract was executed, approved, and extended by the State's Governor and Executive Council.  ECF-20-1 at

---

[6] The Order's reliance on N.H. Code Admin. R. Saf-C 3202.24 is misplaced, as that rule simply defines the term "supplier" but does not impose any such regulatory requirement on the State. ECF-22 at 8 of 13.

9 of 15, n.3 (citing ECF-1 at 33-20 and RSA 4:15); *see also* ECF-22-3 at 11-110. The Court's prediction that its Order will *likely* redress Plaintiff's economic harm is unsupported by the record (*see McGuire v. Reilly*, 260 F.3d 36, 45-46 (1st Cir. 2001)) and does not account for state procurement law requirements, which vest ultimate authority to approve or deny state contracts with the Executive Council, not with executive branch agencies such as Defendants herein.

In fact, this very infirmity in the Court's redressability analysis raised by Defendants has been borne out by subsequent events. Following Defendants' good faith efforts to obtain approval to extend the term of Plaintiff's contract, on February 4, 2026, the State's Executive Council denied NHDOS's request. *See* Exhibit B to the State's accompanying motion for expedited consideration. As the Executive Council's action confirms, reinstatement of the contract requires more than an order, the incidental effect of which is to mandate state officials "to seek to reinstate" the contract. ECF-35 at 20, n.8. Overlooking material evidence in the record as to the required approval of the State's Governor and Executive Council resulted in a legally ineffective Order which does not (because this Court legally could not) "describe in reasonable detail. . . the act or acts restrained or required" to alleviate Gordon's Darby's economic harm. Fed. Rules Civ. Proc. R 65(d)(1)(c). The Court is furthermore incorrect that the State failed to object to the scope of the Order.[7] Finally, the Act (and the Court) cannot redress a contractual injury in contravention of the Tenth Amendment and congressional limits of Commerce Clause authority to regulate air pollution. *See, e.g., Hodel v. Virginia Surface Mining*

---

[7] The State repeatedly argued that any injunction to redress the harm to Gordon Darby would exceed the scope of available statutory citizen suit relief and be so broad as to render it ineffective and/or unconstitutional. ECF 20-1 at 8-9; ECF-22 at 6-7, 9, 11; ECF-29 at 4-5. The State also pointed out that Plaintiff's requested order exceeded the scope of the relief sought in the complaint. ECF-29 at 2. The State's proposed order further limited the Court's consideration to the relief sought in the complaint (ECF-33, ¶¶ 61-64) for the State to "to fully and expeditiously implement, administer, maintain, and enforce the I/M program required by the New Hampshire SIP." ECF-33, ¶ 64 (citing ECF-1 at 14 [prayer for relief]).

*& Reclamation Assn., Inc.*, 452 U.S. 264, 282 (1981).  For the foregoing reasons, the First Circuit will likely reverse the Order's finding that Plaintiff showed a substantial likelihood of standing.

>    D.    <u>Statutory Jurisdiction Does Not Attach Absent the Occurrence of a Violation</u>

A plaintiff may obtain citizen suit relief for an "ongoing or repeated SIP violation." *Conservation Law Found.*, 129 F.4th at 83.  *See also Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 518-19 (5th Cir. 2016) (citing 42 U.S.C. § 7604(a)(1)).  The Order dispenses with the requirement for an ongoing or repeated violation by concluding that its statutory jurisdiction attached at the time Gordon-Darby filed a complaint alleging that "violations are likely to occur in the future."  ECF-35 at 26.  The Order reaches this conclusion based upon misreadings of several cases, including *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 69 (1987) ("Gwaltney I"), the Fourth  Circuit's decision on remand in *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171 (4th Cir. 1988) ("Gwaltney II"), and a District Court of Puerto Rico decision in *P.R. Campers' Ass'n v. P.R. Aqueduct & Sewer Auth.*, 219 F. Supp. 2d 201, 211 (2002).  None of these cases stand for the proposition that a CAA citizen suit may be brought in the absence of the occurrence of a violation and based solely upon the likelihood that a violation will occur in the future.

*Gwaltney I* held that citizen suits are not permitted "for wholly past violations." *Id*. 484 U.S. at 64. Once a violation has occurred, however, a citizen suit may be brought based upon "good-faith allegation[s] of <u>ongoing</u> violation. . ." *Id.* at 67 (emphasis supplied).  A violation must have first occurred in order to be "ongoing" or "recurring."  The District Court in *P.R. Campers' Ass'n* accordingly ruled that a citizen suit plaintiff must "demonstrate that the violations were ongoing at the time the complaint was filed." 219 F. Supp. 2d at 211.  Other

9

cases cited in the Order similarly involved violations that had already occurred. *See Pawtuxet Cove Marina v. Ciba-Geigy Corp.*, 807 F.2d 1089, 1091, 1094 (1st Cir. 1986) (violation had occurred pre-suit); *United States Pub. Interest Research Group v. Atl. Salmon of Me.*, 339 F.3d 23, 33 (1st Cir. 2003) (complaint alleged prior and recurring violations).  The occurrence and actual or likely recurrence of a violation are the prerequisites to bringing a citizen suit.

