# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| GORDON-DARBY HOLDINGS, INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>NEW HAMPSHIRE DEPARTMENT OF SAFETY, COMMISSIONER, et al.,<br><br>    *Defendants*. | Civil Action No. 25-cv-00508-LM-AJ |

## PLAINTIFF GORDON-DARBY HOLDINGS, INC.'S OBJECTION TO DEFENDANTS' MOTION TO STAY ORDER PENDING APPEAL

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com

Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
Makram B. Jaber (DC Bar No. 458718)
Kirsten M. Bahnson (DC Bar No. 90028947)
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com
mjaber@mcguirewoods.com
kbahnson@mcguirewoods.com

*Counsel for Plaintiff Gordon-Darby Holdings, Inc.*

February 17, 2026

**TABLE OF CONTENTS**

STANDARD OF REVIEW ................................................................................................................ 2

ARGUMENT .................................................................................................................................... 2

    I.   Defendants' Violation of the Order Did Not Defeat Gordon-Darby's Standing. ................. 2

        A.  An Order Requiring Defendants to Comply with the SIP Is Likely to Redress Gordon-Darby's Harm, Even After Its Previous Contract Was Terminated. ................... 2

        B.  The Court Should Not Permit Defendants to Defeat Gordon-Darby's Standing by Refusing to Comply with the Order. ........................................................................ 6

    II.  Defendants Have the Legal Authority Necessary to Comply with the Order Because HB2's Repeal Provisions Are Preempted by Federal Law. ................................................ 11

    III. Defendants Will Not Suffer Irreparable Harm Without a Stay Whereas Gordon-Darby Will Be Harmed in the Order's Absence. .......................................................................... 12

    IV. The Public Interest Strongly Favors Keeping the Order in Effect. ................................... 13

CONCLUSION ................................................................................................................................ 15

Plaintiff Gordon-Darby Holdings, Inc. ("Gordon-Darby") submits this Objection opposing Defendants' Motion to Stay Order Pending Appeal, ECF 39. Defendants, New Hampshire Department of Safety ("NHDOS") Commissioner Robert Quinn and New Hampshire Department of Environmental Services ("NHDES") Commissioner Robert Scott, ask this Court to stay its well-reasoned order granting Gordon-Darby's motion for a preliminary injunction, ECF 35 (the "Order"), pending the First Circuit's review of their appeal.

A stay is unwarranted here. Remarkably, aside from rehashing their old arguments against the Order, Defendants' primary argument for a stay simply appears to be that they have already violated the Order and intend to remain in violation for the foreseeable future, having now decided to **suspend the State's vehicle inspection and maintenance ("I/M") program indefinitely**. See ECF 39 at 4-5, 7-9, 14, 15; Suppl. Decl. of Joel Unverzagt, ¶¶ 37-41 & Exs. 9-11. The Court should not reward Defendants' refusal to comply with the Order by relieving them from any further obligations under it. Rather, the appropriate response is to enforce the Order, including at a minimum by directing Defendants to come into compliance with their obligations under the Order, the Clean Air Act ("CAA"), and New Hampshire's state implementation plan ("SIP") on a clear and enforceable schedule, and by imposing such sanctions against Defendants as the Court deems necessary to ensure their compliance.[1]

In any event, Defendants' arguments for a stay lack merit. First, termination of Gordon-Darby NHOST's vendor contract did not render this case moot because an order requiring Defendants to comply with the SIP is still likely to redress at least some of Gordon-Darby's harm.

---

[1] Gordon-Darby has not yet filed a separate motion to compel Defendants' compliance, partly because the Court requested briefing here that partly addresses the same subject matter. To the extent the Court believes it necessary for Gordon-Darby to file a motion seeking such relief before the Court may impose it, Gordon-Darby is prepared to do so on whatever schedule the Court sees fit to establish. Alternatively, the Court may construe this filing as a motion to compel.

1

Second, Defendants are able to continue implementing the I/M program because federal law preempts conflicting state law. Third, Defendants suffer no irreparable harm from the Order, while Gordon-Darby will continue suffering harm if a stay is granted. Fourth, the public interest strongly favors maintaining the Order and preventing the public confusion that would result from a stay, particularly given the State's admission that its termination of the I/M program violates the CAA.

