UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Gordon-Darby Holdings, Inc.</u>

     v.

<u>NH Department of Safety,</u>
<u>Commissioner et al</u>

Civil No. 25-cv-508-LM-AJ
Opinion No. 2026 DNH 014 P

**O R D E R**

This court issued a preliminary injunction enjoining the Commissioners "from taking or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of" New Hampshire's motor vehicle inspection and maintenance program ("I/M program") as contained in the State Implementation Plan ("SIP") approved by the EPA, and ordering them "to take all steps necessary to resume and ensure the continued implementation and enforcement of" that program. Doc. no. 35 at 43-44. After the injunction issued, the Commissioners failed to prevent the State's contract with its I/M program vendor from terminating and have publicly announced that the program is indefinitely suspended.

The Commissioners now seek to stay, or pause, the injunction while they appeal it. Doc. no. 39. They contend that they have exhausted all available measures to implement the I/M program. However, apart from asking the Executive Council to amend the termination date of the vendor's contract, it is unclear what, if anything, the Commissioners have done to resume the I/M program. To the contrary, the Commissioners now tell the court that, despite the preliminary

injunction, they lack legal authority to secure a new vendor or otherwise carry out the I/M program.

The requested stay is denied. The Commissioners have legal authority to comply with the preliminary injunction and must "take all steps necessary to resume and ensure the continued implementation and enforcement of" New Hampshire's I/M program as contained in its SIP. Doc. no. 35 at 44.

## STANDARD OF REVIEW

A stay pending appeal is an "extraordinary" form of relief. Rhode Island v. Trump, 155 F.4th 35, 41 (1st Cir. 2025) (quoting Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 68 (1st Cir. 2025)). Such relief constitutes an "intrusion into the ordinary processes of administration and judicial review," and is never granted as "a matter of right." Id. (quoting New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025)). To obtain a stay, the movant must: "(1) make a 'strong showing that they are likely to succeed on the merits' in their appeal; (2) show that they 'will be irreparably injured absent a stay'; (3) show that 'issuance of the stay will not substantially injure the other parties interested in the proceeding'; and (4) show that the stay would serve 'the public interest.'" New York, 133 F.4th at 65 (brackets omitted) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)). "The sine qua non" of this standard "is whether the movants are likely to succeed on the merits." Acevedo-García v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir. 2002) (brackets omitted) (quoting Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).

**BACKGROUND**

I.    <u>Background Prior to Preliminary Injunction Order</u>

The court set forth the statutory and regulatory background necessary to understand the instant dispute, as well as a description of New Hampshire's I/M program, in its order granting the preliminary injunction. <u>See</u> doc. no. 35 at 2-11. The court will summarize that information here, rather than repeat it verbatim.

The Clean Air Act requires each state to submit to the EPA a "State Implementation Plan," or "SIP." 42 U.S.C. § 7410(a)(1). A SIP must include enforceable measures to achieve compliance with national air-quality standards set by the EPA. Id. § 7410(a)(2). Once the EPA approves a state's SIP, the SIP becomes incorporated into federal law. Conservation L. Found., Inc. v. Acad. Express, LLC, 129 F.4th 78, 83 (1st Cir. 2025). A state may not modify its SIP without the EPA's approval. Gen. Motors Corp. v. United States, 496 U.S. 530, 540 (1990). Thus, once the EPA approves a state's SIP, federal law requires the state to adhere to it. A state cannot unilaterally elect, through legislation or otherwise, to discontinue abiding by its SIP.

The Clean Air Act requires New Hampshire's SIP to contain an I/M program. Doc. no. 35 at 4-6; <u>see also</u> 89 Fed. Reg. 33232, 33233 (Apr. 29, 2024) (EPA final rule "incorporating New Hampshire's I/M program regulation, [N.H. Admin. R.] Saf-C 3200 'Official Motor Vehicle Inspection Requirements,' by reference into the New Hampshire SIP"). Federal regulations require New Hampshire to maintain sufficient legal authority and resources to administer its I/M program. 40 C.F.R.

§ 51.372. New Hampshire's I/M program requires the use of a private vendor to oversee and administer the program.

