# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GORDON-DARBY HOLDINGS, INC.,<br><br> *Plaintiff*,<br><br>v.<br><br>NEW HAMPSHIRE DEPARTMENT OF SAFETY, COMMISSIONER, et al.,<br><br> *Defendants*. | Civil Action No. 25-cv-00508-LM-AJ |

## PLAINTIFF GORDON-DARBY HOLDINGS, INC.'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com

Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
Makram B. Jaber (DC Bar No. 458718)
Kirsten M. Bahnson (DC Bar No. 90028947)
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com
mjaber@mcguirewoods.com
kbahnson@mcguirewoods.com

*Counsel for Plaintiff Gordon-Darby Holdings, Inc.*

March 13, 2026

Plaintiff Gordon-Darby Holdings, Inc. ("Gordon-Darby") hereby moves for issuance of an order requiring Defendants, New Hampshire Department of Safety ("NHDOS") Commissioner Robert Quinn and New Hampshire Department of Environmental Services ("NHDES") Commissioner Robert Scott, to show cause why they should not be held in contempt of Court. Defendants are currently in violation of this Court's January 27, 2026 preliminary injunction (the "Injunction") requiring them to continue implementing and enforcing the State's federally mandated motor vehicle inspection and maintenance ("I/M") program. *See* ECF 35 at 43-44. Gordon-Darby respectfully requests that the Court adjudge Defendants to be in contempt and impose such civil sanctions as are necessary to bring them into compliance with the Injunction.

Over six weeks have passed since this Court ordered Defendants to "resume and ensure the continued implementation and enforcement of the State of New Hampshire's vehicle inspection and maintenance program." ECF 35 at 44. And over two weeks have passed since the Court subsequently expressed its "concern[] that the Commissioners are currently taking no action to implement New Hampshire's I/M program as contained in its [state implementation plan ("SIP")], and that they have no plans to begin doing so." ECF 49 at 21. Yet as of the filing of this Motion, the I/M program remains indefinitely suspended, inspection stations' authority to conduct inspections has not been restored, and the State is still without a vendor to administer the program.

The most the State can muster is a vague plan to issue a request for proposals ("RFP") for a new vendor at some unspecified point in the future. *See* Decl. of Andrew Knudsen (attached as Ex. 1). The State cannot say when it plans to issue an RFP, how long the process of finding and retaining a vendor will require, what steps it will take to promptly resume the program in the interim, how it will restore inspection stations' role in the I/M program, or how and when it will communicate any of these steps to the public. Indeed, the State was unwilling to confirm whether

it would even *enter into a vendor contract with the winning bidder* at the conclusion of its RFP process. This is not a plan for compliance with the Injunction; it is a plan for indefinite delay and continued suspension of the SIP's I/M program.

The Clean Air Act ("CAA"), the Injunction, and respect for the lawful orders of this Court demand more. Accordingly, Gordon-Darby respectfully requests that the Court require Defendants to show cause why they should not be adjudged in contempt of the Injunction. Upon hearing Defendants' response, the Court should adjudge them to be in contempt and impose civil sanctions upon Defendants to ensure that they resume implementation of the I/M program without further delay. At a minimum, Gordon-Darby respectfully requests that these sanctions include: (1) a series of escalating fines to be imposed if Defendants do not resume full implementation and enforcement of the program by a date set by the Court; and (2) reimbursement of Gordon-Darby's costs and attorneys' fees incurred in securing Defendants' compliance with the Injunction.

**BACKGROUND**

Pursuant to multiple provisions of the federal CAA, New Hampshire must implement an I/M program for motor vehicles as part of its SIP. *See* ECF 10-1 at 2, 3. To satisfy these requirements, New Hampshire has adopted a statewide I/M program in its SIP, which is described in detail in Gordon-Darby's Expedited Motion for Preliminary Injunction. *See id.* at 3-5; 40 C.F.R. § 52.1520; *see also* ECF 10-3 (2011 SIP revision narrative submitted by NHDES). By virtue of its inclusion in New Hampshire's SIP, the program's requirements have been incorporated into federal law and are federally enforceable. *See General Motors Corp. v. United States*, 496 U.S. 530, 540 (1990). New Hampshire's program is structured such that it cannot operate without the services of a vendor retained to administer the I/M program and provide equipment, software, and other support services to inspection stations and the State. ECF 10-1 at 5-6. Gordon-Darby's subsidiary,

Gordon-Darby NHOST Services, Inc., served as the State's vendor from the program's inception until February 4, 2026. ECF 10-2 ¶ 9; ECF 46-1 ¶ 21-22, 24, 34.

