IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____

)

GORDON-DARBY HOLDINGS, INC. )

)

    Plaintiff, )

)

       v. )    Civil No. 1:25-CV-00508-LM-AJ

)

ROBERT L. QUINN, COMMISSIONER )
NEW HAMPSHIRE DEPARTMENT OF )
SAFETY; AND )
ROBERT R. SCOTT, COMMISSIONER )
NEW HAMPSHIRE DEPARTMENT OF )
ENVIRONMENTAL SERVICES )

)

    Defendants. )
_____ )

## DEFENDANTS' OBJECTION TO MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT

Defendants, Robert Quinn, Commissioner of the New Hampshire Department of Safety ("NHDOS"), and Robert Scott, Commissioner of the New Hampshire Department of Environmental Services ("NHDES") (the "Commissioners"), in their respective official capacities, by and through the Office of the New Hampshire Attorney General, hereby object to Plaintiff's March 13, 2026 Motion for an Order to Show Cause Why Defendants Should Not be Held in Contempt (ECF-50) (the "Motion") for the reasons set forth herein.

## Introduction

Notwithstanding the fact that this Court's preliminary injunction order is currently on appeal to the First Circuit, where a motion to stay is pending, Plaintiff now requests that the Court find the Commissioners in contempt of said order based on little evidence beyond the alleged failure of the Commissioners to respond to informal and unauthorized interrogatories. Plaintiff's

1

rush to contempt disregards the Commissioners' good faith efforts to comply with the Order as written, which were communicated to Plaintiff.  Plaintiff's Motion relies on a subsequent procedural order from the Court for the proposition (not contained in and in fact contradicted by the Order) that the Commissioners have the ability to unilaterally reinstate the I/M Program and vendor contract.

In the alternative, the question whether a federal court can vest State actors with the authority to reinstate the I/M program and vendor contract in the absence of State statutory authority is currently pending before the First Circuit.  Should the First Circuit agree that the Supremacy Clause does not authorize, and the Tenth Amendment does not permit, such a conclusion (separate and independent of standing issues), any contempt finding premised upon the Commissioners' ability to unilaterally reinstate the program and the contract would be vacated in a separate appeal.

As set forth below, Plaintiff has failed to carry its burden to demonstrate contempt, and the Commissioners respectfully request that the Court either deny the Motion or defer consideration of the Motion pending the First Circuit's resolution of the constitutional questions set forth in the Commissioners' motion to the First Circuit for a stay.

**<u>Pertinent Procedural History</u>**

On January 27, 2026, the Court issued a preliminary injunction (the "Order"), which, in pertinent part, mandated the Commissioners "to take all steps necessary to resume and ensure the continued implementation and enforcement of" the I/M program.  ECF-35 at 44. On January 30, 2026, Commissioner Quinn informed Plaintiff that its subsidiary was authorized to continue performance as the State's I/M program vendor pending the Executive Council's decision on whether to retroactively approve an extension of the Contract termination date.  *See* the

2

accompanying Declaration of NHDOS Assistant Commissioner Steven R. Lavoie, ¶¶5; ECF-46-1 at 25-26.

On February 4, 2026, the Executive Council denied Commissioner Quinn's request for retroactive extension of the Contract by a 3-2 vote.  Lavoie Decl., ¶8; . On February 10, 2026, the Commissioners filed a notice of appeal and moved this Court for a stay of the Order.  ECF-37, ECF-39.  On February 11, 2026, the Court granted expedited briefing on the motion to stay (the "Briefing Order").  ECF-44.  On February 25, 2026, the Court denied the motion to stay (the "Stay Order").  ECF-49.

On February 27, 2026, Plaintiff's counsel propounded a series of informal interrogatories. ECF-50-1 at 71.  On March 6, 2026, undersigned counsel responded, explaining:

> As previously stated in Commissioners' filings with the Court, and as the Court acknowledged in ECF-35, p. 9 n.4, NHDOS's authority to implement and enforce the program was repealed effective January 31, 2026. Despite this serious issue and the Commissioners' well-warranted concerns about proceeding in the absence of legal authority to fund (through mandated fees), implement and enforce the I/M program, the Commissioners are nevertheless continuing to comply with the Court's preliminary injunction Order and are currently preparing an RFP for a new I/M program vendor.  Until such time as a new I/M vendor is retained, the I/M program will necessarily remain suspended.

