**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| GORDON-DARBY HOLDINGS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> NEW HAMPSHIRE DEPARTMENT OF SAFETY, COMMISSIONER, et al., <br><br> *Defendants*. | Civil Action No. 25-cv-00508-LM-AJ |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER
TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com
lee@nhlandlaw.com

Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
Makram B. Jaber (DC Bar No. 458718)
Kirsten M. Bahnson (DC Bar No. 90028947)
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com
mjaber@mcguirewoods.com
kbahnson@mcguirewoods.com

*Counsel for Plaintiff Gordon-Darby Holdings, Inc.*

April 3, 2026

More than two months after this Court issued its preliminary injunction ("Injunction"), Defendants remain in denial over its effects. Despite Defendants' professed confusion, this Court has made perfectly clear that they have the obligation and authority to resume the inspection and maintenance ("I/M") program codified in New Hampshire's state implementation plan ("SIP"). Their continued refusal to do so violates the Injunction and necessitates a contempt order.

## I.   Defendants Are in Violation of the Injunction.

Defendants claim they should not be held in contempt because they are making "good faith efforts to comply." ECF 51 at 2. As discussed below, however, reason exists to doubt whether their half-hearted issuance of a request for proposals ("RFP") for a new vendor following this motion's filing reflects a good faith effort to resume the program. Regardless, "good faith is not a defense." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002). Defendants are not operating or enforcing the program, nor will they commit to resuming it at any point in the future, let alone promptly. ECF 46-1 ¶¶ 34-41; ECF 50-1 Ex. E. This violates the Injunction, which Defendants concede "unambiguously directs [them] to 'take all steps necessary to resume and ensure the [program's] continued implementation and enforcement.'" ECF 51 at 5 (quoting Injunction).

Nor are Defendants taking "all possible immediate and long-term steps to comply." *Id.* Defendants could take any number of steps beyond issuing their March 20 RFP. Most obviously, Defendants refuse to take the most expedient step available to them: forgoing the RFP process and rehiring Gordon-Darby as the I/M program vendor. The State admits it is "likely to face challenges finding another vendor" and a contract with Gordon-Darby is likely the only feasible way to operate the program in the short term. ECF 46-1 ¶¶ 30-31. In opposing Gordon-Darby's standing, Defendants argued they could bypass competitive bidding to quickly retain a vendor if ordered to continue the program. ECF 29 at 3, ECF at 20-21, 33-34. Defendants do not explain why this authority has not been used now to retain Gordon-Darby, the only company with equipment and

systems in place for immediate deployment at New Hampshire inspection stations.[1]

Further, Defendants have not taken *any* steps with regard to the motorists who must comply or the inspection stations that perform tests. *See* ECF 50 at 12. Despite purportedly aiming to hire a vendor and resume the program within months, Defendants have issued no public guidance since their February 13 notice suspending the program. ECF 46-1 ¶ 39. Likewise, Defendants have not informed inspection stations of their search for a vendor, advised those stations that they may need to update or enter new supply contracts with the eventual vendor, or even restored their authority to perform inspections under the program. Indeed, Defendants still have not withdrawn their request for stations to return State-provided inspection supplies by April 30. ECF 46-1 ¶ 40.

Defendants pin their supposed compliance on their March 20 issuance of an RFP. ECF 51 at 6-7. It is doubtful Defendants would have taken even this partial step had Gordon-Darby not moved for contempt, given their refusal a week earlier to confirm if or when an RFP would issue. ECF 50-1 Ex. E. Moreover, there is serious reason to doubt Defendants actually intend to retain a vendor or resume the program at the RFP's conclusion, let alone within the unenforceable timeline described. Official statements suggest the RFP is not a sincere attempt to reinstate the program: the Attorney General's office says it merely "preserves flexibility, and the state may delay, modify or cancel the process." Ex. 3; *accord* ECF 51-1 Ex. B at 4. Legislative leaders confirmed the RFP is "just another box to check" with this Court while the State delays compliance to await hoped-for relief from EPA. Ex. 3; *see also* Ex. 4 ("We will not comply, and we will not go back."). But ultimately, the strongest evidence Defendants do not plan to follow through on their RFP is their continued insistence that they have no authority to do so. Defendants still claim they lack statutory

