UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Gordon-Darby Holdings, Inc.

     v.                                    Civil No. 25-cv-508-LM-AJ
                                          Opinion No. 2026 DNH 047 P
NH Department of Safety,
Commissioner et al

### O R D E R

Plaintiff Gordon-Darby Holdings, Inc. ("Gordon-Darby") brings this action against the Commissioners of the New Hampshire Department of Safety ("NHDOS") and the New Hampshire Department of Environmental Services ("NHDES"). Gordon-Darby alleges that New Hampshire's abolition of its motor vehicle inspection and maintenance program ("I/M program") violates the Clean Air Act because the federal Environmental Protection Agency ("EPA") has not yet approved the termination of the program.

The court issued a preliminary injunction on January 27, 2026. Doc. no. 35. The injunction requires the Commissioners to refrain from taking any action to terminate or suspend the I/M program as contained in New Hampshire's State Implementation Plan ("SIP") unless and until the EPA approves the program's termination, and further orders the Commissioners to take all steps necessary to resume and continue the I/M program as contained in the SIP. Id. at 43-44.

Presently before the court is Gordon-Darby's motion for an order directing the Commissioners to show cause why they should not be held in contempt for violating the requirements of the preliminary injunction. Doc. no. 50. The Commissioners

object. Doc. no. 51. For the following reasons, Gordon-Darby's motion (doc. no. 50) is denied.

## BACKGROUND

The court set forth the statutory and regulatory background necessary to understand the instant dispute, as well as a description of New Hampshire's I/M program, in its order granting the preliminary injunction. See doc. no. 35 at 2-11. The court also discussed certain developments since the time of the injunction's issuance in its order denying the Commissioners' motion to stay the injunction. See doc. no. 49 at 6-12. It is assumed that the reader is familiar with these orders. The following is a summary of the information necessary to understand the parties' present dispute.

The Clean Air Act requires New Hampshire to maintain an I/M program. New Hampshire's I/M program is structured such that it requires the services of a vendor to operate. Gordon-Darby's subsidiary, Gordon-Darby NHOST Services, Inc. ("Gordon-Darby NHOST"), has been New Hampshire's I/M program vendor since the program's inception.

In June 2025, House Bill 2 ("HB2") was signed into law. HB2 purported to eliminate state-law requirements that passenger vehicles undergo annual safety and emissions inspections. HB2 stated that the elimination of these requirements took effect on January 31, 2026, regardless of whether the EPA had approved a SIP amendment discontinuing or amending the I/M program by that time. In September 2025, NHDOS sent Gordon-Darby NHOST a letter stating that New Hampshire

was terminating Gordon-Darby NHOST's contract effective January 31, 2026, in light of HB2.

On January 27, 2026, the court issued a preliminary injunction enjoining the Commissioners "from taking or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of" the I/M program as codified in New Hampshire's SIP unless and until the EPA approved a SIP amendment discontinuing or modifying the program, and ordering the Commissioners "to take all steps necessary to resume and ensure the continued implementation" of the I/M program as contained in the SIP. Doc. no. 35 at 43-44.

On January 30, 2026, NHDOS sent Gordon-Darby a letter. The letter stated that NHDOS "is taking all available steps necessary to preserve" the I/M program and that, "[i]n an effort to comply with" the preliminary injunction, NHDOS would seek approval from the Governor and Executive Council to delay the effective date of the termination of Gordon-Darby NHOST's contract. Doc. no. 46-1 at 25.

On February 3, 2026, NHDOS submitted a formal request to the Governor and Executive Council seeking "retroactive authorization to amend" the September 2025 letter notifying Gordon-Darby NHOST of the termination of its contract effective January 31, 2026. Id. at 33. The request sought amendment of the letter "by extending the termination date by 60 days from January 31, 2026 to April 1, 2026." Id. The Governor and Executive Council held a meeting the next day to consider NHDOS's request. At the meeting, both Commissioners, as well as the

3

New Hampshire Attorney General, spoke in favor of the request. The Council denied the request by a vote of 3-2.

On February 12, 2026, leadership at NHDOS and NHDES met to discuss next steps to comply with the preliminary injunction, whether a new vendor could be obtained, and what the process would look like for issuing a "Requests for Proposals," or "RFP," seeking bids from potential vendors. The meeting yielded a determination to prepare an RFP for a new vendor to implement the vehicle emissions inspections requirement of the SIP. Staff at NHDOS and NHDES thereafter commenced work preparing an RFP.

