# United States Court of Appeals
## For the First Circuit

No. 26-1209

GORDON-DARBY HOLDINGS, INC.,

Plaintiff, Appellee,

v.

ROBERT L. QUINN, in the official capacity as Commissioner of the New Hampshire
Department of Safety, et al.,

Defendants, Appellants.

Before

Barron, Chief Judge,
Aframe and Dunlap, Circuit Judges.

**ORDER OF COURT**

Entered:  April 30, 2026

This case concerns New Hampshire's recent repeal of the State's motor vehicle emissions inspection and maintenance program ("I/M program").  Defendants-Appellants, the Commissioners for both New Hampshire's Department of Safety and its Department of Environmental Services (together, the "Commissioners"), seek a stay pending appeal of the district court's January 27, 2026, preliminary injunction, which enjoined the Commissioners "from taking or directing any action to terminate, suspend, or otherwise cease implementation or enforcement of" New Hampshire's I/M program and to "take all steps necessary to resume and ensure the continued implementation and enforcement of" that program.  For the reasons described below, we grant the Commissioners' motion to stay the injunction.

Plaintiff-Appellee Gordon-Darby Holdings, Inc. ("Gordon-Darby") is the parent company of Gordon-Darby NHOST Services, Inc. ("Gordon-Darby NHOST"), which was the sole vendor contracted to administer I/M services to New Hampshire motorists.  In June 2025, New Hampshire adopted House Bill 2 ("HB 2"), which repealed the State's I/M program effective January 31, 2026. 2025 N.H. Laws §§ 141:244-141:256.  On October 7, 2025, Gordon-Darby notified the Commissioners of its intent to sue under the Clean Air Act ("CAA") for alleged violations related to the repeal of the I/M program.  On December 8, 2025, Gordon-Darby sued the Commissioners under the CAA's citizen suit provision.  42 U.S.C. § 7604(a).

## I.     Standard of Review

"A stay pending appeal is 'an intrusion into the ordinary processes of administration and judicial review.'"  Rhode Island v. Trump, 155 F.4th 35, 41 (1st Cir. 2025) (quoting New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025)).  As the party seeking a stay of the preliminary injunction pending appeal, the Commissioners bear the burden of justifying that they are entitled to such extraordinary relief.  See Nken v. Holder, 556 U.S. 418, 433–34 (2009); see also Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 68 (1st Cir. 2025); Rhode Island, 155 F.4th at 41.  We consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Rhode Island, 155 F.4th at 41 (quoting Nken, 556 U.S. at 434).  Of these factors, the first two "are 'the most critical.'"  Id. (quoting Nken, 556 U.S. at 434). Within the stay framework, we review legal conclusions de novo.  See id. at 44-45.

## II.     Likelihood of Success on the Merits

The CAA is a complicated statutory scheme that contemplates "cooperative federalism." Env't Integrity Project v. EPA, 969 F.3d 529, 535 (5th Cir. 2020) (internal quotations omitted) (quoting Luminant Generation Co. v. EPA, 675 F.3d 917, 921 (5th Cir. 2012); see Conservation L. Found. v. Acad. Express, LLC, 129 F.4th 78, 82 (1st Cir. 2025) (noting division of "responsibilities among state and federal governments" under the CAA).  The CAA empowers the U.S. Environmental Protection Agency ("EPA") to promulgate air quality standards for certain pollutants. 42 U.S.C. § 7409(a).  The CAA further directs states to develop State Implementation Plans ("SIPs") to implement, maintain, and enforce these air quality standards, and submit those plans to the EPA Administrator for approval.  See 42 U.S.C. § 7410(a).  The Administrator may accept a proposed plan as consistent with the CAA, at which point the SIP becomes part of federal law.  See Conservation L. Found., 129 F.4th at 83.  If a state chooses not to submit a SIP or submits a SIP that is not satisfactory, the Administrator must promulgate a federal plan.  42 U.S.C. § 7410(c).  The EPA also may employ sanctions designed to encourage states to submit qualifying SIPs; it can implement these sanctions after giving eighteen months for the state to rectify any "deficiency." 42 U.S.C. § 7509(a)-(b).  Assuming a state proposes a SIP that is approved by the Administrator, the EPA possesses important enforcement mechanisms as to any person that "has violated or is in violation of any requirement or prohibition of" the SIP.  42 U.S.C. § 7413(a)(1); see also id. § 7413(a)(2), (b)-(d) (outlining alternative ways the EPA can enforce SIPs).