Indeed, the express notice and timing restrictions of the CAA citizen suit provision demonstrate the prospective nature of relief available in a citizen suit.  42 U.S.C. § 7604(b)(1)(A).  The 60-day notice requirement is designed to allow alleged violators to correct ongoing violations and come into compliance with the Act, not to warn of alleged future violations that have not previously occurred.  Otherwise, any person could allege a future violation and commence a citizen suit without regard to the alleged violator's past conduct, and the notice and timing components of the citizen suit provision would be rendered effectively meaningless.  The fact that a future violation is likely to actually occur does not change the requirement of an ongoing or recurring violation of the Act prior to notice and commencement of suit.  The Court's conclusion that Plaintiff may maintain this case based solely upon allegations of a likely or imminent future violation will likely be reversed as an error of law as well as an abuse of discretion.  *See Planned Parenthood League*, 641 F.2d at 1009.

E.    The Court's Finding That Defendants Had Already Violated the Clean Air Act is an Error of Law and Wholly Unsupported by the Record

The Order also found that Defendants were in present violation of the CAA because they "are presently informing the citizenry of New Hampshire that motor vehicle inspections are no longer required after January 31."  ECF-35 at 29.  The Court found that this was "true as a matter

10

of state law" but "not true as a matter of federal law and misstates the requirements" of the SIP.[8] *Id*. However, the Court erred in finding that the requirement that <u>a</u> <u>SIP</u> "include a plan for informing the public" on "the requirements of the Federal and State law … and the requirements of the I/M program" creates a separate enforceable requirement on the speech of Defendants. ECF-35 at 29 (quoting 40 C.F.R. §51.368(a)). The C.F.R. sets out required components for the SIP; it does not regulate the extent of communications with the public by state officials generally. The Court itself acknowledges that "NHDOS will lack statutory authority to require inspections after January 31, 2026" (ECF-35 at 9, n. 4), and Defendants did no more than inform the public of that fact. Such speech does not alter the SIP's public outreach plan. The same holds true for the Court's finding that NHDOS violated the SIP by directing inspection stations to return unused state-issued inspection supplies by the end of February 2026. ECF-35 at 30. NHDOS simply communicated the legislative repeal of its SIP authority and requested the return of official state vehicle decals, which the Court acknowledges was a good-faith attempt to implement duly enacted state legislation consistent with their "solemn and important duties." ECF-35 at 30, n. 9. Any failure to "fully commit to and enforce" the SIP arises from HB2 and not from NHDOS's communications concerning implementation of that repeal. 40 C.F.R. §51.350(c). The Order is also a constitutional overreach insofar as it impermissibly restricts and chills the Defendants' First Amendment speech rights in connection with implementing duly enacted State law.

      F.     <u>The Finding of Irreparable Harm Was an Error of Law and Unsupported by the Record.</u>

The Order, as noted, determined that harm to Gordon-Darby was irreparable precisely because the CAA "does not authorize a private cause of action for compensatory damages."

---

[8] The Court misapprehends the extent of the federal law; the State is required to implement the I/M program, but federal law does not and cannot mandate motor vehicle inspections by motorists. *See* Section I.B, *supra*.

ECF-35 at 34. This conclusion, absent some other legally cognizable Article III injury (which the complaint does not allege, Plaintiff did not offer, and the Order does not identify) requires dismissal of the complaint and turns the inquiry into lack of adequate remedy at law on its head by instead serving as the sole basis for immediate relief. The Order's finding of irreparable economic harm is based on the finding that Plaintiff "will likely suffer substantial injuries which cannot be remedied by an end-of-case money damages award." ECF-35 at 41 (emphasis supplied). Yet, Plaintiff's economic harm from the termination of its contract results from the exercise of the State's contract rights which are not (and could not be) constrained by the Act. If the termination of the contract did violate the SIP, this Court's "appropriate order[s] for its enforcement" (*see American Lung Ass'n v. Kean*, 670 F. Supp. at 1289; 42 U.S.C. 7604(a)) would directly require reinstatement of the contract instead of relying on speculation as to the "likely" procurement decisions of state officials who are not before the Court. The record moreover does not support the conclusion that economic harm to the parent corporation, while "substantial" (even if actionable) would "threaten the existence" of the movant parent company. *See Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009), *see also Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995). The Order finds that "repeal of the I/M program will likely drive" the subsidiary (not the parent) "out of business." ECF-35 at 14. Gordon-Darby's client list includes several states, all of which are much larger than New Hampshire. Marasco Decl., ECF-22-3, ¶ 11 and Ex. 2, thereof. Harm to Gordon-Darby is "irreparable" because Gordon-Darby lacks standing, not because it will suffer traditional economic damages, substantial or otherwise. As such, the Court's finding of irreparable harm will likely be reversed on appeal.