## STANDARD OF REVIEW

To obtain a stay pending appeal, the movant must establish: (1) a "strong showing that it is likely to succeed on the merits" of its appeal; (2) "irreparable harm" to the movant; (3) that "issuance of the stay will not substantially injure the other parties interested in the proceeding"; and (4) that the stay would be "in the public interest." *New Jersey v. Trump*, 131 F.4th 27, 34-35 (1st Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)) (cleaned up). The first two are "the most critical." *Id.* at 35.

## ARGUMENT[2]

**I. Defendants' Violation of the Order Did Not Defeat Gordon-Darby's Standing.**

**A. An Order Requiring Defendants to Comply with the SIP Is Likely to Redress Gordon-Darby's Harm, Even After Its Previous Contract Was Terminated.**

This litigation continues to present a case or controversy fit for resolution by this Court. Article III requires that "an actual controversy must be extant at all stages of the review." *ACLU of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (cleaned up). A case becomes moot if "the issues presented are no longer live" or if "the court cannot give any effectual relief to the potentially prevailing party." *Id.* Neither circumstance is present here.

---

[2] Pursuant to the Court's February 11, 2026 order, ECF 44, this Objection primarily focuses on the issues for which the Court specifically requested briefing and does not address arguments that were already raised and resolved in the parties' preliminary injunction briefing. To the extent a response to those arguments is necessary, Gordon-Darby incorporates the arguments presented in its memorandum and reply in support of the Motion for Preliminary Injunction, ECF Nos. 10-1 & 28.

While Defendants contest all three prongs of the Article III standing inquiry, their arguments regarding the injury-in-fact and causation elements simply reassert their arguments from the preliminary injunction briefing, which this Court rightly rejected in granting the Order. ECF 35 at 14-18. As for redressability, Defendants argue that this Court cannot redress Gordon-Darby's economic harm from termination of the I/M program because ultimate authority to approve or deny a new I/M vendor contract with Gordon-Darby (or any other company) purportedly rests with the New Hampshire Executive Council, which is not a party to this suit. ECF 39 at 7-8. For its part, the Court appears to be concerned that this case may be moot because following the January 31, 2026 termination of Gordon-Darby NHOST's vendor contract, "it does not appear that the court's preliminary injunction is likely to redress the injuries to Gordon-Darby relied upon by the court to find a substantial likelihood of standing." ECF 44 at 1-2.

Those redressability concerns are misplaced. As an initial matter, for the reasons discussed in Section I.B below, Defendants are incorrect that any new contract with an I/M program vendor is beyond the authority of NHDOS alone to enter and must be approved by the Executive Council. But in any event, even if Council approval were needed to retain a new vendor, this Court still has authority to grant relief that is likely to at least partially redress Gordon-Darby's harms. To maintain standing, the available relief need not be "fully satisfactory," and the "power to effectuate a partial remedy is sufficient to prevent a case from being moot." *United States v. Sastrom*, 96 F.4th 33, 37 (1st Cir. 2024) (cleaned up). Likewise, the plaintiff need only establish relief is "likely"—not "certain"—to redress their injury. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 124 (2025).

Although Defendants failed to "take all appropriate measures to comply with the requirements of" the Order, ECF 44 at 1, when they inexplicably allowed Gordon-Darby NHOST's contract to end without a replacement vendor, it does not follow that there are no measures left to

3

bring Defendants into compliance with the Order and with the CAA. Most importantly, this Court may issue relief compelling Defendants to comply with their obligations to implement the I/M program under New Hampshire's federally approved SIP. *See* 42 U.S.C. § 7604(a). Contrary to their arguments here, Defendants retain the legal authority to implement the I/M program unless and until EPA approves its removal from the State's SIP and must implement the program to comply with the Order and the CAA. *See* Section II *infra*. By the State's own admission, the I/M program cannot operate without the services of an authorized vendor retained by NHDOS to administer the program's day-to-day operations. *See* Unverzagt Suppl. Decl. ¶ 29; *id.* Ex. 10 (stating in February 13, 2026 news release that without approved vendor, State "currently lack[s] the legal authority to operate a vehicle inspection program"); *see generally* ECF 10-3 at 11-12, 15, 16, 18-23 (describing aspects of I/M program that rely on vendor services).