On June 27, 2025, New Hampshire's Governor signed HB2 into law. Among other things, HB2 purported to repeal or amend numerous statutory provisions that authorize and govern New Hampshire's I/M program, including the statute authorizing the New Hampshire Department of Safety ("NHDOS") to require motor vehicle inspections. See 2025 N.H. Laws §§ 141:244-:253. This legislation eliminated requirements under state law that passenger vehicles undergo annual safety and emissions inspection, but had no effect on whether those inspections continue to be required under federal law—i.e., New Hampshire's SIP or the Clean Air Act. This legislation was enacted despite clear communications to the State from both the New Hampshire Department of Environmental Services ("NHDES")—one of the defendants in this very case—as well as the EPA that a repeal of state statutory authority to administer the I/M program would violate the Clean Air Act and could lead to civil penalties, loss of federal funds, or even enforcement actions from the EPA or via a citizen suit. See doc. no. 1 at 26-31.

New Hampshire did not heed these warnings. Instead, the State enacted legislation repealing the State's statutory authority to require motor vehicle inspections. For all intents and purposes, the legislation provided that the effective date of the repeal would be January 31, 2026, regardless of whether the EPA

approved a SIP amendment discontinuing the I/M program by that time.[1] The defendants in this case have conceded that, as of January 31, 2026, New Hampshire is in violation of the Clean Air Act.

The plaintiff in this case is Gordon-Darby Holdings, Inc. ("Gordon-Darby"). Its subsidiary, Gordon-Darby NHOST, was, until recently, the vendor responsible for administering New Hampshire's I/M program. Indeed, in over twenty years, Gordon-Darby NHOST is the only vendor New Hampshire has ever contracted with to administer its I/M program, and has successfully outbid other vendors on multiple occasions. New Hampshire made no payments to Gordon-Darby NHOST pursuant to its vendor contract. Gordon-Darby NHOST's only sources of revenue are fees from individual inspection stations, which pay Gordon-Darby NHOST on a per-test basis.

Gordon-Darby NHOST's contract with New Hampshire to serve as its I/M program vendor provided that New Hampshire could terminate the contract for convenience on thirty days' written notice. On September 16, 2025, NHDOS wrote a letter to Gordon-Darby NHOST stating that New Hampshire was terminating the contract for convenience effective January 31, 2026, in light of the state-law repeal of the I/M program. NHDOS did not seek or obtain the Executive Council's approval to terminate Gordon-Darby NHOST's contract.

---

[1] NHDES submitted a SIP revision proposal to the EPA on December 24, 2025, that would abolish any requirement under federal law for New Hampshire to maintain an I/M program. The EPA has not acted on NHDES's submissions.

State officials engaged in outreach efforts informing the public and licensed inspection stations that motor vehicle inspections would no longer be required after January 31. There was also substantial media coverage of the state-law repeal of the I/M program.[2] Although the repeal did not take effect until the end of January 2026 and motorists were still required under state law to comply with inspection requirements until that time, motor vehicle inspection rates dropped precipitously after HB2's passage. Inspections were 24% lower in October 2025 than historical norms, 33% lower in November 2025, and 41% lower in December 2025. See doc. no. 46-1 at 13-14. Inspection rates fell off a cliff in January 2026, with weekly inspection levels down by as much as 70%.[3] See id. at 14.

II.    Developments After the Preliminary Injunction

This court issued its preliminary injunction on January 27, 2026. The injunction applies to the Commissioners of NHDOS and NHDES, as well as "their agents, employees, representatives, successors, and any other person acting directly or in concert with them." Doc. no. 35 at 43. The court enjoined such persons "from taking any action or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of the State of New Hampshire's vehicle inspection and maintenance program" as codified in New Hampshire's SIP, "unless and until

_____

[2] See, e.g., NHPR, Can I skip car inspections now? And other questions you might have about NH's new law. (Sept. 22, 2025), https://www.nhpr.org/nh-news/2025-09-22/car-inspections-vehicle-registration-new-hampshire-law-sticker-penalty-annual-mandate-auto-truck.

[3] Inspection rates rebounded after this court issued its preliminary injunction on January 27, 2026. See doc. no. 46-1 at 15.

the United States Environmental Protection Agency grants final approval of a revised [SIP] removing or otherwise amending that vehicle inspection program." Id. at 43-44. The court also ordered such persons "to take all steps necessary to ensure the continued implementation and enforcement of the State of New Hampshire's vehicle inspection and maintenance program," as codified in New Hampshire's SIP. Id.