In June 2025, New Hampshire enacted legislation known as House Bill 2 ("HB2") purporting to eliminate the State's I/M program. 2025 N.H. Laws Ch. 141, §§ 141:244-141:256. Prior to HB2's enactment, both NHDES and the U.S. Environmental Protection Agency ("EPA") explicitly warned that eliminating the I/M program without first obtaining EPA's approval would violate the CAA and subject the State to potential administrative sanctions and liability under the CAA's citizen suit provision. *See* ECF 10-2 Exs. 1-2; ECF 1 Ex. 1 (attaching EPA letter). Nonetheless, New Hampshire proceeded to enact provisions in HB2 repealing the key statutory authorities underlying the I/M program. 2025 N.H. Laws Ch. 141, §141:253. These repeal provisions all take effect regardless of whether EPA approves removal of the I/M program from New Hampshire's SIP, with most taking effect on January 31, 2026. *Id.* § 141:256.

Pursuant to HB2, Defendants began terminating the I/M program. *See* ECF 10-1 at 7; ECF 10-2 ¶¶ 19-24; ECF 46-1 ¶¶ 6-19. On October 7, 2025, Gordon-Darby provided Defendants with notice of their intent to commence a civil suit under the CAA. ECF 1 Ex. 1. Gordon-Darby commenced this litigation on December 8, 2025, and moved the next day for entry of a preliminary injunction requiring Defendants to continue implementing the I/M program. ECF 1; ECF 10.

On January 27, 2026, this Court granted Gordon-Darby's motion for preliminary injunction. The Injunction prohibits Defendants from "taking or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of the State of New Hampshire's vehicle [I/M] program, as codified in New Hampshire's federally approved [SIP], unless and until [EPA] grants final approval of a revised [SIP] removing or otherwise amending that [I/M] program." ECF 35 at 43-44. The Injunction also orders Defendants to "take all steps necessary to

3

resume and ensure the continued implementation and enforcement of the State of New Hampshire's vehicle [I/M] program, as codified in New Hampshire's federally approved [SIP]." *Id.* at 44. The Injunction took effect "immediately" on January 27, 2026, and remains in effect. *Id.*

The Court issued its Injunction before Defendants completed their termination of the I/M program on January 31, 2026. Nonetheless, Defendants did not take the primary step necessary for the program's continued implementation: ensuring that an I/M program vendor would be in place and able to administer the program after January 31. As this Court has recognized, NHDOS could have simply withdrawn its prior notice of termination of the existing vendor contract without seeking approval from any other State actor, allowing for seamless and continuous operation of the program. ECF 49 at 15 n.10. Instead, NHDOS waited until *after* January 31, 2026, before submitting a *request* to the New Hampshire Executive Council to retroactively authorize a *limited 60-day extension* of the vendor contract's termination date.[1] ECF 46-1 ¶ 27. New Hampshire also announced to the public that the I/M program would continue after January 31 but that enforcement would be paused, with NHDOS extending the inspection deadline for any vehicle with an inspection expiring prior to March 2026 until April 10, 2026. ECF 46-1 ¶ 23.

On February 4, 2026, the Executive Council denied NHDOS's request. ECF 46-1 ¶¶ 28, 33. That same day, NHDOS notified Gordon-Darby NHOST that its contract as the I/M program vendor "has been terminated effective January 31, 2026, and the Department does not have authority to authorize Gordon-Darby to continue operating the State's vehicle inspection program." ECF 46-1 ¶ 34. The State also issued a press release announcing that NHDOS no longer

---

[1] NHDOS did authorize Gordon-Darby NHOST to continue serving as the State's vendor "until such time that the Governor and Council votes on the Department's request" to extend the contract's termination date. ECF 46-1 ¶¶ 21-22, 24. As a result, Gordon-Darby NHOST continued administering the program from January 31 to February 4, 2026.