ECF-50-1 at 66. On March 7, 2026, Plaintiff's counsel followed up with additional interrogatories. EXF-50-1-at 55. On March 12, 2026, undersigned counsel responded, stating that the earlier response "still stands" and that the "RFP is being prepared, subject to the reservations" expressed in counsel's March 6 response. ECF-50-1 at 35. The following day, Plaintiff filed the instant motion for order to show cause why Commissioners should not be held in contempt of the Order. ECF-50.

### **Standard of Decision**

"Civil contempt is a forward-looking penalty meant to coerce compliance rather than to

3

punish past noncompliance." *Hawkins v. HHS*, 665 F.3d 25, 32 (1st Cir. 2012). Contempt requires evidence of conduct that "clearly and unambiguously violate[s]" the order sought to be enforced. *Orkin v. Albert*, 162 F.4th 1, 24 (1st Cir. 2025). A movant seeking such relief must show "by clear and convincing evidence" that the alleged contemnor "violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion." *Rodriguez-Vazquez v. Solivan*, 844 F.3d 351, 355 (1st Cir. 2016). The test is whether the four corners of the order "narrowly cabin[] the circumstances in which contempt may be found." *United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005). Any ambiguities or omissions in the underlying order "redound[] to the benefit of the person charged with contempt." *Saccoccia*, 433 F.3d at 28.

Where an order does not mandate specific action, the failure to take such action cannot constitute contempt. *Hawkins*, 665 F.3d at 33; *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 34 (1st Cir. 1990). Even where an order clearly and unambiguously mandates action, a party cannot be found in contempt absent the ability to comply with such order. *Hawkins*, 665 F.3d at 31. Inability to comply is thus a complete defense to a contempt charge. *Morales-Feliciano v. Parole Bd. of Puerto Rico*, 887 F.2d 1, 5 (1st Cir. 1989).

<u>**Argument**</u>

**I.   PLAINTIFF FAILS TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE COMMISSIONERS VIOLATED A CLEAR AND UNAMBIGUOUS ORDER WITH WHICH THEY HAD THE ABILITY TO COMPLY.**

The central premise of the Motion is that Commissioners are violating the Order by failing to immediately resume and ensure the continued implementation of the I/M program. In order to demonstrate grounds for a contempt finding, Plaintiff must show both that the Commissioners violated a clear and unambiguous order and that the Commissioners were legally able to comply.

4

As set forth below, the Commissioners are taking all legally available steps to comply with the Order. In addition, the Commissioners lack the legal authority to either immediately resume implementation of the I/M program or to unilaterally and immediately enter a contract with an I/M program vendor, and the Motion fails to show that the Order clearly and unambiguously found such authority exists. As such, the Motion fails.

A.  The Commissioners Have Taken All Legally Available Steps to Resume and Ensure the Continued Implementation and Enforcement of the I/M Program.

The Order unambiguously directs the Commissioners to "take all steps necessary to resume and ensure the continued implementation and enforcement of" the I/M program. ECF-35 at 44. The Order also acknowledges that the legislative repeal of the I/M program stripped the Commissioners of authority under state law to require inspections. *See, e.g.*, ECF-35 at 9, n.4 (acknowledging "NHDOS will lack statutory authority to require inspections after January 31, 2026"), -30, n.9 (acknowledging the "Commissioners are not responsible for the … repeal of New Hampshire statutory authority to require motor vehicle inspections"). Similarly, the Order also tacitly acknowledges the Commissioners' lack the authority to reinstate the Contract. *Id.* at 20, n.8 (noting that Commissioners had not argued that they would not "seek to reinstate" the Contract (emphasis supplied) and 18-20 (finding it "likely that the state" (not Commissioners) would elect to reinstate the Contract).[1] Indeed, the Order carefully refrained from ordering reinstatement of the Contract itself.