---

[1] Defendants cited the "best interests" and "emergency" exceptions to state procurement law. ECF 29 at 3 n.1. Given their admission now that other bidders are unlikely, the exception for services "procurable by the state from only one source" likely also applies. *See* RSA 21-I:11(I)(a)(2)(B).

authority to resume the I/M program, and nothing indicates this position will change after the RFP. ECF 51 at 5, 9-10; Mot. Stay, *Gordon-Darby Holdings, Inc. v. Quinn*, No. 26-1209 (1st Cir. Mar. 19, 2026) ("[A]ny contract to implement the program would be *ultra vires*."); ECF 50-1 Ex. E (refusing to confirm State will retain vendor at end of RFP). Thus, absent an order enforcing the Injunction, Defendants will likely refuse to resume the program even after concluding their RFP.

Even the RFP does not reflect a serious attempt to implement the SIP. It omits several key program features, making it difficult for vendors to develop bids that would fully implement the SIP. Unlike the last RFP, the program described here omits safety inspections, despite the State's admission that "the safety and emissions inspection portions of the I/M program are integrated and cannot operate independently." ECF 39-1 ¶ 6; *compare* ECF 51-1 p.130 (stickers to issue for "passing an emission inspection" alone); *with* Ex. 5 at 1, 34 (2018 RFP with integrated safety/emissions inspections). It omits State inspection fees, suggesting Defendants do not plan to collect these fees or perform the tasks they fund. *See* Ex. 5 at 34. It also lacks any assurances on program applicability or enforcement, which are critical to program implementation and to vendors developing workable bids. *Id.* at 33-36. Thus, issuance of this RFP does not satisfy Defendants' obligations.

## II.     Defendants Have Not Shown They Cannot Comply with the Injunction.

Defendants—not Gordon-Darby—bear the burden to show compliance is impossible. *United States v. Puerto Rico*, 642 F.3d 103, 108 n.8 (1st Cir. 2011). They have not met that "difficult" burden here. *Id.* Their only argument is they lack authority to implement and enforce the I/M program following HB2's effective date.[2] ECF 51 at 8-10. But this Court already rejected that argument, holding the Supremacy Clause preempts HB2's repeal provisions so long as the program remains in the State's SIP. ECF 49 at 16-17. Defendants' claim that this holding was ambiguous,

---

[2] Defendants' arguments about whether they could have revoked their termination of the previous vendor contract is irrelevant. The issue here is their *current* ability to comply.

*id.* at 10, confuses the standard for identifying *what conduct was required* with that for establishing *impossibility*. *See United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005). Impossibility exists only if a party actually cannot comply, not if the Court *failed to explicitly find* the party can comply.

Regardless, Defendants cannot plausibly plead ignorance of the Injunction's effect on their authority to implement the program. In ordering Defendants to "resume and ensure [its] continued implementation and enforcement," ECF 35 at 44, the Court clearly contemplated they had the authority to do so. It did not order Defendants to resume the program only for the four days remaining before HB2 took effect or to implement it only if the legislature restored the repealed statutes: Defendants' obligations continue "unless and until" EPA approves the program's removal from the SIP. ECF 35 at 43. Defendants themselves took their ability to run the program as a given: their argument on redressability was that they could simply retain a different vendor if ordered to resume the program, not that they lacked authority to resume the program at all. *See* ECF 22 at 8; ECF 36 at 33 ("An order for the state to implement the SIP would have to be complied with").