On February 13, 2026, NHDOS and the Attorney General issued a press release providing public guidance on the I/M program.[1] The press release stated that the I/M program was suspended until further notice, that vehicles will not be required to obtain an annual state inspection, and that inspection stations will not be authorized to issue inspection stickers. That same day, NHDOS released a letter to inspection stations instructing stations to cease offering "State" inspections, issuing inspection stickers, and directing stations to return unused inspection stickers.

On February 27, 2026, the Commissioners informed Gordon-Darby that they were preparing an RFP for a new I/M program vendor, and that the I/M program would necessarily remain suspended until a new I/M vendor could be retained. On

---

[1] Public guidance had previously been issued on January 30 and February 4. See doc. no. 49 at 9, 11.

March 13, 2026, Gordon-Darby filed the instant motion for an order directing the Commissioners to show cause why they should not be held in contempt for failure to comply with the preliminary injunction.

On March 20, 2026, the Commissioners issued an RFP. See doc. no. 51-1 at 25. The RFP states that the vendor will be responsible for "implementation of the emissions portion of the New Hampshire I/M program as described in the SIP." Id. at 29. Although the bidding process for previous I/M vendor contracts has historically taken between six and eighteen months, the bidding process laid out in the March 2026 RFP is slated to be completed in less than sixty days. The estimated selection date for a vendor set forth in the RFP is May 15, 2026, after which the Governor and Executive Council will consider approval of the contract. The Commissioners anticipate that the Governor and Council will consider whether to approve the contract at their public meeting currently scheduled for June 17, 2026.

In addition to the March 2026 RFP, the Commissioners have been pursuing readoption of administrative rules implementing RSA 266:1 and that support the I/M program as contained in the SIP. The Commissioners state that, although HB2 provided that RSA 266:1 was to be repealed effective January 31, 2026, they began to pursue readoption of RSA 266:1's implementing rules after this court issued its preliminary injunction on January 27, 2026.

## DISCUSSION

The goal of civil contempt is to compel compliance with a court order or to compensate a party for another's noncompliance. United States v. Saccoccia, 433

F.3d 19, 27 (1st Cir. 2005). To issue a contempt order, the court must find that: (1) the contemnor had notice they were subject to the order's requirements; (2) the contemnor violated one of the order's requirements; (3) the order was clear and unambiguous; and (4) it was possible for the contemnor to comply with the order. Id. However, even if each of these elements is satisfied, a court has the discretion to decline to hold a party in contempt where the party's good-faith efforts result in substantial compliance with the order's requirements. Hawkins v. Dep't of Health & Hum. Servs. for N.H., Comm'r, 665 F.3d 25, 31 n.7 (1st Cir. 2012). In other words, a court may decline to hold a party in contempt for "failure to achieve 'letter perfect compliance'" with a court order if the party's diligent efforts substantially comply with the order. AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001) (quoting Langton v. Johnston, 928 F.2d 1206, 1222 (1st Cir. 1991)). "The determination of whether substantial compliance has been achieved will 'depend on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest.'" Id. (quoting Fortin v. Comm'r of Mass. Dep't of Pub. Welfare, 692 F.2d 790, 795 (1st Cir. 1982)).

In this case, the court issued preliminary relief requiring the Commissioners to refrain from taking any action to terminate, suspend, or cease implementation of the I/M program as contained in the SIP, and to take all steps necessary to resume and continue the I/M program as contained in the SIP. One week later, the Commissioners sought, on an expedited basis, the approval of the Governor and Executive Council to extend the termination date of Gordon-Darby NHOST's

6

contract in order to resume and continue the I/M program. When the Council narrowly denied the Commissioners' emergency request, they and their staff met to determine how to comply with the court's preliminary injunction. That meeting yielded a conclusion to develop an RFP for a new I/M program vendor. A little over one month later, the Commissioners developed and issued an RFP that sets out an aggressive timeline for executing a contract with a vendor to administer the emissions portion of New Hampshire's I/M program as contained in its SIP. Meanwhile, the Commissioners have also been seeking to readopt administrative rules that underly the I/M program.