The CAA's statutory scheme also provides the public with a role in enforcing the CAA. Any "person may commence a civil action on his own behalf" against

> any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the

- 2 -

alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation under this chapter.

Id. § 7604(a)(1) (emphasis added).  As relevant here, an "emission standard or limitation" includes "any condition or requirement under" the applicable SIP relating to I/M programs.  Id. § 7604(f)(3).

The CAA imposes limits on citizen suits.  A citizen suit cannot be filed until "60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order."  Id. § 7604(b)(1)(A).  Nor can one be filed "if the Administrator or State has commenced and is diligently prosecuting" a civil action to require compliance with the relevant emission standard or limitation.  Id. § 7604(b)(1)(B).

Gordon-Darby is seeking to avail itself of the citizen-suit provision.  It satisfies certain threshold requirements to bring a suit under § 7604:  Gordon-Darby is a "person" within the meaning of the statute, id. § 7602(e), and it avoids Eleventh Amendment concerns by suing the Commissioners in their official capacity, see, e.g., Cotto v. Campbell, 126 F.4th 761, 767-68 (1st Cir. 2025).  Gordon-Darby also provided notice to the Commissioners that it intended to sue them for "tak[ing] steps to cease implementation of the I/M program effective January 31, 2026," including by "inform[ing] the public" on a state website that the Department of Safety "will cease administering and enforcing the I/M requirements" as of that date, and by giving Gordon-Darby NHOST a notice of their "intent to terminate the state's contract for services related to the I/M program" on January 31, 2026.  In its citizen-suit notice, Gordon-Darby also asserted that the Commissioners would "remain in violation" of the SIP "until they resume implementing and enforcing" the I/M program.

The difficulty here, as the Commissioners properly identify, is that New Hampshire did not terminate its I/M program or terminate its I/M supplier contract with Gordon-Darby NHOST until January 31, 2026.  Prior to that date, New Hampshire had only (1) announced that it would, pursuant to HB 2, discontinue the I/M requirements effective January 31, 2026, and (2) communicated to Gordon-Darby NHOST its intent to terminate its contract effective January 31, 2026.

The Commissioners zero in on this difficulty in seeking the stay.  They do so in part by contending that Gordon-Darby failed to satisfy the notice requirement of § 7604(b)(1).  But, in advancing this notice-based ground for seeking the stay, they also necessarily advance an argument based on § 7604(a)(1), namely, that Gordon-Darby is not likely to succeed in showing that the Commissioners were "in violation of" any emission standard or limitation when it commenced this suit.

We conclude the Commissioners have made a strong showing that they are likely to succeed on appeal on the ground that Gordon-Darby failed to allege cognizable violations under § 7604(a)(1).[1]  As relevant here, Congress permits citizen suits only against persons alleged "to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation

---

[1] As a result, we need not and do not decide whether the notice that Gordon-Darby provided the Commissioners satisfied § 7604(b)(1).

- 3 -

of" an emission standard or limitation. 42 U.S.C. § 7604(a)(1) (emphasis added). The district court determined that Gordon-Darby adequately alleged past and ongoing violations of the SIP (and so violations of an emission standard or limitation) based on: (1) the communications with the public that New Hampshire was repealing its I/M program effective January 31, 2026, and that members of the public would not need to get their vehicles inspected after that date; and (2) the notice of intent to terminate the vendor contract with Gordon-Darby NHOST as of January 31, 2026. It additionally concluded that the Commissioners would violate the SIP "when the repeal of the I/M program takes effect" on January 31, 2026.

The district court justified its conclusion regarding the communication-based violation with reference to 40 C.F.R. § 51.368(a), which states:

> The SIP shall include a plan for informing the public on an ongoing basis throughout the life of the I/M program of the air quality problem, the requirements of Federal and State law, the role of motor vehicles in the air quality problem, the need for and benefits of an inspection program, how to maintain a vehicle in a low-emission condition, how to find a qualified repair technician, and the requirements of the I/M program.