        G.      The Court Abused Its Discretion in Balancing the Respective Harms and the Public Interest

The Order represents an abuse of discretion in terms of judgment and balancing of conflicting factors and is therefore highly likely to be reversed on appeal. *See Comcast of Maine/New Hampshire,* 988 F.3d at 612. The Order tips the scales in favor of an injunction based upon three factors: (a) economic harm to Gordon-Darby; (b) the public interest in enforcing the Act and achieving air quality standards; and (c) the public interest in continuing vehicle safety inspections (unrelated to emissions) "that keeps unsafe vehicles off the roads." ECF-35 at 41. These findings are neither consistent with applicable law nor supported by the record.

First, equity favors holding parties to their contracts, *see Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.*, 595 F. Supp. 497, 501 (N.D. Tx 1984)), and performance of bargained for contractual rights does not impose any hardship recognized by equity. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 612 F. Supp. 3d 563, 598 (E.D. Va. 2020). Lost profits, in any event, merit "little equitable consideration." *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988). Balanced against the sovereign interests of the State, the equities clearly weigh against issuance of an injunction to prevent private economic harm to Plaintiff.

Second, while there is indisputably a public interest in enforcing the Act, the Court's conclusion that its Order will assist New Hampshire in achieving air quality standards entirely overlooks the Rule 702 expert evidence in the record. NHDES SIP Administrator Catherine Beahm's declaration explained that NHDES's December 24, 2025 SIP revision submittal to EPA includes a technical demonstration showing that discounting the I/M program will not interfere with New Hampshire's attainment of air quality standards nor interfere with air quality standard attainment in any other state in the Ozone Transport Region. ECF-22-2 at ¶42-45. Gordon-

13

Darby acknowledged Ms. Beahm's conclusion that discontinuing the I/M program "will not interfere with attainment or maintenance of the NAAQS," but offered no contrary expert opinion. ECF-28 at 12. While actual environmental harm is not required to find a violation of the Act, the Court's findings that the Order will assist New Hampshire in meeting air quality standards is contradicted by the undisputed expert testimony and is thus clearly erroneous.

Third, as discussed above, the Act does not (and constitutionally could not) purport to regulate vehicles in order to "keeps unsafe vehicles off the roads" as the SIP does not require the inspection of vehicle components which are unrelated to emissions. On balance, the public interest favors deference to the actions of the public's representative body in terminating vehicle inspections in New Hampshire.

       H.       <u>Issuance of a Stay Will Not Substantially Harm Gordon-Darby</u>

Plaintiff does not allege organizational standing, nor does Plaintiff claim environmental harm or economic harm arising from vehicle emissions. Plaintiff consequently cannot be "substantially injured" by the grant of a stay on the basis of the environmental effect of the alleged violation of the SIP. The Act moreover does not, as noted, provide private remedies. Finally, because Plaintiff's contract has now been conclusively terminated by the Executive Council, any claimed economic harm to Plaintiff has already occurred and will not be altered by a stay. Accordingly, the grant of a stay will not substantially injure Plaintiff.

## II.    THE STATE WILL SUFFER IRREPERABLE HARM TO ITS SOVERIEGNTY ABSENT A STAY AND GRANTING A STAY IS IN THE PUBLIC INTEREST

The Order disregards all arguments and concerns regarding state sovereignty in its legislative role and as market participant for public procurement raised by the State regarding the Tenth Amendment, which "states but a truism that all is retained which has not been surrendered." *Chiafalo v. Washington*, 591 U.S. 578, 607 (2020). The Order only devotes a

single sentence to finding that the State will "suffer little harm if a preliminary injunction is granted; a preliminary injunction would simply maintain the status quo prior to HB2's enactment." ECF-35 at 41. This finding is entirely undermined by the Court's earlier finding that NHDOS would lack statutory authority to require inspections after January 31, 2026. ECF-35 at 9, n. 4. This Court does not make policy determinations which are properly reserved to State legislators accountable to State voters, *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aero. Workers Local Lodge 207 v. Raimondo*, 18 F.4th 38, 43 (1st Cir. 2021), nor can a federal court reenact repealed state law. Indeed, the Order assigns no weight to the public interest which favors federal courts exercising their power "with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

Accordingly, by ordering Defendants to continue a program they have no legal authority to implement, the Court enjoins the effectuation of such state laws, resulting in "a form of irreparable injury." *Dist. 4 Lodge*, 18 F.4th at 47. Moreover, with the Executive Council's denial of Defendants' request to extend Plaintiff's contract, Defendants have neither the legal authority nor the practical ability to implement the I/M program. As such, Defendants will suffer irreparable injury if forced to comply with an Order that would require them to perform unlawful acts beyond their legal authority. A stay of the Order pending appeal is thus warranted.

Respectfully submitted,

JOHN M. FORMELLA
ATTORNEY GENERAL

February 10, 2026

/s/ Mark L. Lucas
Mark L. Lucas, Bar #274692
Joshua C. Harrison, Bar #269564
Assistant Attorneys General

15

Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

/s/ Joshua Harrison
Joshua Harrison, Bar #269564

16