Thus, in order to comply with the Order or with any permanent injunction requiring them to implement the I/M program as codified in New Hampshire's SIP, Defendants will necessarily have to retain a new vendor. Gordon-Darby, in turn, will have an opportunity to bid for that new vendor contract. RSA 21-I:11. The opportunity to bid on a new contract alone is sufficient to redress at least some of Gordon-Darby's economic harm from Defendants' termination of the I/M program, which includes "a loss in its valuation due to the lost opportunity to bid on future contracts for implementation" of the program. ECF 10-2 ¶ 33; *see* ECF 28 at 4; *CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989). The restoration of Gordon-Darby's "*opportunity to pursue a benefit*" is sufficient to support redressability even if Gordon-Darby is not "*certain to receive* that benefit." *CC Distribs.*, 883 F.2d at 150 (emphases in original).

Moreover, in this case the record supports finding that Gordon-Darby NHOST likely *would* be selected as the vendor for any new contract to administer the I/M program. Gordon-Darby has

4

served continuously as the State's only I/M vendor since the program began over twenty years ago and has successfully outbid competitors for three previous contracts. ECF 10-2 ¶¶ 10-12. It has existing business relationships and goodwill with inspection stations. *Id.* ¶¶14-15. It has already obtained or developed the equipment, software, systems, and processes necessary to support the State's and inspection stations' implementation of the program. *Id.* ¶¶ 15-16. And as both the State and this Court have recognized, it is entirely "speculative" that NHDOS could attract any other bidders willing to invest resources developing the systems and equipment necessary to operate the I/M program given New Hampshire's ongoing efforts to eliminate it. ECF 35 at 20; Unverzagt Suppl. Decl. ¶ 31 (Attorney General conceding that "we would be likely to face challenges finding another vendor" besides Gordon-Darby NHOST).

For purposes of the redressability analysis, it is irrelevant that the contract could be awarded to another bidder or that the Executive Council might not approve a vendor contract (to the extent such approval is required at all). A plaintiff "need not 'solve all roadblocks simultaneously'" to obtain judicial review of an action that causes it harm. *Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Human Svcs.*, No. 25-cv-2453, 2025 WL 2840318, *12 (D.D.C. Oct. 7, 2025) (cleaned up); *see Douglas Timber Operators v. Salazar*, 774 F. Supp. 2d 245, 255 (D.D.C. 2011) ("Even if the relief that plaintiffs ultimately obtain constitutes a Pyrrhic victory, the Court *could* award them relief that would remove the source of their injury.") (cleaned up). It suffices that the Court could issue relief that is likely to redress that harm.

In the analogous case of *Teton Historic Aviation Foundation v. U.S. Department of Defense*, 785 F.3d 719 (D.C. Cir. 2015), a plaintiff challenged federal policies that prevented the sale of military surplus aircraft parts. The government argued the plaintiff's harm was not redressable because the court could not compel it to release any of its surplus equipment for sale and because

5

any actual sales would be conducted by a third-party vendor that was not a party to the litigation and who the court could not force to take any action. The D.C. Circuit disagreed on both counts, holding that if it granted the relief that was within its authority (*i.e.*, setting aside the policies restricting sale of surplus parts), past practice and basic economic incentives made it sufficiently likely that the Department and its nonparty vendor would release and put up for sale the surplus parts that the plaintiffs sought to bid on. *Id.* at 725-29. Similarly here, if this Court orders Defendants to implement the I/M program as set forth in New Hampshire's SIP, then the State's past practice, economic incentives, and the enforceable requirements of the CAA make it sufficiently likely that NHDOS will solicit bids and select a new vendor and that the Executive Council will approve a contract as necessary to comply with the CAA. Thus, Gordon-Darby's injuries remain redressable by this Court notwithstanding the termination of its prior contract.

### B. The Court Should Not Permit Defendants to Defeat Gordon-Darby's Standing by Refusing to Comply with the Order.

It would be particularly inappropriate to find that termination of Gordon-Darby NHOST's contract deprives the Court of jurisdiction here because the State's termination of that contract was done in direct violation of a lawful order from this Court. The Supreme Court has cautioned that "maneuvers designed to insulate a decision from review … must be viewed with a critical eye."[3] *ACLU of Mass.*, 705 F.3d at 55 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). Accordingly, to the extent the Court views the continued redressability of Gordon-Darby's harms as a close question, it should err on the side of Gordon-Darby to avoid

---

[3] While this principle is most often implicated in cases involving the "voluntary cessation" exception to mootness, *see id.* at 54, that doctrine is not directly applicable here given that Defendants have *doubled down* on the underlying CAA violation challenged in this suit rather than voluntarily ceasing it. Nonetheless, the rationale underlying the Supreme Court's warning applies equally in cases where a defendant attempts to "evade judicial review" by cutting off the plaintiff's ability to obtain meaningful relief instead of temporarily changing its behavior. *See id.* (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)).

rewarding Defendants' noncompliance and incentivizing future efforts to circumvent federal courts' jurisdiction.