The injunction was met with hostility by New Hampshire officials and politicians. The Majority Leader for the New Hampshire House of Representatives said the injunction "spit in the face of Granite Staters and New Hampshire State Law." Paul Feely, Federal judge orders vehicle inspections to continue, New Hampshire Union Leader, Jan. 29, 2026. Another representative issued a statement calling the injunction "a direct attack on the will of the people" and vowing that this court "will not be allowed to override" the repeal. Id. Yet another legislator stated to the press: "I wouldn't tell anybody they should break the law, but I'm certainly not going to get an inspection." Rick Green, State looks to defy feds with $1 car inspection stickers, Keene Sentinel, Jan. 30, 2026.

The Executive Council is responsible for approving state contracts that require "[t]he expenditure of any moneys appropriated or otherwise provided to carry on the work of any department of the state government." RSA 4:15. After this court issued its preliminary injunction, an Executive Councilor issued a public statement. See Paula Tracy, State Extends Vehicle Inspections for Several Months

While Appealing Court Order, InDepthNH.org, Jan. 30, 2026.[4] The Councilor stated that a "federal judge doesn't have the authority to force the Executive Council to spend taxpayer money," and that "not one dollar leaves the Treasury without Executive Council approval."[5] Id. He further stated that "Gordon-Darby can wave their court order around all they want," but that the Council "will have something to say" about the notion that Gordon-Darby would continue to administer New Hampshire's I/M program. Id. According to the Councilor, "Gordon-Darby made its choice when it weaponized the legal system against New Hampshire," and "[t]he Executive Council has a duty to protect taxpayers from" Gordon-Darby. Damien Fisher, Judge Throws Wrench in Inspection Repeal, NHGOP Hits the Gas, NH Journal, Jan. 28, 2026.[6] The Councilor called on the Governor to hold an emergency meeting of the Executive Council.

On January 30, NHDOS sent Gordon-Darby a letter. The letter stated that, "in an effort to comply with the Court's Order," NHDOS "intends to seek authority to modify the effective date of" the termination of Gordon-Darby NHOST's contract. Doc. no. 46-1 at 25. The letter further stated that NHDOS "understands such an

---

[4]    Available    at:    https://indepthnh.org/2026/01/30/state-extends-vehicle-inspections-for-several-months-while-appealing-court-order/.

[5] Again, Gordon-Darby NHOST's contract did not involve the expenditure of any moneys from New Hampshire's treasury, and rescinding NHDOS's termination of Gordon-Darby's contract would not require any payments to Gordon-Darby NHOST from New Hampshire.

[6]    Available    at:    https://nhjournal.com/judge-throws-wrench-in-inspection-repeal-nhgop-hits-the-gas/.

extension requires the approval of the New Hampshire Governor and Executive Council," and that NHDOS would seek the Governor's and Council's "approval of an extension in the near future." Id. The letter does not state the basis for NHDOS's understanding that the Council's approval was necessary to modify the contract's termination date or rescind the termination.

Additionally, NHDOS's January 30 letter stated that "the State will be announcing that the [I/M program] will remain in effect after January 31, 2026, until further notice." Id. at 26. The letter authorized Gordon-Darby NHOST to "continue to operate the State's [I/M] program and continue to work with licensed inspection stations" after January 31 "until such time that the Governor and Council votes on [NHDOS's] request to revise the termination date." Id.

That same date, NHDOS and the New Hampshire Attorney General issued a joint press release. The press release stated that, although the I/M program would continue after January 31, NHDOS would not be requiring any vehicle with an expired inspection sticker to obtain a new one until April "due to the public's reasonable expectation that the program was ending on January 31, 2026." Id. at 28.

On February 3, NHDOS submitted a formal request to the Governor and Executive Council. The request sought "retroactive authorization to amend" NHDOS's September 2025 letter to Gordon-Darby NHOST, which notified Gordon-Darby NHOST of the State's exercise of its right to terminate the contract for convenience. Id. at 33. NHDOS asked for the Council's authorization to amend the

letter "by extending the termination date by 60 days from January 31, 2026 to April 1, 2026." Id.

On February 4, the Governor and Executive Council held a meeting to consider NHDOS's request. Councilors posed questions to the Commissioner of NHDOS and the Attorney General at that meeting. The Attorney General stated that, in light of the preliminary injunction, NHDOS believed it was "necessary" to seek to extend the termination date of Gordon-Darby NHOST's contract "because, in the short-term, we really don't think the program can run without the contract with Gordon-Darby."[7] The Attorney General explained that, although the preliminary injunction does not require the State to contract with any particular vendor, the program cannot operate without a vendor, and Gordon-Darby was the only vendor able to immediately begin administering the program. He also explained that, if New Hampshire does not have a vendor, the State will be out of compliance with the Clean Air Act and subject to substantial civil penalties and loss of highway funding.