4

had an approved I/M program vendor and reiterating that the program's enforcement was suspended through April 10, 2026. ECF 46-1 ¶ 35.

On February 13, 2026, the State announced to the public that the I/M program in its entirety "is suspended until further notice" and that "vehicles will not be required to obtain an annual state inspection at this time." ECF 46-1 ¶ 39. The press release also stated that inspection stations "will no longer be authorized to issue state inspection stickers." *Id.* On the same day, the NHDOS Division of Motor Vehicles ("DMV") informed inspection stations that they "are no longer authorized to perform State mandated motor vehicle inspections" and "must cease to offer 'State' inspections and shall not issue state inspection stickers." ECF 46-1 ¶ 40. DMV also directed inspection stations to return any used and unused inspection stickers purchased from the State by April 30, 2026. *Id.* Finally, NHDOS sent a letter to Gordon-Darby NHOST confirming that the company is no longer authorized to operate the I/M program and directing it to "comply with the termination procedures" set forth in its vendor contract. ECF 46-1 ¶ 37-38.

Meanwhile, on February 25, 2026, this Court denied a motion by Defendants to stay the Injunction pending appeal. ECF 49. In its order, the Court recognized that the State had suspended the I/M program and expressed its concern that Defendants "are currently taking no action to implement New Hampshire's I/M program as contained in its SIP, and that they have no plans to begin doing so." ECF 49 at 21. The Court noted that aside from requesting a limited extension of the vendor contract, "it is unclear what, if anything, the Commissioners are doing to carry out their obligations under the preliminary injunction to continue administering the I/M program." *Id.* The Court reminded Defendants of their obligations under the Injunction and made clear that "the court does not view the I/M program as indefinitely suspended." ECF 49 at 22.

5

Despite the Court's clear admonishment, New Hampshire's I/M program remains suspended as of the date of this filing. DMV's website continues to represent that the I/M program is "suspended until further notice." *See* N.H. DMV, "Inspections & Emissions) (attached as Ex. 2). The State has not provided further direction to the public or to inspection stations since its February 13, 2026 announcements, and DMV has not withdrawn its directive for inspection stations to return their inspection stickers.

Prior to seeking relief from this Court, Gordon-Darby attempted to ascertain Defendants' plan to comply with the Injunction and resume implementation of the I/M program. On February 27, 2026, Gordon-Darby's counsel requested Defendants' responses to the following questions:

1. What guidance is the State going to issue to the public on the status of the I/M program?
    a. When will this announcement be made?
    b. Does the State plan to provide any further compliance extensions beyond the April 10 date announced on January 30?
2. What steps will NHDOS take to designate a vendor to administer the I/M program?
    a. Will NHDOS utilize a competitive bidding process or pursue a sole source contract?
    b. If competitive bidding will be used, what is the anticipated timeline for issuance of an RFP and selection of a vendor?
    c. Separate from how NHDOS will retain a long-term vendor, what does NHDOS plan to do in the interim to ensure there is a vendor in place in the immediate term to administer the I/M program?
3. What direction will the State provide to inspection stations?
    a. What needs to be done to restore inspection stations' authority to carry out inspections under the State I/M program?
    b. When can inspection stations resume issuing inspection stickers?
    c. When will the State provide this guidance to inspection stations?

Ex. 1-A. One week later, on March 6, 2026, Defendants' counsel responded to these questions by stating that Defendants "are currently preparing an RFP for a new I/M program vendor." Ex. 1-B. Their response also stated that "[u]ntil such time as a new I/M vendor is retained, the I/M program will necessarily remain suspended." *Id.* Defendants did not address the majority of Gordon-Darby's questions, including possible retention of an interim vendor to administer the program in

6

the short term, any guidance to inspection stations or the public, or anticipated timelines for any of these steps. They also reiterated their position that Defendants currently lack "legal authority to fund (through mandated fees), implement and enforce the I/M program." *Id.*

That same day, Gordon-Darby replied that Defendants' answers appeared inadequate to come into compliance with the Injunction, particularly given the 6-18 months that NHDOS has taken for past I/M program RFPs, and requested additional clarification of Defendants' plans. Ex. 1-C. In particular, Gordon-Darby requested the following information:

1. What is the State's timeline for issuing an RFP for an I/M program vendor?
2. What is the State's timeline for selecting a vendor after issuing its RFP?
3. Will the State hire an interim I/M program vendor to administer the program while it solicits a vendor through the RFP process? If so, what is the State's timeline for doing so? If not, what will the State do to resume the I/M program while the RFP process is underway?
4. When and how will the State restore inspection stations' authority to conduct inspections?