The Commissioners have taken, and are taking, all possible immediate and long-term steps to comply with the Court's Order.  First, the Commissioners attempted to re-instate the terminated

---

[1] The Briefing Order subsequently demonstrated that the Court understood this to be the case, and in fact invited reconsideration of the Order on the question of redressability because compliance with the Order would require "state officials who are not expressly compelled to take action" by the Order to "comport their conduct in accordance" therewith. ECF-44 at 2.

contract with Gordon-Darby NHOST Services, Inc. on an interim basis as contemplated by the Court's Order. Lavoie, ¶¶ 4-8; *See* ECF-35 at 18-20; 20 n.8. On January 30, 2026, Commissioner Quinn sent a letter to Gordon-Darby NHOST Services, Inc. that explained NHDOS was going to seek to modify the effective date of the contract termination notice by submitting a request for retroactive approval to the Governor and Executive Council to extend the contract. Lavoie Decl., ¶ 4; ECF-46-1 at 25-26, 33. Based on their request for retroactive approval, and despite their concerns regarding the lack of statutory authority,[2] the Commissioners authorized Gordon-Darby NHOST Services, Inc., to continue implementing the inspection program (and thereby collect fees from inspection stations)[3] until the Executive Council ruled on the retroactive extension request. Lavoie Decl., ¶¶ 4-5. At an emergency meeting of the Executive Council where the Commissioners spoke in favor of the request, the Executive Council rejected the request to reinstate the contract by a vote of 3-2. Lavoie Decl., ¶¶ 7-9; ECF-46-1 at 35.

Following the Executive Council's decision, and notwithstanding their continuing concerns regarding the lack of statutory authority, the Commissioners began working on the preparation of a new RFP for a new I/M program vendor. *See* the accompanying Declaration of NHDOS Assistant Commissioner Steven R. Lavoie, ¶¶ 11-12. This fact was communicated to Plaintiff's counsel on March 6, 2026, following counsel's inquiry. ECF-50-1 at 8. On March 20, 2026, NHDOS issued an RFP seeking a contractor to run the emissions inspection program

---

[2] During this time, legislation was pending that would have reauthorized mandatory motor vehicle inspections. Lavoie Decl., ¶ 6; *See also* HB 1560 (2026) – Docket available at https://gc.nh.gov/bill_status/legacy/bs2016/bill_docket.aspx?lsr=2308&sy=2026&txtsessionyear=2026&txttitle=vehicle%20inspection&sortoption= (last accessed March 27, 2026). The New Hampshire House of Representatives Transportation Committee later determined the bill inexpedient to legislate. Lavoie Decl., ¶ 6.

[3] Between January 31 and February 4, 2026, Gordon-Darby NHOST Services, Inc. facilitated and issued stickers for approximately 19,268 inspections for an approximate revenue of $63,199.04 (multiplied by $3.28 per inspection). ECF-46-1 Table 2; ECF-22-3 at 68.

required by the SIP. *See* Lavoie Decl., ¶ 12 and **Exhibit B** thereto, RFP DOS 2026-20. According to Plaintiff, the RFP and contracting process for an I/M program vendor has taken between 6 and 18 months for this program historically. *See* ECF 28 at 8 (citing ECF 10-2, ¶¶10, 11). The most recent RFP issuance for this project took between five and seven months. Lavoie Decl., ¶ 14. RFP DOS 2026-20 includes an expedited 56-day bidding process with an estimated vendor selection date of May 15, 2026, to be followed by contract negotiation and submission to the Governor and Executive Council for contract approval.[4] Lavoie Decl., ¶ 14 and **Exhibit B** thereto.

NHDOS has furthermore continued to seek approval from the Joint Legislative Committee on Administrative Rules to readopt the N.H. Admin. R. Saf-C 3200 et seq. rules (which implement the repealed legislation related to mandatory vehicle safety and emissions inspections and the SIP and would support the recently issued RFP). Lavoie Decl., ¶¶ 16-17. The Commissioners are actively pursuing the readoption of these rules (originally submitted December 23, 2025) despite concerns regarding the repeal of the underlying statutory authority. Lavoie Decl., ¶ 17.

The sequential steps taken by the Commissioners, first submitting precautionary program rules roughly just a couple weeks after being served herein, then in seeking Executive Council retroactive extension of the notice of termination of the contract, and then in issuing an aggressively expedited program vendor RFP (despite their grave misgivings about the absence of State law authority), evince diligence and respect for this Court's authority and constitute all steps legally available to them and necessary to resume and ensure the continued implementation and enforcement of the program as provided in and required by the Order. Lavoie Decl., ¶¶ 11-15.