Finally, Defendants' last-ditch "anti-commandeering" defense is meritless and has been explicitly rejected elsewhere. ECF 51 at 13-15; *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1179 (D. Ariz. 2001). Requiring the State to comply with *its own SIP* does not unlawfully commandeer state officials. Courts have long recognized that the Act's cooperative federalism approach does not constitute anti-commandeering because states can either (1) develop their own SIPs or (2) submit to direct regulation by EPA. *See Texas v. EPA*, 726 F.3d 180, 196-97 (D.C. Cir. 2013); *New York v. United States*, 505 U.S. 144, 166-67 (1992). If a state chooses the former, courts may enforce that SIP against the state while it remains in effect, even if the state has changed its mind or repealed the underlying laws. *See Sweat*, 200 F. Supp. 2d at 1179; *Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920, 928 (W.D. Ky. 2004); *Friends of the Earth v. Carey*, 552 F.2d 25, 35-37 (2d Cir. 1977).

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania* is not to the contrary. 533 F. Supp. 869 (E.D. Pa. 1982). That case only considered whether a state law defunding an I/M program conflicted with a specific provision of the Act, not whether it would be preempted by an approved SIP adopted by the state. *Id.* at 879. Moreover, that aspect of *Delaware Valley* may no longer be good law, given later cases in that district holding courts *can* compel the state to implement its SIP's I/M requirements. *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705, 725 (E.D. Penn. 2002). If anything, *Delaware Valley* supports holding Defendants in contempt. There, a consent decree required state defendants to run an I/M program but state law barred them from doing so. *Id.* at 872-75. The court held the defendants in contempt even though their hands were tied by state law, finding it irrelevant that defendants had "been prevented by a part of [the government] that is not before the Court from carrying out the decree." *Id.* at 881. The court also imposed significant contempt sanctions (later upheld by the Third Circuit), looking to the Act's own menu of sanctions to bar Pennsylvania from receiving federal highway funds until the state complied. *Id.* at 882-84, *aff'd* 678 F.2d 470 (3d Cir. 1982), *cert. denied*, 459 U.S. 969 (1982).

Here, this Court would be well within its discretion to similarly borrow from the Act's sanctions provision and limit New Hampshire's access to federal highway funds if its violations continue. *See* 42 U.S.C. § 7509(b). But at a minimum, Gordon-Darby respectfully requests the Court impose the civil sanctions described in its Motion. ECF 50 at 15. In particular, given Defendants' refusal to confirm they will resume the program after the RFP process, any contempt order should include clear and prompt deadlines for Defendants to retain a vendor (whether through the RFP or by directly hiring Gordon-Darby) and resume the program, with periodic status reports on their progress. Anything less would invite Defendants to prolong their shell game.

For the foregoing reasons, the Court should grant Gordon-Darby's Motion.

5

Dated: April 3, 2026

Respectfully submitted,

GORDON-DARBY HOLDINGS, INC.,

By and through its attorneys,

<table>
<tr><td>Amy Manzelli (NH Bar No. 17128)</td><td>/s/ <em>Andrew D. Knudsen</em><br>Allison D. Wood (DC Bar No. 466928)</td></tr>
<tr><td>Andrian Lee (NH Bar No. 277993)</td><td>Andrew D. Knudsen (DC Bar No. 1019697)</td></tr>
<tr><td>BCM Environmental & Land Law, PLLC</td><td>Makram B. Jaber (DC Bar No. 458718)</td></tr>
<tr><td>3 Maple Street</td><td>Kirsten M. Bahnson (DC Bar No. 90028947)</td></tr>
<tr><td>Concord, NH 03301</td><td>MCGUIREWOODS LLP</td></tr>
<tr><td>(603) 225-2585</td><td>888 16th Street, N.W., Suite 500</td></tr>
<tr><td>manzelli@nhlandlaw.com</td><td>Washington, D.C. 20006</td></tr>
<tr><td>lee@nhlandlaw.com</td><td>(202) 857-1700</td></tr>
<tr><td></td><td>awood@mcguirewoods.com</td></tr>
<tr><td></td><td>aknudsen@mcguirewoods.com</td></tr>
<tr><td></td><td>mjaber@mcguirewoods.com</td></tr>
<tr><td></td><td>kbahnson@mcguirewoods.com</td></tr>
</table>

*Counsel for Plaintiff Gordon-Darby Holdings, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 3, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

 */s/ Andrew D. Knudsen*
ANDREW D. KNUDSEN