The court finds that these measures constitute diligent efforts amounting to substantial compliance with this court's preliminary injunction.[2] AccuSoft, 237 F.3d at 47. Although there is not currently a vendor in place to operate the I/M program as contained in the SIP, the Commissioners have taken and are taking reasonable, appropriate measures to resume the I/M program contained in the SIP. The Commissioners cannot be faulted for the Executive Council's decision not to extend the termination date of Gordon-Darby NHOST's contract. And the RFP accommodates Gordon-Darby's interest in pursuing a contract to serve as New Hampshire's I/M program vendor. See Accusoft, 237 F.3d at 47; see also doc. no. 49 at 12-15 (court order denying stay request and finding that the Executive Council's

---

[2] In light of this conclusion, the court need not address Gordon-Darby's argument that the Commissioners could have achieved greater compliance with the injunction by reinstating Gordon-Darby NHOST's contract without the Executive Council's approval or by bypassing competitive bidding to immediately enter into a new contract with Gordon-Darby NHOST or another vendor.

rejection of the Commissioners' request to extend the termination date of Gordon-Darby NHOST's contract did not moot this case because the injunction continued to redress Gordon-Darby's harm by affording them an opportunity to pursue a future contract to serve as New Hampshire's vendor).

Gordon-Darby contends that the RFP is not a good-faith effort to reinstate the I/M program because a spokesperson for the New Hampshire Attorney General said in a statement that the RFP "preserves flexibility, and the state may delay, modify or cancel the process, depending on how matters are resolved." Doc. no. 53-1 at 3. The court disagrees with Gordon-Darby. The spokesperson was merely acknowledging that the Commissioners have appealed this court's preliminary injunction and sought a stay of the injunction in the Court of Appeals, as is their right. If the Circuit reverses the order granting the preliminary injunction or temporarily stays it, the Commissioners will not be subject to an order directing them to take all necessary steps to resume the I/M program, which could lead them to "delay, modify or cancel" the bidding process laid out in the RFP.

Gordon-Darby also argues that the Commissioners' efforts are not sincere because the Commissioners have argued in this litigation that they lack authority under state law to implement the I/M program or enter into a new vendor contract. But as with Gordon-Darby's prior contention, the Commissioners are entitled to raise arguments in defense of the lawfulness of HB2. Despite the Commissioners' legal objections, they have engaged in substantial efforts to comply with the preliminary injunction, and the court declines to speculate as to what those

objections suggest the Commissioners may or may not do at the conclusion of the RFP process.

Finally, Gordon-Darby contends that the RFP is an insufficient attempt to implement the SIP because the program described in the RFP is for emissions inspections only, not safety inspections. However, the preliminary injunction does not require the Commissioners to implement the I/M program as it previously existed; it requires them to implement the I/M program as that program is set forth in New Hampshire's SIP.

On September 22, 2022, New Hampshire submitted a proposed SIP amendment to the EPA after the state regulations underlying the I/M program had undergone certain amendments. As part of this submission, NHDES provided the EPA with a "version of [N.H. Admin. R.] Saf-C 3200," which the state said was "being submitted in its entirety (except for text appearing with strike-through) to replace the previously approved version of the regulation," and specifically noted which sections of Saf-C 3200 were "[t]he SIP portions of the rule." Doc. no. 39-1 at 7. Thus, the state submitted the "version" of Saf-C 3200 (accompanying its September 2022 submission) for incorporation into New Hampshire's SIP, not Saf-C 3200 in its entirety. The omitted sections of Saf-C 3200 pertain to the I/M program's vehicle safety inspection requirements. Those sections of the regulation were in effect under state law, but were not submitted for inclusion in the SIP.

On April 29, 2024, the EPA issued a final rule approving "[t]he formal SIP revision . . . submitted by New Hampshire on September 22, 2022." 89 Fed. Reg.

33232, 33233 (Apr. 29, 2024). The EPA incorporated this revision "by reference into the New Hampshire SIP," and amended 40 C.F.R. § 52.1520(c) to show that the version of Saf-C 3200 approved by the EPA on April 29, 2024, "[r]eplaces the SIP-approved version of Saf-C 3200 in its entirety." Id. at 33233-34. This is the version of the I/M program currently contained in New Hampshire's SIP.

For these reasons, the court rejects Gordon-Darby's argument that the RFP, which contemplates an emissions inspections program but not a safety inspections program, is an insufficient attempt to resume the I/M program contained in the SIP.

## CONCLUSION

Gordon-Darby's motion for an order directing the Commissioners to show cause why they should not be held in contempt (doc. no. 50) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 29, 2026

cc:    Counsel of Record

10