40 C.F.R. § 51.368(a). The Commissioners convincingly argue that they are likely to succeed in showing that this regulation only sets out a required component of a SIP and does not otherwise regulate the communications issued by state officials. Put another way, the Commissioners made a strong showing that the regulation likely is not an emission standard or limitation and so cannot provide the basis for an allegation that the Commissioners are "in violation of" such a standard or limitation. Gordon-Darby does not point to anything in the SIP itself that the Commissioners' communications are "in violation of."

The same is true for the contract-termination violation. The district court concluded that the Commissioners, by terminating the contract with Gordon-Darby NHOST, were violating 40 C.F.R.§ 51.350(c). That regulation provides that states with ozone nonattainment areas (such as New Hampshire) "shall commit to fully implement and enforce the [I/M] program" in the state's SIP until they have submitted and the EPA has approved a SIP revision "demonstrat[ing] that the [nonattainment] area can maintain the relevant [ozone] standard(s) without [the] benefit" of the I/M program. 40 C.F.R. § 51.350(c). The Commissioners have made a strong showing that the termination of the contract with Gordon-Darby NHOST likely does not violate this regulation or the SIP on the ground that neither requires retention of a particular vendor. Gordon-Darby, we note, does not advance a developed argument defending the conclusion as to this claimed violation, nor the communication-based one.

We further conclude that the Commissioners have met their burden of making a "strong showing" that the district court likely erred in concluding that Gordon-Darby adequately alleged a violation based on conduct that was, at the time of the complaint, wholly prospective. As we have already explained, § 7604(a)(1) permits citizen suits against persons alleged "to be in violation of" an emission standard or limitation. 42 U.S.C. § 7604(a) (emphasis added). The district court undertook a substantial analysis, based on the parties' arguments, of what it identified as a novel question about whether a purely prospective violation could render a defendant "in violation of"

an emission standard or limitation.[2]   But we agree with the Commissioners that the Supreme Court's decision in Gwaltney v. Chesapeake Bay Foundation, 484 U.S. 49 (1987), on which the district court's reasoning primarily relied, likely does not support the conclusion that § 7604(a)(1) authorizes citizen suits predicated on purely prospective violations of the CAA.

The statute at issue in Gwaltney was the Clean Water Act ("CWA"), not the CAA.  Id. at 54 & n.1.[3]   The precise question before the Court was whether the "alleged to be in violation" language in the CWA authorized "citizen suits for wholly past violations."  Id. at 52.  Beginning with the text, the Court found that the "most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation -- that is, a reasonable likelihood that a past polluter will continue to pollute in the future."  Id. at 57 (emphasis added).  We do not read Gwaltney to authorize suits for violations that are, at the time of the complaint, purely prospective.  Nowhere in the opinion did the Court state that an entity with a clean record of regulatory compliance could be subject to suit solely for their anticipated noncompliance -- rather, the Court understood the CWA to authorize citizen suits when they make "good-faith allegation[s] of ongoing violation[s]" of the CWA.  Id. at 67 (emphasis added).  To be clear, the Court did note that the "harm sought to be addressed by the citizen suit lies in the present or the future, not in the past," id. at 59, but it did so in the context of recognizing that the "pervasive use of the present tense" in the CWA foreclosed citizens suits over wholly past violations -- a question not raised here.  Id.

We also note that the other caselaw on which the district court relied similarly contemplated the existence of a present or prior violation, as the district court itself acknowledged. We therefore do not understand these precedents to support its conclusion.  See Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp., 807 F.2d 1089, 1093 (1st Cir. 1986).[4]  And Gordon-Darby offers no additional support for the district court's ruling.[5]

Given our conclusion that the Commissioners have made a strong showing that they are likely to succeed in demonstrating that Gordon-Darby has not met its burden of alleging that the Commissioners are "in violation of" an emission standard or limitation under § 7604(a)(1), we find

---

[2] Gordon-Darby makes no argument that the enactment of the repeal law in and of itself placed New Hampshire "in violation" of an emission standard or limitation starting from the law's enactment date.  Rather, the only argument that has been presented is that the repeal law would place New Hampshire "in violation" when it took effect.