Gordon-Darby respectfully disagrees that the State officials who are "failing to take appropriate steps to respect this court's preliminary injunction" do not include "the named defendants in this case." *See* ECF 44 at 2. As explained further below, while Defendants claim to have made "good faith efforts" to follow the Order and object that compliance is ultimately beyond their control, ECF 39 at 7-8, NHDOS in fact had the authority to ensure continued implementation of the I/M program and resume the contract with Gordon-Darby NHOST without first obtaining approval from the Executive Council. By instead seeking Council approval of a limited extension to the contract, NHDOS outsourced its own compliance with the Order to a separate State entity that is not subject to control by NHDOS and is itself not expressly bound by the terms of the Order.

This Court issued the Order on January 27, 2026, four days before the scheduled termination date of January 31, 2026, for Gordon-Darby NHOST's contract. ECF 35. The Order enjoined Defendants and "their agents, employees, representatives, successors, and any other person acting directly or in concert with them" from "taking or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of" New Hampshire's I/M program as codified in its federally approved SIP. *Id.* at 43. It also ordered those persons to "take *all steps necessary* to resume and ensure the continued implementation and enforcement" of the I/M program. *Id.* at 44 (emphasis added). The most pressing step "necessary" to "ensure the continued implementation and enforcement" of the I/M program after January 31, 2026, was to maintain a contract with a designated I/M program vendor. And as the State has acknowledged, the *only* practical way to continue operating the I/M program in the short term would have been to extend NHDOS's contract with Gordon-Darby NHOST past the previously noticed termination date.

7

Unverzagt Suppl. Decl. ¶ 30. NHDOS could have effectuated such an extension simply by sending a letter to Gordon-Darby NHOST withdrawing or amending its September 16, 2025 notice of termination. Such an extension would have ensured the uninterrupted continuation of New Hampshire's I/M program past January 31, 2026, without undue confusion or disruption.

Defendants did not take that step. Instead, NHDOS waited until after January 31, 2026, before submitting a request to the Executive Council seeking "retroactive authorization to amend the Department's September 16, 2025 notice of intent to terminate its agreement between the State and Gordon-Darby NHOST Services, Inc. … by extending the termination date by 60 days from January 31, 2026 to April 1, 2026." *Id.* ¶ 27 & Ex. 5. On February 4, 2026, the Executive Council—which is not directly bound by the Order—denied that request. *Id.* ¶ 33. Within 90 minutes of the Council's vote, NHDOS sent a letter to Gordon-Darby stating that it could no longer "authorize Gordon-Darby to continue operating the State's vehicle inspection program." *Id.* ¶ 34 & Ex. 7. NHDOS has since informed the public and Gordon-Darby that due to the "lack of an approved vendor," the I/M program is "suspended until further notice." *Id.* ¶¶ 37-41 & Exs. 9-11.

Defendants' actions since January 27, 2026, are not consistent with "good faith efforts" to comply with the Court's Order. At best, they represent an arbitrary and unnecessary abdication of Defendants' responsibility to carry out the relief required by this Court. At worst, they create the impression of a deliberate effort to enlist other State actors not presently before this Court to achieve precisely the goal that the Order was intended to prevent: the effective termination of New Hampshire's I/M program. In either event, Defendants have failed to comply with the Order.

Defendants' claim that Executive Council approval was required to withdraw or amend the termination of Gordon-Darby NHOST's contract is unsupported by the facts or law. ECF 39 at 7-8. Nothing in the contract itself required NHDOS to seek the Council's approval. The contract did

8

not require NHDOS to obtain Council approval to terminate the contract for convenience, and NHDOS did not seek or obtain the Council's approval before doing so. *See* ECF 22-3 Ex. 1, PDF pp. 54-55. The remainder of the contract was silent as to whether Council approval would be necessary to amend any notice, including a notice of termination, once served.