The Council did not follow the advice of the New Hampshire Attorney General. The Council denied NHDOS's request to amend NHDOS's September 2025 letter terminating Gordon-Darby NHOST's contract.

Within hours of the Council's February 4 vote, NHDOS sent Gordon-Darby NHOST a letter informing Gordon-Darby NHOST of the Council's vote. "As a

---

[7] An audio recording of the Executive Council's meeting is available at: https://www.sos.nh.gov/administration/governor-executive-council/meetings.

result" of that vote, NHDOS stated that Gordon-Darby NHOST's contract "has been terminated effective January 31, 2026 and [NHDOS] does not have authority to authorize Gordon-Darby to continue operating the State's vehicle inspection program." Doc. no. 46-1 at 37.

Also on February 4, NHDOS and the Attorney General issued another press release. Id. at 40. The press release stated that, in light of the Council's vote, "the State currently does not have an approved vendor to operate the State's vehicle inspection program." Id. It further stated that "the public is reminded that enforcement of the inspection program has been suspended through April 10, 2026, and additional regulatory flexibility will be provided if necessary." Id.

On February 13, NHDOS and the Attorney General issued another press release "providing a further update on the state's vehicle inspection program in response to the federal District Court's January 27, 2026 preliminary injunction order." Id. at 44. Despite the court's order to take all necessary steps to maintain the program, the press release announced that "[t]he vehicle inspection program is suspended until further notice," "[i]nspection stations will no longer be authorized to issue state inspection stickers," and "vehicles will not be required to obtain an annual state inspection." Id.

That same day, NHDOS released a letter to inspection stations on its website. The letter set forth that, "[a]s a result of the repeal of authorizing legislation and the Executive Council's denial of an extension to the current inspection program vendor, [NHDOS] is suspending the State's vehicle inspection

program until further notice." Id. at 46. It further stated that, "[e]ffective immediately, inspection stations must cease to offer 'State' inspections and shall not issue state inspection stickers." Id. The letter directed that inspection stations "must return any used and unused inspection stickers purchased directly from the Division of Motor Vehicles by April 30, 2026." Id.

## DISCUSSION

As noted, to obtain a stay of the preliminary injunction pending appeal, the Commissioners must show: (1) a strong likelihood they will succeed on the merits on appeal; (2) that they will be irreparably injured without a stay; (3) that Gordon-Darby will not be substantially injured by a stay; and (4) that a stay is in the public interest. New York, 133 F.4th at 65. As likelihood of success on the merits on appeal is the most important factor, the court begins there. See Acevedo-García, 296 F.3d at 16.

I.    The Commissioners Fail to Show a Strong Likelihood They Will Succeed on Appeal

Although the Commissioners' motion for a stay does not expressly raise the doctrine of mootness, mootness is the strongest argument for a stay.[8] While the court's preliminary injunction order found a substantial likelihood that Gordon-Darby had standing, the doctrine of mootness recognizes that developments after a

---

[8] In its order granting the Commissioners' motion for expedited consideration of their stay motion, the court asked the parties' briefing to address the mootness issue. See doc. no. 44 at 1-2. The court is obligated to assure itself of its jurisdiction regardless of the arguments raised by the parties. Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010).

lawsuit begins may divest a court of jurisdiction that was extant at a previous stage of the case. Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 191-92 (1st Cir. 2022). "[A] suit becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. at 191 (brackets omitted) (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)). "A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury." Id. (quoting Gulf of Me. Fishermen's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002)). "Thus, if an event occurs while a case is pending that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the action must be dismissed." Id. at 192 (brackets and ellipsis omitted) (quoting Fishermen's All., 292 F.3d at 88).

In granting Gordon-Darby's preliminary injunction motion, the court found a substantial likelihood that the Commissioners' implementation of the repeal of the I/M program would cause a significant monetary injury to Gordon-Darby's subsidiary. The court also found it substantially likely that a preliminary injunction would redress that injury because the State would likely reinstate Gordon-Darby NHOST's contract if ordered by this court to continue administering the I/M program. On these bases, the court found a substantial likelihood of standing. Now, however, the Executive Council has denied the Commissioners' request to retroactively amend NHDOS's September 2025 letter to extend the termination date of Gordon-Darby NHOST's contract. This raised the prospect, in the court's mind, that it is not possible to grant Gordon-Darby effectual relief in this case.