*Id.* Given Defendants' comments regarding their legal authority, Gordon-Darby also asked Defendants to confirm that "at the end of any RFP process, the State will not decline to enter into a contract with the winning bidder based on a claimed lack of authority to do so." *Id.*

On March 12, 2026, Defendants replied that their original response "still stands," simply reiterating that "[t]he RFP is being prepared, subject to the reservations expressed above" as to Defendants' purported lack of authority to operate the I/M program. Ex. 1-E. The same day, Gordon-Darby responded that Defendants are violating the injunction and that absent additional assurances, including a commitment to a clear and prompt timeline for retaining a vendor and resuming the program, Gordon-Darby would seek enforcement through a motion for contempt. Ex. 1-F. Having received no such response, Gordon-Darby now files this Motion.

**STANDARD OF REVIEW**

This Court has "'inherent power to enforce compliance with its orders through civil contempt,' and it may invoke that power to 'protect the due and orderly administration of justice and maintain the authority and dignity of the court.'" *United States v. Fields*, No. 14-cr-074-01-LM, 2017 WL 4355973 (D.N.H. Sept. 22, 2017) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966), and *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 78 (1st Cir. 2002)) (cleaned up). A party seeking to enforce an injunction may move to "hold the offending party in contempt of the court's order." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 399 (D.R.I. 1998). The court "may issue a civil contempt order if the moving party establishes by clear and convincing evidence that the alleged contemnor violated the order despite clear and unambiguous notice of the order and the ability to comply with it." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015). The Court's factfinding is subject to clear error review, while its ultimate finding on contempt (as well as its choice of sanctions) is reviewed for abuse of discretion. *Goya Foods*, 290 F.3d at 75; *AngioDynamics*, 780 F.3d at 426.

**ARGUMENT**

**I. Defendants Should Be Adjudged in Contempt of the Injunction for Failing to Resume and Ensure the Continued Implementation of the I/M Program.**

More than six weeks ago, this Court ordered Defendants to "take all steps necessary to resume and ensure the continued implementation and enforcement of" New Hampshire's I/M program. ECF 35 at 43-44. Yet as of the date of this filing, the I/M program remains indefinitely suspended. Enforcement has been paused since January 30, 2026. The State has no vendor in place to administer the program. Inspection stations have had their authority to conduct inspections under the program revoked and remain under instructions to return inspection stickers to the State. Defendants' only plan to come into compliance with the Injunction is a vague promise to issue an

RFP for a new program vendor at some unspecified point in the future. Yet it is unclear whether Defendants will *ever* actually issue an RFP, given that they refuse to provide any timeline for doing so and apparently still deny that they have authority to operate the I/M program.

Defendants' lack of any plan to promptly resume implementing the I/M program is striking given that they already knew *over a year ago* that terminating the program without EPA approval of a revised SIP would violate the CAA and subject the State to liability under citizen enforcement suits like this one. NHDES Commissioner Scott warned the legislature of the consequences of terminating the program on February 10, 2025, and EPA reiterated those consequences on April 25, 2025. *See* ECF 1 Ex. 1. Gordon-Darby gave notice of its intent to sue on October 7, 2025, and moved for a preliminary injunction on December 9, 2025, nearly two months before the program was set for full termination. ECF 1; ECF 10. But despite this lead time, Defendants still can only offer indefinite delay while the State continues to flout its federally enforceable SIP obligations.

This Court should hold Defendants in civil contempt to prevent further foot-dragging and ensure the proper respect for federal law and this Court's lawful orders. A finding of civil contempt requires that: "(1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order." *Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r*, 665 F.3d 25, 31 (1st Cir. 2012). Because each of these elements is met here, the Court should grant Gordon-Darby's motion.