    B.    <u>The Commissioner's Compliance Steps Are Not Inconsistent With Any of the Order's Clear and Unambiguous Findings Regarding the Commissioners' Authority to Reinstate the Program and the Contract.</u>

---

[4] The exact date of Governor and Executive Council consideration is currently unknown.

The Commissioners' understanding that the Order acknowledged the limits of their State law authority was confirmed by the Briefing Order, which invited reconsideration of the Order on the question of redressability because compliance with the Order would require "state officials who are not expressly compelled to take action" by the Order to "comport their conduct in accordance" therewith. ECF-44 at 2. The Motion cites to the Stay Order (and not the Order itself) to argue that Commissioners "have the authority to resume and ensure implementation of the I/M program," because "HB2's provisions repealing the [I/M] program … have no force or effect" due to "basic principles of conflict preemption." ECF-50 at 10-11. In support of this assertion, Plaintiff relies on a single sentence in the Stay Order wherein the Court stated:

> The portions of HB2 that purport to repeal or amend the I/M program as contained in New Hampshire's SIP are without effect unless and until the EPA approves an amendment discontinuing the I/M program.[5]

ECF-50 at 11 (quoting ECF-49 at 17). Plaintiff cannot, however, rely on a finding made for the first time nearly a month after the fact in a separate procedural order to retroactively show that the Order clearly and unambiguously bestowed federal authority upon the Commissioners to implement, contract for, and enforce an I/M program.[6] Grounds for contempt must be "narrowly cabined" within the four corners of the Order. *Saccoccia*, 433 F.3d at 28; *see also Rodriguez-Vazquez*, 844 F.3d at 355.

Plaintiff can only seek enforcement of the Order as written. *Rodriguez-Vazquez*, 844 F.3d at 355; *Saccoccia*, 433 F.3d at 28; *Hawkins*; 665 F.3d at 33; *NBA Properties*, 895 F.2d at 34.

---

[5] This declaration was not included in the Order despite Commissioners' prior state sovereignty arguments (ECF-20-1 at 8-9; ECF-22 at 6-7) (citing *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16 17 (1981)).

[6] Moreover, the Stay Order was issued after the Order was already on appeal and the Court was divested of jurisdiction to augment the redressability analysis contained in the Order. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (2023).

Matters omitted from the Order, as well as any ambiguities, redound to the benefit of the Commissioners. *Saccoccia*, 433 F.3d at 28.  Here, Plaintiff fails to identify any portion of the Order that declares the Commissioners continue to have the authority to implement and enforce the program or to reinstate the Contract.  To the contrary, the Order unambiguously acknowledges that the Commissioners lack such authority (ECF-35 at 9, n.4; 30, n.9), as the Briefing Order later confirms. ECF-44.

### 1. *The Order Does Not Mandate Federally-Authorized Vehicle Inspections.*

Plaintiff asserts that the Order "made clear that 'as a matter of federal law' the I/M program 'continues to be in effect under the Clean Air Act." ECF-50 at 11 (quoting ECF-35 at 29).  This comment in the Order, however, appears in a discussion of statements made by the Commissioners "that motor vehicle inspections are no longer required after January 31," and goes on to agree that this is "true as a matter of state law."  Furthermore, Plaintiff omits critical words from this passage of the Order, which states "the I/M program contained in New Hamshire's SIP ... continues to be in effect under the Clean Air Act."  ECF-35 at 29 (emphasis added).  While the SIP remains enforceable under federal law, nothing in the SIP provides an enforceable mandate for vehicle inspections,[7] much less authority for the Commissioners to implement and enforce the program.[8] *See* RSA 266:1 (repealed); RSA 266:5 (repealed). As such, this lone statement in the Order falls well short of an unambiguous mandate to require and enforce federally-authorized inspections. Omissions in the Order must redound to the benefit of Commissioners. *Saccoccia*, 433 F.3d at 28.