[3] The citizen suit notice requirements in the two statutes are similar, but not identical.  Compare 33 U.S.C. § 1365(a) (CWA authorizes suit against any person "who is alleged to be in violation" of a standard) with 42 U.S.C. § 7604(a) (CAA authorizes suit against any person who is "alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of" a standard).

[4] In Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp., we observed that a citizen suit under the CWA could go forward "if the citizen-plaintiff fairly alleges a continuing likelihood that the defendant, if not enjoined, will again proceed to violate the Act."  807 F.2d 1089, 1094 (1st Cir. 1986).  We did not suggest that such suits could be premised solely on a possible future violation.

[5] Gordon-Darby did cite one additional case not relied upon by the district court, but it too, involved allegations of past and ongoing violations of the CWA, not purely prospective ones.  See Nat. Res. Def. Council v. Texaco Refin. & Mktg., Inc., 2 F.3d 493, 501-02 (3d Cir. 1993).

it unnecessary to consider any of their remaining arguments.  In that regard, we do not address here the Commissioners' assertion that the CAA does not "regulate states in their sovereign legislative, procurement, or police power capacities"; we do note, however, that they assert that citizen suits may be brought against the "State in its 'regulatory capacity'" (quoting Am. Lung Ass'n v. Kean, 871 F.2d 319, 324-25 (3d Cir. 1989), although one circuit has held that "the text and structure of the CAA make plain that § 7605 does not permit citizen suits against state regulators qua regulators," Sierra Club v. Korleski, 681 F.3d 342, 351 (6th Cir. 2012).  We express no view on that issue.  We also do not address the Commissioners' contention that the SIP does not preempt the state law repealing the I/M program, which, we observe, is an argument that is underdeveloped in any event.  Similarly, we need not address their contention regarding impermissible commandeering.[6]

### III.    Irreparable Injury Absent a Stay

Given the nature of the suit and the relief provided by the district court, we conclude that the Commissioners have demonstrated that irreparable injury would flow from allowing the preliminary injunction to stand.  The injunction issued against the Commissioners is significant; it forces a State to continue enforcing a program that the State's legislature has repealed.  See Maryland v. King, 567 U.S. 1301, 1303 (2012) ("[A] State . . . enjoined by a court from effectuating statutes enacted by representatives of its people . . . suffers a form of irreparable injury."  (quoting New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

### IV.    Harm to Appellee and the Public Interest

The Commissioners have also met their burden under the third and fourth stay factors. Gordon-Darby NHOST's contract was terminated effective January 31, 2026 "for convenience," which the district court noted put the plaintiff on notice that the Commissioners could terminate the contract whenever "suitable or agreeable to [the Commissioners'] needs or purpose[s]." (Quoting Hate to Paint, LLC v. Ambrose Dev., LLC, No. 2023-0076, 2024 WL 4765322, at *2 (N.H. Nov. 13, 2024)).  Nothing in the district court's injunction requires New Hampshire to contract with Gordon-Darby NHOST again, should the State revive its SIP program.  So even if we denied the stay, Gordon-Darby NHOST would not necessarily get its contract back. Gordon-Darby may speculate as to whether its subsidiary could win back the contract if the I/M program was reinstated.  But they have made no showing that such a thing would happen.  And the Commissioners suggest that there are various barriers to reinstating the contract.  Thus, it appears that the only harm Gordon-Darby NHOST faces is the lost opportunity to bid on a new contract.  Accordingly, we think the equities favor the Commissioners, given that they have made a strong showing that they are likely to succeed on the merits and have demonstrated irreparable harm.

---

[6] We can bypass, too, the Commissioners' contentions that the plaintiffs cannot show that their claimed injury is redressable.  That argument, in any event, fails to engage with the district court's holding that Gordon-Darby's injury rests on Gordon-Darby NHOST's lost opportunity to bid for the vendor contract.

\*   \*   \*

Because we conclude that the Commissioners have met their burden, we **grant** their motion for a stay of the preliminary injunction pending appeal.

By the Court:

Anastasia Dubrovsky, Clerk

cc:
Hon. Landya B. McCafferty
Tracy Uhrin, Clerk, United States District Court for the District of New Hampshire
Joshua Connor Harrison
Mark Lucas
Amy Manzelli
Allison D. Wood
Andrew D. Knudsen
Kirsten Bahnson
Makram B. Jaber
Andrian Lee