Likewise, nothing in New Hampshire's constitution, statutes, or regulations required Executive Council approval of any action on Gordon-Darby's contract. To the contrary, New Hampshire law spells out the specific circumstances in which Council approval is required, and none of them was present here. By statute, the "expenditure of any moneys appropriated or otherwise provided to carry on the work of any department" is subject to approval by the Governor with the advice of the Council, pursuant to "such general regulations as the governor and council may prescribe." RSA 4:15. State agencies "must bring expenditures of various types which are above a specific monetary threshold to the Governor and Executive Council for their direct review and approval." DAS Manual of Procs., MOP 150 at 4-5.[4] As relevant here, this includes requests to "[e]nter into service contracts in the amount of $10,000 or more" and "[a]ll amendments to service contracts … which have been approved by the Governor and Executive Council."

Extending the termination date of Gordon-Darby NHOST's contract did not fit within any category of actions requiring Executive Council approval. First, NHDOS was not seeking to enter or amend a "contract" at all. To the contrary, NHDOS's February 3, 2026 request to the Council made clear that it was only contemplating amendment of its "notice of intent to terminate" the contract, not the contract itself. Unverzagt Suppl. Decl. ¶ 27. Second, even if extending the termination date of Gordon-Darby NHOST's contract were somehow construed as entry or amendment of a contract, it would not fall within the Council's jurisdiction as "expenditure of any

---

[4] https://www.das.nh.gov/mop/Documents/MOP/2025-11-12_MOP_150.pdf.

moneys," let alone an expenditure in excess of $10,000. Gordon-Darby NHOST's contract with NHDOS was a no-cost contract to the State, with all revenue to Gordon-Darby NHOST accruing from its individual contracts with licensed inspection stations. ECF 10-2 ¶ 14; ECF 22-3 Ex. 1, PDF p. 23. Thus, the contract did not involve any expenditure requiring the Council's approval whatsoever. Third, even if Gordon-Darby NHOST's contract did entail some "expenditure" subject to Council approval, that expenditure had already been approved when NHDOS first entered the contract and again when it extended the expiration date to December 31, 2026. Withdrawing NHDOS's termination for convenience would not have entailed any new expenditure—it would simply represent the same "expenditure" already approved by the Council.

Notably, NHDOS itself appears to recognize that Council approval was not required to extend the termination date of Gordon-Darby NHOST's contract because NHDOS *actually did* briefly extend the termination date following the Court's issuance of the Order. On January 30, 2026, NHDOS sent Gordon-Darby NHOST a letter authorizing it to "continue to operate the State's program and continue to work with licensed inspection stations" after January 31, 2026, "until such time that the Governor and Council votes on the Department's request to revise the termination date." Unverzagt Suppl. Decl. ¶ 22 & Ex. 2. NHDOS did not seek or obtain the Council's approval before granting this extension.

In light of the above, Defendants' argument that they could not comply with the Order without first seeking the Council's approval strains credulity. The Court should not credit that argument by allowing Defendants to use their violation of the Order as an excuse to revisit the question of redressability. As the Court correctly observes, ECF 44 at 2-3, opening that door would invite greater noncompliance with judicial orders by providing a playbook to defeat a plaintiff's standing in a wide range of cases. A state government defendant would only need to find some

10

official who is not explicitly bound by the court's order but has a role in carrying it out, then cite that official's intransigence as grounds to defeat the court's jurisdiction over the case. Indeed, taken to its logical conclusion, a state legislature could potentially insulate the state from judicial relief altogether by refusing to appropriate funds for implementation of any court order.

Where a defendant violates a preliminary injunction, the appropriate remedy is to enforce the injunction, not to stay it. For that reason, together with the Court's continued ability to grant relief redressing the harm to Gordon-Darby, *supra* Section I.A, Defendants are unlikely to succeed in their appeal of the Order and a stay is inappropriate. Further, in light of Defendants' ongoing violation of the Order, the Court should take additional action requiring them to come into compliance with the Order and the CAA. Relief to enforce the Order is necessary to prevent further harm to Gordon-Darby, to mitigate public confusion over the status of the I/M program, and to ensure proper respect for the Court's authority.

II. **Defendants Have the Legal Authority Necessary to Comply with the Order Because HB2's Repeal Provisions Are Preempted by Federal Law.**

Defendants are also unlikely to succeed on their argument that the Order requires them to "implement an I/M program which Defendants lack State authority to implement." ECF 39 at 4-5. Defendants' position is based on the faulty premise that HB2's provisions repealing the statutory authorities underlying the I/M program must be given effect. Defendants' argument willfully ignores the Supremacy Clause of the Constitution and black-letter principles of conflict preemption. When state laws conflict with federal law requirements, "the Supremacy Clause requires that they be given no effect." *New Hampshire v. Ramsey*, 366 F.3d 1, 30 (1st Cir. 2004). This is not a matter of courts "mak[ing] policy determinations" or "reenact[ing] repealed state law." ECF 39 at 15. It simply gives effect to the balance between federal and State authority enshrined in the Constitution.