13

Despite this concern, the court does not find that the Commissioners are likely to succeed on appeal in arguing that the Executive Council's denial moots the case. In addition to the direct financial harm caused to Gordon-Darby from the I/M program's repeal, the repeal also results in Gordon-Darby being unable to bid on future contracts to serve as the vendor for New Hampshire's I/M program. There is a "well-established line of cases holding that loss of a non-illusory opportunity to pursue a benefit constitutes injury in fact." Ecosystem Inv. Partners v. Crosby Dredging, L.L.C., 729 F. App'x 287, 292 (5th Cir. 2018). This is the case "even though the plaintiff may not be able to show that it was certain to receive [the] benefit had it been accorded the lost opportunity" to pursue it. Teton Hist. Aviation Found. v. U.S. Dep't of Def., 785 F.3d 719, 724 (D.C. Cir. 2015) (emphasis omitted) (quoting CC Distribs., Inc. v. United States, 883 F.2d 146, 150 (D.C. Cir. 1989)). "This rule originates from the equal-protection context, where the Supreme Court recognizes injury in fact based on a denial of an equal opportunity to compete—say, for housing which the plaintiff would otherwise be qualified for, for every spot in a medical-school class, or on an equal basis for government contracts." Crosby Dredging, 729 F. App'x at 292-93 (citations omitted). Recognizing that "[t]his rationale extends beyond equal-protection claims," courts have applied it in a variety of factual circumstances. Id. at 293; see, e.g., Washington v. FEMA, Civ. No. 25-12006-RGS, 2025 WL 3551751, at *3 (D. Mass. Dec. 11, 2025) (loss of opportunity to pursue federal funding for disaster mitigation measures constituted injury in fact).

As discussed in the preliminary injunction order, New Hampshire's I/M program requires it to retain a vendor to administer the program. To obtain a new vendor, the state will likely employ a competitive bidding process, as it has done previously. See RSA 21-I:11, I(a)(2). Gordon-Darby will have the opportunity to submit bids for that contract. Moreover, Gordon-Darby has successfully outbid other vendors for New Hampshire's contract on multiple occasions, is the only I/M program vendor New Hampshire has ever had, and has all the resources necessary to immediately begin acting as the I/M vendor. And given the state's efforts to repeal the program, it is unlikely the state could attract other bidders.[9] Thus, the preliminary injunction affords Gordon-Darby a non-illusory opportunity to pursue a benefit, satisfying the court's justiciability concerns.[10]

---

[9] The Attorney General acknowledged at the February 4 meeting of the Executive Council that the state would likely encounter difficulties attracting other vendors to submit bids.

[10] Gordon-Darby also argues in its objection to the Commissioners' stay motion that, even if the case is moot, an exception akin to the voluntary-cessation exception should apply because the Commissioners manufactured the case's mootness through noncompliance with the preliminary injunction. The court need not consider this argument given its conclusion that the case is not moot. However, while the court has no reason to doubt that the Commissioners acted in good faith in seeking the Executive Council's approval to amend the termination letter, the court does not find, at this time, that the Council's approval was necessary to rescind or amend the termination letter. After all, NHDOS issued the termination letter without the Council's approval, and the contract does not involve any payments from the public treasury to Gordon-Darby NHOST. Moreover, NHDOS unilaterally extended the termination date from January 31 until the date of the Council meeting on February 4.

The Commissioners' remaining arguments that they are likely to succeed on the merits on appeal are largely reiterations of arguments they raised in opposing the preliminary injunction motion. The court addresses them briefly below.