### A. Defendants Had Notice of the Injunction.

Defendants clearly had the required notice, with their counsel receiving the Injunction via the Court's ECF system. They have also sought further relief from the Injunction, *see* ECF 37 (notice of appeal), ECF 39 (motion to stay pending appeal), and discussed their obligations under the Injunction at length before the New Hampshire Executive Council, *see* ECF 46-1 ¶¶ 28-32.

9

### B. The Injunction's Requirements Are Clear and Unambiguous.

The Injunction clearly states its requirements and to whom it applies. It explicitly binds Defendants and took effect "immediately" upon issuance. ECF 35 at 43-44. And it unambiguously orders Defendants to "take all steps necessary to resume and ensure the continued implementation and enforcement of the State of New Hampshire's vehicle inspection and maintenance program, as codified in New Hampshire's federally approved state implementation plan." *Id.*

Defendants cannot plausibly claim that they did not understand what the Injunction required of them, particularly as it relates to the need to maintain the services of a vendor to continue administering the I/M program after January 31, 2026. The need to have a vendor in place for the program to continue operating after January 31 was a key focus of the redressability analysis in the parties' briefing, at oral argument, and in the Injunction itself. ECF 22-1 at 8-9; ECF 28 at 4-6; ECF 36 at 31 (recognizing a "vendor is required as a practical matter"); ECF 49 at 18-20. The State has also explicitly recognized the importance of maintaining an I/M program vendor for ensuring the program's continued implementation, with Attorney General Formella confirming to the New Hampshire Executive Council that without a vendor contract in place, "[w]e would be out of compliance" with the CAA. ECF 46-1 ¶ 32. Thus, Defendants were on notice that the actions "necessary to resume and ensure the continued implementation and enforcement" of the I/M program included retaining a vendor to administer the program beyond January 31.

### C. Defendants Have the Power to Comply with the Injunction.

Defendants have the authority to resume and ensure implementation of the I/M program as the Injunction requires. As the officials who oversee NHDOS and NHDES, Defendants are charged by law with the responsibility and statutory authority to administer the I/M program. *See* RSA 266:1 (authorizing NHDOS, through DMV, to require inspections); RSA 125-C:6 (charging NHDES with "[c]arrying out a program of inspection and testing of all modes of transportation");

10

RSA 125-S:3 (assigning NHDES to administer fund for I/M program activities); *see generally* ECF 10-3 (describing NHDOS role in administering I/M program). NHDOS is the State agency that contracts with a vendor to administer the I/M program. *See* ECF 22-3 Ex. 1, PDF p. 15 (listing NHDOS Commissioner Quinn as signatory on most recent vendor contract).

Defendants have argued that after January 31, 2026, they lack the statutory authority necessary to implement the I/M program because HB2 repealed the provisions of State law underlying the program. *See* ECF 39 at 4-5. But the Court's Injunction made clear that "as a matter of federal law" the I/M program "continues to be in effect under the Clean Air Act unless and until the EPA grants a SIP amendment discontinuing the program." ECF 35 at 29. It is impossible to comply with both the SIP (which requires implementation of the I/M program) and HB2 (which repeals the program), and under basic principles of conflict preemption, HB2's provisions repealing the program "must yield" and have no force or effect while that conflict persists. *See NEA-N.H. v. N.H. Att'y Gen.*, No. 25-cv-293-LM-2025 WL 2807652, *19 (D.N.H. Oct. 2, 2025).

To the extent there was any ambiguity on this point, the Court eliminated it in its subsequent ruling denying Defendants' motion to stay the Injunction. The Court explained that the Injunction "found that the provisions of HB2 repealing or amending the I/M program violate federal law because they take effect regardless of whether the EPA approves a SIP amendment discontinuing the program." ECF 49 at 16-17. Because those provisions "'directly conflict with the requirements of federal law,' … [t]he portions of HB2 that purport to repeal or amend the I/M program as contained in New Hampshire's SIP are without effect unless and until the EPA approves an amendment discontinuing the I/M program." ECF 49 at 17 (quoting *New Hampshire v. Ramsey*, 366 F.3d 1, 30 (1st Cir. 2004)). Thus, so long as New Hampshire's current SIP remains in effect, Defendants have the legal authority necessary to implement and enforce the I/M program.