---

[7] *See* ECF-39 at 5-6. The Court acknowledged that some aspects of the I/M program are not included in the SIP and clarified in the Stay Order that the Order did not require anything more than implementation of the SIP "as codified in the New Hampshire's federally enforceable state implementation plan." ECF-49 at 20.

[8] NHDOS administers and enforces the State's motor vehicle laws. RSA 21-P:4. NHDES administers and enforces the State's Air Pollution Control Laws. RSA 125:C, I. The Commissioners' respective authority is limited to the authority delegated to them by the State legislature. *In re Boston & M. R.R.*, 82 N.H. 116, 116 (1925).

9

Plaintiff's need to look beyond the four corners of the Order itself for the proposition that the Order somehow vests the Commissioners with federal authority to reinstate the program and the vendor contract illustrates that such a declaration of authority is not contained within the four corners of the Order.  The Order itself, and the subsequent Briefing Order, contradict Plaintiff's arguments that the Order authorized the Commissioners to take unilateral action to afford Plaintiff complete relief. ECF-35 at 20, 20, n.8' ECF-44 at 1-3.  All told, it cannot fairly be claimed that the Order itself (without augmentation by the Court's subsequent declaration in the Stay Order) leaves no reasonable doubt that the Court had sought to authorize State actors to implement and enforce the I/M program via the Supremacy Clause and expected the Commissioners to reinstate the program and the Contract absent intervention from other State officials not before the Court. The Motion consequently falls short of making any clear and convincing showing that the Commissioners violated an unambiguous mandate to reinstate the program and the contract without necessary authorization from other State officials not before the Court. *Saccoccia*, 433 F.3d at 28; *Morales-Feliciano*, 887 F.2d at 5.

2.  *The Order Does Not and Could Not Mandate Reinstatement of the Contract*

The Motion similarly cites to the Stay Order to argue that the Commissioners have "authority to unilaterally reinstate Gordon-Darby NHOST's vendor contract."  ECF-50 at 13 (citing ECF-49 at 15, n.10)[9].  The Motion misstates the Court's actual statement and is in any case incorrect as a matter of law (in addition to not being contained in the four corners of the Order). The Court's actual statement, in a footnote in the Stay Order, was: "while the court has no reason to doubt that the Commissioners acted in good faith in seeking the Executive Council's approval

---

[9] The Commissioners' motion to dismiss argued that the record reflected, and sovereign State procurement law required, that the Contract could only be executed, approved or extended by the Governor and Executive Council (who are not before the Court).  ECF-20-1 at 9, n.3, citing ECF-1 at 38.  The Order does not address these arguments.

to amend the termination letter, the court does not find, *at this time*, that the Council's approval was necessary to rescind or amend the termination letter." ECF-49 at 15, n.10 (emphasis added).

Far from finding authority to unilaterally reinstate *the Contract* (the basis for the contempt motion), the Court's comment was limited to the Commissioners' authority to rescind the *termination letter* prior to termination of the Contract. It is undisputed that the Contract has since been terminated following the Executive Council's vote to deny retroactive extension of the termination date. Moreover, the Order itself acknowledges that any new contract with an I/M program vendor "would still be subject to approval by the Governor and Executive Council." ECF-35 at 19 (citing RSA 4:15). Thus, Commissioners cannot be held in contempt for failing to take action—contracting with an I/M program vendor—that the Order states is beyond their unilateral authority.

In addition, the Court's statement declining to find "at this time" that Commissioners were required to seek Executive Council approval to extend the termination date of the Contract is contrary to controlling state law and regulations. The Court supported this ancillary finding on two grounds: (a) NHDOS issued the September 16, 2025 termination notice without Executive Council approval; and (b) the Contract does not involve any payments from the public treasury. ECF-49 at 15, n.10.[10] Neither ground withstands scrutiny.

First, the New Hampshire legislature eliminated state authority for the I/M program (the very purpose of the Contract) effective January 31, 2026. ECF-1 at 38. Where authority for the Contract was legislatively repealed, Commissioner Quinn did not require Executive Council approval to terminate the contract upon the effective date of the repeal. *Id.*

---

[10] In denying the stay, the Court also incorrectly concludes that "NHDOS unilaterally extended" the contract's termination date in an effort to comply with the Order. ECF-49 at 15-16, n.10. NHDOS instead sought Executive Council "retroactive approval of an extension" in an effort to immediately comply with the Order. ECF-39 at 7-8.