11

The fundamental—if not explicit—holding underlying the Court's Order is that HB2's provisions repealing the statutes underlying the State's I/M program conflict with New Hampshire's federally approved SIP and are therefore preempted. Defendants cannot plausibly dispute this conclusion, and in fact did not dispute it in briefing or argument on Gordon-Darby's Motion for Preliminary Injunction. Defendants concede that the I/M program is a requirement of New Hampshire's SIP, that they have an "obligation under the CAA to implement" the SIP, and that "the SIP's requirement to implement the I/M program is enforceable against the State." ECF 39 at 4 n.5, 5. And it is plainly impossible to comply with both the SIP (which requires implementation of the I/M program) and HB2 (which repeals the I/M program).

It is irrelevant that the authority to compel vehicle inspections and enforce non-compliance "was located in statutes (now repealed)." ECF 39 at 4. The same is true of many cases in which federal requirements under the CAA were held to preempt contrary state laws, including previous cases in which states attempted to eliminate their I/M programs through legislative action without EPA approval. *See Sweat v. Hull*, 200 F. Supp. 2d 1162, 1164 (D. Ariz. 2001); *Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920, 924 (W.D. Ky. 2004). Here, the provisions of HB2 repealing the State's I/M program "must yield" and have no force or effect for so long as that conflict persists. *See NEA-N.H. v. N.H. Att'y Gen.*, No. 25-cv-293-LM, 2025 WL 2807652, *19 (D.N.H. Apr. 5, 2021).

For Defendants' benefit, Gordon-Darby respectfully urges the Court to confirm in clear and explicit language that the I/M program requirements of New Hampshire's federally approved SIP preempt the provisions of HB2 purporting to repeal that I/M program.

### III. Defendants Will Not Suffer Irreparable Harm Without a Stay Whereas Gordon-Darby Will Be Harmed in the Order's Absence.

The only "irreparable harm" Defendants claim from the Order is a purported harm to "state sovereignty" from being forced to implement an I/M program that is inconsistent with the State's

"domestic policy" as embodied in HB2's repeal provisions. ECF 39 at 14-15. As noted above, HB2 is preempted by federal law. Defendants have no legitimate interest in preserving or carrying out State law that conflicts with federal law, and as such their failure to identify any cognizable irreparable harm is fatal to their request for a stay. *See New Jersey*, 131 F.4th at 35.

Conversely, if the Court stays its Order Gordon-Darby will continue to suffer the same substantial harms that compelled the Court to issue its Order in the first place. *See* ECF 10-2 ¶¶ 33-42; ECF 35 at 33. These harms did not cease accruing upon termination of the Gordon-Darby NHOST contract: they include ongoing harms from reduced corporate valuation due to the loss of future business opportunities and losses associated with wind-down of the I/M program. Indeed, those harms are only now beginning to ramp up as Defendants move ahead with their suspension of the I/M program in violation of the Order. On February 13, 2026, NHDOS directed Gordon-Darby NHOST to begin complying with the termination procedures set forth in its contract, including "terminat[ing] its orders and subcontracts related to" implementation of the I/M program and "[p]roviding for return, preservation, or disposal/deletion of state property/data." Unverzagt Suppl. Decl. ¶ 38 & Ex. 9; ECF 22-3 Ex. 1, PDF pp. 55-57. Rather than stay the Order, the Court should direct Defendants to comply with the Order and minimize further harm to Gordon-Darby.

## IV.  The Public Interest Strongly Favors Keeping the Order in Effect.

As the Court has recognized, the equities strongly support keeping the Order in place to avoid further confusion and regulatory uncertainty for the public, for inspection stations, and for Gordon-Darby. ECF 44 at 3. There is little evidence that the Court's actions, including its issuance of the Order, are the source of public confusion regarding the I/M program. Indeed, vehicle inspection data suggest that vehicle owners adjusted their behavior in near-real time in response to the Court's Order. In December 2025 and the first three weeks of January 2026, inspection numbers continued their downward trajectory as compared to historical trends for the same periods in

13

anticipation of New Hampshire's termination of the I/M program on January 31, 2026. Unverzagt Suppl. Decl. ¶¶ 45-46 & Tbl. 1. But within mere days of the Court's January 27, 2026 Order, inspection volumes returned to at or near 100 percent of historical levels. *Id.* ¶ 47 & Tbl. 2.