The Commissioners submit that this court erred in declining to rule on the Commissioners' motion to dismiss the complaint for lack of standing prior to issuing the preliminary injunction. They assert that, in so doing, the court assumed "hypothetical jurisdiction." The court did no such thing. A court assumes hypothetical jurisdiction when it decides, without resolving a jurisdictional objection, a merits question in favor of the party that would prevail if the court found its jurisdiction to be lacking. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93 (1998). The preliminary injunction order does not fail to resolve the existence of jurisdiction. To the contrary, it finds that Gordon-Darby showed a substantial likelihood that this court has jurisdiction.[11]

Next, the Commissioners argue that the preliminary injunction improperly requires them to take actions beyond their authority. That is so, they argue, because HB2 repeals their statutory authority to implement the I/M program. But the court found that the provisions of HB2 repealing or amending the I/M program violate federal law because they take effect regardless of whether the EPA approves

---

[11] Even if the court ultimately concludes that the jurisdictional allegations of the complaint are not sufficient, the court will almost certainly permit Gordon-Darby to amend its complaint to cure any insufficiencies given its conclusion that Gordon-Darby has already demonstrated a substantial likelihood of standing. See Democracy Rising PA v. Celluci, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009) (explaining that, "[i]f the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal" for lack of jurisdiction).

a SIP amendment discontinuing the program. "[T]o the extent that . . . state laws directly conflict with the requirements of federal law, the Supremacy Clause requires that [the state laws] be given no effect." New Hampshire v. Ramsey, 366 F.3d 1, 30 (1st Cir. 2004). The portions of HB2 that purport to repeal or amend the I/M program as contained in New Hampshire's SIP are without effect unless and until the EPA approves an amendment discontinuing the I/M program.

The Commissioners also argue that the court erred in finding standing. Their arguments regarding injury in fact and causation mirror the arguments the court previously considered and rejected; the court rejects them again for the reasons stated in its preliminary injunction order. As for redressability, the Commissioners contend that this court failed to consider that the Commissioners could not unilaterally reinstate Gordon-Darby's contract but instead needed to seek the Executive Council's approval. For this reason, the Commissioners submit that this court erred in finding a substantial likelihood that the preliminary injunction would cause reinstatement of Gordon-Darby NHOST's contract. The court disagrees.

As noted above, the court is not convinced, at this juncture, that Executive Council approval was necessary to rescind or amend NHDOS's September 2025 termination letter.[12] But even if the Council's approval was necessary, the necessity

---

[12] The Commissioners assert that Gordon-Darby is judicially estopped from raising this argument. The court disagrees. Gordon-Darby argued in support of its preliminary injunction motion that, to obtain a new vendor, the State would need to employ a competitive bidding process and secure the Council's approval of a new contract. See doc. no. 28 at 8. That is a different argument from the requirements to rescind the termination of the contract of New Hampshire's existing vendor.

of their approval does not mean that rescission of the contract's termination was unlikely to result from the preliminary injunction. See Diamond Alt. Energy, LLC v. EPA, 606 U.S. 100, 124 (2025) (explaining that, to satisfy redressability prong of standing, plaintiff need only show that relief will likely redress their injury; certainty of redress is not required). To the contrary, the Commissioners did seek to reinstate Gordon-Darby NHOST's contract, and the Attorney General told the Executive Council that they believed the preliminary injunction required the Commissioners to do so. As the Commissioners note, their efforts were nearly successful: the Council declined their request to amend the termination letter by a 3-2 vote. What is more, the Attorney General told the Council in no uncertain terms at the February 4 hearing that New Hampshire would be without an I/M program vendor unless the Council extended the termination date of Gordon-Darby NHOST's contract, and that the absence of a vendor would place New Hampshire in immediate violation of the Clean Air Act. To the extent this court did not predict that New Hampshire officials would act in knowing violation of federal law, the court perceives no error in finding it likely that state officials would comply with the law as explained to them by New Hampshire's chief law enforcement officer.

Next, the Commissioners argue that the court erred in concluding that Gordon-Darby will likely be able to prove at trial that the Commissioners are "in violation of" the Clean Air Act. 42 U.S.C. § 7604(a)(1). Essentially, the Commissioners disagree with the court's interpretation of Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987), and contend that a

plaintiff may not commence a citizen suit under the Clean Air Act until sixty days have passed from the time that they have actually begun violating the Act.[13] The court is not persuaded by the Commissioners' arguments for the reasons stated in its preliminary injunction order. The court is not powerless to stop impending and certain illegality before it occurs. See Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp., 807 F.2d 1089, 1093 (1st Cir. 1986) (holding that a defendant is "in violation" of the Clean Water Act when they have engaged in conduct "justifying an injunction").