11

### D. Defendants' Failure to Implement or Take Necessary Steps Towards Resuming the I/M Program Violates the Injunction.

The Court ordered Defendants to "take all steps necessary to resume and ensure the continued implementation and enforcement of" the program. ECF 35 at 44. More than six weeks later, Defendants are not complying. The I/M program is inoperative and its key operational requirements—a State-retained program vendor and authorized inspection stations—are absent, with no timeline to restore them. Given this, the Court should find Defendants in violation.

The I/M program formally has been in a state of indefinite suspension for a month, since February 13, 2026. ECF 46-1 ¶ 39. Despite this Court's admonishment, *see* ECF 49 at 22, the program remains suspended to this day. The State has provided no further direction to the public, and the DMV website continues to represent that the program "is suspended until further notice" and "vehicles will not be required to obtain an annual state inspection at this time." Ex. 2.

Defendants also revoked and have not reinstated inspection stations' authority to perform inspections under the I/M program. In a February 13, 2026 letter, DMV announced that "[e]ffective immediately, inspection stations must cease to offer 'State' inspections and shall not issue inspection stickers." ECF 46-1 ¶ 40. DMV also directed the stations to return any inspection stickers purchased directly from DMV. *Id.* Defendants have not withdrawn that letter or provided any further direction since that date, and the letter (including the command to return inspection stickers) remains posted as the operative guidance for stations on the DMV website. Ex. 2.

Finally, Defendants still have no I/M program vendor to administer the program as the SIP requires. The State knows the services of a vendor are necessary for the program to operate. *See* ECF 46-1 ¶ 32. Indeed, the Attorney General even informed the Executive Council that operating the program in the short term would require *contracting with Gordon-Darby NHOST specifically*. *See* ECF 46-1 ¶ 30 (stating "in the short term, for the program, we really don't think the program

can run without a contract with Gordon-Darby"). But Defendants allowed that vendor contract to terminate, and the State ceased to have a contracted I/M program vendor on February 4, 2026.

Plainly, Defendants have not "resume[d] and ensure[d] the continued implementation and enforcement" of the I/M program. ECF 35 at 44. Nor are they "tak[ing] all steps necessary" to accomplish that. *Id.* Despite having authority to unilaterally reinstate Gordon-Darby NHOST's vendor contract and their recognition that Gordon-Darby NHOST is the only viable short-term path to compliance, Defendants did not reinstate that contract. ECF 49 at 15 n.10; ECF 46-1 ¶ 30. And despite claiming authority to bypass the competitive bidding process, *see* ECF 29 at 3 n.1, Defendants have not used that authority to retain Gordon-Darby NHOST or any other vendor.

Defendants may argue contempt is not warranted because they made a "good faith effort" to obtain Executive Council approval of a limited extension to Gordon-Darby's contract. *See* ECF 39 at 8. But even assuming Defendants' good faith, that one failed effort more than a month ago does not give Defendants a pass. Willful noncompliance is not required for civil contempt, and good faith efforts to comply with an order are not a defense. *Goya Foods*, 290 F.3d at 76.

Likewise, Defendants' tepid commitment to issue an RFP at some unspecified point in the future does not demonstrate compliance with the Injunction. Ex. 1-E. Crucially, Defendants will not confirm *whether they will even retain a vendor* at the end of their hypothetical RFP process, citing the same legal authority arguments this Court has already considered and rejected. *Id.*; ECF 49 at 16-17. Apparently, there is no plan to restore inspection stations' authority to perform inspections under the I/M program or to provide updated guidance to the public. Ex. 1-E. Even on the sole issue where Defendants are purportedly taking action—seeking a potential vendor—they will not state or commit to any timeline for that process. *Id.* The absence of any timeline for action is troubling given that the RFP process for a new I/M program vendor contract takes from 6 to 18

13

months. *See* ECF 10-2 ¶¶ 10, 11. If Defendants retain any vendor other than Gordon-Darby NHOST, that vendor will likely need additional time to purchase, develop, and deploy the I/M program's necessary infrastructure before it can begin administering the program. *See id.* ¶¶ 15-16 (describing equipment and services provided by vendor); ECF 35 at 19-20. Under Defendants' plan, the I/M program "will necessarily remain suspended" throughout that time. Ex. 1-E.