11

Second, the fees which Plaintiff's subsidiary was authorized to charge State-licensed inspections stations under the Contract (ECF-28 at 5)[11] were ultimately paid by New Hampshire motorists as the cost of obtaining mandatory annual state inspection stickers.  Even absent a direct appropriation,[12] the contract "otherwise" provided money to a private contractor to help "carry on the work" of State agencies and thus required Executive Council approval. RSA 4:15;[13] ECF-1 at 38.  Indeed, the Contract and each of its prior extensions had been approved by the Executive Council as required. ECF-1 at 38, ECF-28 at 8 (citing ECF-10-2, ¶¶10, 11).

Third, pursuant to the Governor and Executive Council's Manual of Procedures, authorized by RSA 21-I:14, any amendment of a contract that had been approved by the Executive Council itself requires Executive Council approval, regardless of whether the amendment imposes additional expenditures. Lavoie Decl., ¶ 7, **Exhibit A**, MOP 150, §V.B.1. Because the Contract had originally been approved by the Executive Council, amending the Contract by extending the termination date also required Executive Council approval.[14]

While the Court may not have been convinced at the time of the Stay Order that

---

[11] The Contract authorized Appellee's subsidiary "to invoice the participating Inspection Stations … at fixed pricing/rates" which constituted "Contract payments." ECF-22-3 at 68.

[12] The State necessarily made appropriations for the 8 dedicated full-time State Troopers who enforced the I/M program (ECF-10-3 at 19), and expended resources licensing and regulating inspection stations and certified mechanics to conduct inspections under the program. ECF-1, ¶ 36 (citing N.H. Admin. Code Saf-C 3205).

[13] RSA 4:15 states: "The expenditure of any moneys appropriated or otherwise provided to carry on the work of any department of the state government shall be subject to the approval of the governor, with the advice of the council, under such general regulations as the governor and council may prescribe with reference to all or any of such departments, for the purpose of securing the prudent and economical expenditures of the moneys appropriated."

[14] The Manual of Procedures further requires that unless otherwise specified, "current practices" apply regarding which transactions require Executive Council approval.  Lavoie Decl., **Exhibit** A, MOP 150, §VIII.  The Executive Council's current practices require any contract implicating significant use of government resources or impacts to the public to be brought before the Executive Council for approval.

12

Commissioners were required to seek Executive Council approval to extend the termination date of the Contract, no such finding was made in the Order.  Moreover, the foregoing recitation of the applicable state laws and regulations demonstrate that such approval was, in fact, required. Accordingly, the Commissioners cannot be held in contempt for failing to take an action— unilateral reinstatement of the Contract—that they lack the legal authority to take.  The Motion provides no contrary authority and therefore fails to demonstrate Commissioners' ability to comply.

**II.    IN THE ALTERNATIVE, FEDERAL LAW CANNOT PROVIDE THE COMMISSIONERS WITH LEGAL AUTHORITY TO REINSTATE EITHER THE I/M PROGRAM OR THE CONTRACT.**

The Commissioners' First Circuit Motion to Stay addresses the Commissioners' constitutional disagreement with the Stay Order's conclusion that the Supremacy Clause somehow empowers them to take actions beyond those discussed in the Lavoie Declaration.  In the context of the pending Motion, however the Commissioners are constrained to reiterate the constitutional defenses first raised in their motion to dismiss (ECF-20-1 at 8-9) and later reiterated in their objection to Plaintiff's preliminary injunction motion. ECF-22 at 6-7.  A party cannot be found in contempt absent the ability to comply therewith. *Hawkins*, 665 F.3d at 31.  There is no question that the Stay Order expresses the Court's understanding that the Commissioners have the legal authority to unilaterally reinstate the program and the vendor contract. The Commissioners respectfully submit that there is also no question that the federal government cannot order State officials to implement and enforce the I/M program absent underlying State law authority to do so.  That question is now before the First Circuit. Having taken all possible actions to comply with the Order within their statutory authority, the Motion requires the Commissioners to raise a final

defense of constitutional impossibility insofar as Plaintiff contends that this Court could order State actors to implement and enforce an I/M program unauthorized by State law.