Rather, the public confusion and regulatory uncertainty initially resulted from "New Hampshire's knowing decision to violate federal law, and its decision to publicize the I/M program's repeal despite the repeal's obvious noncompliance with the [CAA]." ECF 44 at 3. That confusion was compounded by a lack of clear and timely guidance from the State to Gordon-Darby, inspection stations, and the public regarding implementation of its planned repeal. Despite repeated outreach from Gordon-Darby and other stakeholders seeking to develop a clear communication strategy, NHDOS was unable to provide direction for months on fundamental questions such as whether emissions inspections would end at the same time as safety inspections or what steps inspection stations should take to implement the I/M program's repeal. Unverzagt Suppl. Decl. ¶¶ 6-17; *see id.* ¶ 17 (inspection station reporting in October 2025 that "we have so many customer[s] asking us questions and we know nothing").

The regulatory whiplash for the public and stakeholders only became more extreme following the State's actions in response to the Order. Rather than simply withdraw its termination of Gordon-Darby NHOST's contract, NHDOS sought the Council's approval (which, as discussed above, was not required) for a short-term extension of the contract's termination date, which the Council promptly rejected. *Id.* ¶¶ 27-33. The result was a cascade of shifting guidance to the public. Over the course of two weeks, the State: announced that the I/M program would continue running with an extended compliance deadline of April 10; then announced that it no longer had an approved vendor, without addressing whether the program remained in operation; and finally announced that the I/M program was suspended until further notice and that vehicle owners must

14

ensure their vehicles are safe to operate. *Id.* ¶¶ 37-41. All the while, Gordon-Darby and inspection stations received no guidance on how to implement the program *prior* to the Council's vote or on how to conduct an orderly wind-down *after* the Council's vote. *Id.* ¶¶ 24-26, 36, 50-52, 54. Absent clear direction, Gordon-Darby was left to voluntarily keep some inspection system functions running simply to avoid disruption, despite having no contract with the State. *Id.* ¶¶ 55-56.

Amid this regulatory chaos of their own making, Defendants ask the Court to shift the legal landscape yet again to relieve them of their obligation to comply with the Order. The Court should decline their request. Staying the Order would only create more whiplash when this Court ultimately orders Defendants to resume the program once again: Defendants are unlikely to succeed in their appeal of the Order, and in any event Gordon-Darby will almost certainly prevail on the merits of its claim in this case, with Defendants having now conceded in multiple forums that their termination of the I/M program violates the CAA. *See id.* ¶ 32; ECF 36 at 23-24. Instead, the surest way for this Court to provide certainty to the public is to: (1) keep the Order in effect; (2) direct Defendants to come into compliance with the Order as soon as possible; and (3) proceed to resolve this case on the merits.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Stay.

| | |
|---|---|
| Dated: February 17, 2026 | Respectfully submitted, |
| | GORDON-DARBY HOLDINGS, INC., |
| | By and through its attorneys, |
| | */s/ Andrew D. Knudsen* |
| Amy Manzelli (NH Bar No. 17128) | Allison D. Wood (DC Bar No. 466928) |
| Andrian Lee (NH Bar No. 277993) | Andrew D. Knudsen (DC Bar No. 1019697) |
| BCM Environmental & Land Law, PLLC | Makram B. Jaber (DC Bar No. 458718) |
| 3 Maple Street | Kirsten M. Bahnson (DC Bar No. 90028947) |
| Concord, NH 03301 | MCGUIREWOODS LLP |
| (603) 225-2585 | 888 16th Street, N.W., Suite 500 |
| manzelli@nhlandlaw.com | Washington, D.C. 20006 |
| | (202) 857-1700 |
| | awood@mcguirewoods.com |
| | aknudsen@mcguirewoods.com |
| | mjaber@mcguirewoods.com |
| | kbahnson@mcguirewoods.com |

**CERTIFICATE OF SERVICE**

I certify that on February 17, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

    */s/ Andrew D. Knudsen*
    ANDREW D. KNUDSEN