The Commissioners next contend they are likely to succeed on appeal in demonstrating that the court erred in finding a substantial likelihood of irreparable injury to Gordon-Darby absent a preliminary injunction. Although the Commissioners do not dispute the accuracy of the court's conclusion that Gordon-Darby stands to suffer substantial economic harm which cannot be remedied by a damages award, they contend that this conclusion means Gordon-Darby has no "legally cognizable Article III injury." Doc. no. 39 at 13. The Commissioners are incorrect. Gordon-Darby's inability to obtain a damages award to remedy its substantial economic injury does not mean it suffers no injury absent an injunction.

---

[13] The Commissioners also argue that the court erred in concluding in the alternative that the Commissioners had violated New Hampshire's SIP prior to the commencement of this action by taking actions to wind down the I/M program. The court disagrees with the Commissioners' contentions, but the court need not further address them in light of its construction of Gwaltney and its progeny that a defendant's status may be that of someone in violation of the Clean Air Act before the time they have actually begun violating the Act.

To the contrary, the lack of an adequate remedy at law demonstrates the necessity of the injunction to prevent Gordon-Darby's harm.

Finally, the Commissioners argue that the court erred in ordering them to continue administering components of the I/M program that are not contained in New Hampshire's SIP.[14] The court did no such thing. The preliminary injunction enjoins the Commissioners from terminating or ceasing to implement or enforce the I/M program "as codified in New Hampshire's federally approved state implementation plan" and ordered them to "take all steps necessary to resume and ensure the continued implementation and enforcement" of the I/M program "as codified in New Hampshire's federally approved state implementation plan." Doc. no. 35 at 43-44. While the Commissioners may conclude that the only practical way to comply with the court's order is to continue administering aspects of the I/M program that are not contained in New Hampshire's SIP, that does not mean that the court has ordered the Commissioners to do anything other than continue to implement the I/M program as contained in the SIP.

II.    The Commissioners Fail to Show That a Stay Is in the Public Interest

Although the Commissioners' failure to a show a likelihood of success on appeal is fatal to their motion for a stay, see Acevedo-García, 296 F.3d at 16, the

---

[14] The Commissioners also argue that the court erred in balancing the equities and considering the public interest. Their arguments are repetitive of contentions raised in objecting to Gordon-Darby's preliminary injunction motion and do not persuade the court that it erred.

court pauses to address whether a stay of the preliminary injunction is in the public interest. It is not.

The Commissioners' reply brief states that, following the Executive Council's decision not to authorize an amendment of the termination date of Gordon-Darby NHOST's contract, they concluded that they lack the ability or legal authority to obtain a replacement vendor for New Hampshire's I/M program. See doc. no. 47 at 7-8. In light of the Commissioners' representations, the court is concerned that the Commissioners are currently taking no action to implement New Hampshire's I/M program as contained in its SIP, and that they have no plans to begin doing so. Despite this court ordering the Commissioners to continue implementing and administering the I/M program, NHDOS has announced to the public that the program is indefinitely suspended and have directed inspection stations to return their unused inspection stickers. Other than requesting that the Executive Council amend the termination date of Gordon-Darby NHOST's contract, it is unclear what, if anything, the Commissioners are doing to carry out their obligations under the preliminary injunction to continue administering the I/M program.

The State of New Hampshire was made aware by federal and state officials that repealing the I/M program without first obtaining the EPA's approval would violate the Clean Air Act. See doc. no. 1 at 26-31. The State repealed the I/M program anyway. The State then began informing the public that motor vehicle inspections would no longer be required as of February 1, despite knowing that inspections would still be required under federal law. Then, after this court issued

its preliminary injunction specifically ordering the Commissioners to continue carrying out the I/M program, the State issued public guidance that they would not begin requiring motorists to obtain inspections for several months, before later issuing subsequent guidance that inspections will not be required at all.

The State's actions have generated substantial public confusion regarding the requirements and legal status of the I/M program. To be clear: the court does not view the I/M program as indefinitely suspended. The Commissioners are subject to a court order enjoining them "from taking or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of the" I/M program as contained in New Hampshire's SIP, and requiring them "to take all steps necessary to resume and ensure the continued implementation and enforcement of" that program. Doc. no. 35 at 43-44. Staying the injunction would only result in greater confusion regarding the requirements and status of the I/M program and would foster disrespect for court orders and the rule of law.

## CONCLUSION

For these reasons, the Commissioners' motion to stay the preliminary injunction pending appeal (doc. no. 39) is denied.

SO ORDERED.

Landya McCafferty
United States District Judge

February 25, 2026

cc:    Counsel of Record