Thus, Defendants' plan for compliance with the Injunction is in fact a plan for unchecked delay and indefinite suspension of the I/M program. Without a finding of civil contempt from this Court, Defendants could potentially maintain the program's suspension until such time as EPA makes a decision on New Hampshire's proposed SIP revision—thus granting the State precisely the relief it envisioned when it unlawfully repealed the program without awaiting EPA approval. In the meantime, the public would be deprived of the benefits this Court sought to promote when it granted the Injunction, including health and welfare benefits from reduced emissions, public safety benefits from fewer unsafe vehicles, and regulatory uncertainty that could undermine confidence in the I/M program and lead to greater noncompliance. ECF 35 at 41-42. The Court should find Defendants in civil contempt to avoid this inequitable result.

II. **The Court Should Impose Civil Sanctions to Bring Defendants into Compliance and Compensate Gordon-Darby for Its Costs and Fees.**

The Court may impose civil sanctions "for either or both of two purposes: to coerce the defendants into compliance with the court's order, and to compensate the complainant for losses sustained."[2] *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947). The Court has "wide discretion" in fashioning sanctions to coerce future compliance, *G&C Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 41 (1st Cir. 1980), and should consider "the character and

---

[2] In this Motion Gordon-Darby only seeks imposition of civil sanctions, not criminal sanctions.

14

magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired," *United Mine Workers*, 330 U.S. at 304.

Gordon-Darby respectfully requests that the Court impose civil sanctions on Defendants in the form of significant escalating fines that begin accruing if Defendants have not resumed implementation of the I/M program by a date certain. While Gordon-Darby defers to the Court's judgment as to the proper amount of these fines, Gordon-Darby urges the Court to tie accrual of these fines to one or more deadlines established by the Court for resuming I/M program operations, such that Defendants have an incentive to reinstate the program as quickly as practicable and can avoid any fine if they promptly purge their contempt. Any fines should be set at a level high enough to reflect the character and gravity of Defendants' noncompliance (which harms not only Gordon-Darby but the broader public interest) and Defendants' ability as state officials to absorb relatively large fines. *See* ECF 35 at 41-42 (discussing public interest). Gordon-Darby also recommends that any fines escalate over time to reflect the compounding harm that Defendants' conduct will inflict on public health and safety and on respect for this Court as their noncompliance continues.

In addition, Gordon-Darby respectfully requests that the Court order Defendants to reimburse Gordon-Darby's costs and attorneys' fees incurred in securing Defendants' compliance with the Injunction. Recovery of fees and costs is a "commonplace sanction for civil contempt." *Goya Foods*, 290 F.3d at 78. Here, an award of fees for enforcement of the Injunction is appropriate to compensate Gordon-Darby for the "costs occasioned by [Defendants'] contemptuous conduct." *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 444 n.23 (1986).

## CONCLUSION

For the foregoing reasons, the Court should order Defendants to show cause why they should not be held in contempt of the Injunction and grant the other relief requested herein.

| | |
|---|---|
| Dated: March 13, 2026 | Respectfully submitted, |
| | GORDON-DARBY HOLDINGS, INC., |
| | By and through its attorneys, |
| | */s/ Andrew D. Knudsen* |
| Amy Manzelli (NH Bar No. 17128) | Allison D. Wood (DC Bar No. 466928) |
| Andrian Lee (NH Bar No. 277993) | Andrew D. Knudsen (DC Bar No. 1019697) |
| BCM Environmental & Land Law, PLLC | Makram B. Jaber (DC Bar No. 458718) |
| 3 Maple Street | Kirsten M. Bahnson (DC Bar No. 90028947) |
| Concord, NH 03301 | MCGUIREWOODS LLP |
| (603) 225-2585 | 888 16th Street, N.W., Suite 500 |
| manzelli@nhlandlaw.com | Washington, D.C. 20006 |
| | (202) 857-1700 |
| | awood@mcguirewoods.com |
| | aknudsen@mcguirewoods.com |
| | mjaber@mcguirewoods.com |
| | kbahnson@mcguirewoods.com |

**CERTIFICATE OF SERVICE**

I certify that on March 13, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

 */s/ Andrew D. Knudsen*
ANDREW D. KNUDSEN