The Supremacy Clause "specifies that federal law is supreme in case of a conflict with state law." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). Here, the repeal of state law does not conflict with any federal law; it simply puts New Hampshire out of compliance with federal law, for which the CAA authorizes specific remedies to encourage compliance, including but not limited to citizen suits under 42 U.S.C. 7604. *See, e.g.*, 42 U.S.C. §§ 7413(a)(2) (EPA enforcement) 7410(k)(5), 7410(m) (compliance schedule pending imposition of a federal SIP or "FIP") 7509(a) (withholding grants), 7509(b) (sanctions). All such remedies include a timeline (up to 18 months) for a state to come into compliance.

The District Court in *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 533 F. Supp. 869, 879 (E.D. Pa. 1982), squarely addressed and correctly resolved an analogous CAA state implementation plan issue. There, the court held that the federal government lacks the authority to commandeer state sovereignty functions to require a state to enforce and implement an I/M program contained in a SIP. *Id.* The *Delaware Valley Citizens' Council* Court held that a state law which prohibited the State's operation of an I/M program could not be declared unconstitutional because the Tenth Amendment and principles of federalism prohibit the federal government from requiring states "to establish and fund I/M programs . . ." *Id.* That Court further explained that State laws which prohibit or abrogate the authority for an I/M program do not "conflict" with federal law because federal law cannot "impair essential attributes of state sovereignty." *Id.* at 878 (citing *National League of Cities v. Usery*, 426 U.S. 833 (1976)).

The authority of State executive branch agencies is limited to the authority delegated to them by the State legislature. *In re Boston & M. R.R.*, 82 N.H. at 116. As the Court has

14

acknowledged, there is no current state authority for the Commissioners to implement or enforce an I/M program. ECF-35 at 9, n. 4. Nor does the CAA fill this gap. The SIP is an implementation plan;[15] it is not a federal substitute for state law authority that somehow converts state officials into federal agents when the underlying and authorizing state law is repealed.  Indeed, the Tenth Amendment prevents the federal government from commandeering state officials in this way.  *See Printz v. United States*, 521 U.S. 898, 933 (1997) ("The Federal Government may not compel the States to enact or administer a federal regulatory program.") (citation omitted).  Accordingly, the Supremacy Clause does not preempt HB2's repeal of the statutory authority for the I/M program and Commissioners do not have the ability to resume and ensure implementation of the I/M program absent state legislative action.

## Conclusion

While the preliminary injunction Order is on appeal with a motion to stay pending before the First Circuit, and notwithstanding Commissioners' legal inability to perform the acts Plaintiff asserts were required under the Order, Plaintiff seeks an order of contempt and imposition of civil sanctions to coerce Commissioners into compliance with the Order.  However, the Motion fails to show Commissioners actually violated the Order, fails to demonstrate notice of a clear and unambiguous mandate to resume implementation of the I/M program or reinstate the Contract without separate authorization from other State actors, and fails to demonstrate that Commissioners had the legal ability to perform the acts Plaintiff asserts were required.  For these reasons there is no basis for either a show cause hearing or a finding of contempt and the Motion should be denied.

---

[15] The SIP does not incorporate State statutory authority for its implementation and enforcement and, therefore, provides no independent source of such authority.  *See* ECF-39 at 5-6.

15

Respectfully submitted,

ROBERT L. QUINN, COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF SAFETY
*in his official capacity*

ROBERT R. SCOTT,
COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF
ENVIRONMENTAL SERVICES
*in his official capacity*

By and through their counsel

JOHN M. FORMELLA
ATTORNEY GENERAL


March 27, 2026                    /s/ Mark L. Lucas
                                  Mark L. Lucas, Bar #274692
                                  Joshua C. Harrison, Bar #269564
                                  Assistant Attorneys General
                                  Environmental Protection Bureau
                                  Office of the Attorney General
                                  New Hampshire Department of Justice
                                  1 Granite Place South
                                  Concord, New Hampshire 03301
                                  (603) 271-3679
                                  Mark.L.Lucas@doj.nh.gov
                                  Joshua.C.Harrison@doj.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

/s/ Mark L. Lucas
Mark L. Lucas, Bar #274692